**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**

| | |
|---|---|
| REBECCA ABBOTT, ERIN ABDOO, SOPHIA ALFARO, KRYSTAL LEIGH ANDERSON, ANGELA ARROWSMITH, MEGAN ASHLEY, ELIZABETH AUSTIN, JENNIFER BAINBRIDGE, ALYSSA MEGAN BARB, MIRIAH BARBERO, LINDSAY BARR, GRISEL BARRETO, COURTNEY BARRON, ASHLEY BAXTER, BRITTANY BENNETT, CRISTAL MARIE BETTIS, JULIE BLAKELEY, KELSEY BLANKENSHIP, MELISSA BLOOMQUIST-SMITH, AMANDA BOOTS, OLIVIA BOYER, AMANDA BRATTON, AUGUSTINA BRIONES, NICOLE BRISKY, CHEYENNE BROWNING, CELIA BRUNO, ANA BUTKUS, MARIA CALDERON, SERENITEY CARLIN, MAYELIN CARRANZA, ANNA CHASE, SHERAL SHAH CHHEDA, VICTORIA COKER, MELANIE COLE, JEN COMEAU, KIMBERLY CONWAY, ADRIANNE COOPER, MICHELLE CORBETT, ANGELA COX, ELAINE CRYER, BRANDY DAVIS, KALEY DEFORD,  CHELZY DESVIGNE, BRITTANY DISTASO, ALYCIA DONOVAN, ALANA DOYETO, JESSICA DURRETT, SUDIPTA DUTTA, NATALYA DZYUBA, SAMANTHA EDWARDS, AMANDA FINCANNON, THERESA MARIE FINTONIS, AYAME TATIANA GALASSINI, MARCELA GARCÍA, ANGELA GARDNER, CARISSA GELOSO, SHELBY GERACI, KELSEY GLENNON, AUSTIN GUNDERSEN, ARUNDEEP KANWAR GURAYA, CHARITA HARRELL, GABRIELLE HARRISON, ROBERT HART, DEBBIE HAWKINS, SHANNON HERRINGTON, AMANDA HILL, LILLIAN HINKLE, AMANDA HOBBS-ROGERS, SAMMI HOBDY, NICHOLE HOLLING, SHAYLAN ISAACS, JASMINE JACKSON,YUHWA JANG, OLIVIA JOHNSON, REBECCA N KEETON, SARA KILBURN, SARAH KNAAPEN, RACHEL KNUDSON, KARLEEN KOZACZKA, RACHAEL KRUUP, DEANA LINEGAR, APRIL LOCKHART, ANDREW LOHSE, LORI ANN LOUIS, | Case No.<br><br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

SAMANTHA LUI, TRACI MARIE LUSSIER,
ELINA MAHMENS, BRITTANY MARTIN,
MARQUETTA MATTHEWS, ELIZABETH A.
MCDOWELL, KALI MCGLINCH, LATOYA A
MCHENRY, LORI-ANN MCKENZIE-HENRY,
JANICE TAINA MERCADO GUADALUPE,
RENEE MILLINE, CHRISTINA MITCHELL,
LOUKEVIA MOORE, AMANDA GAMBRELL
MORENCY, ANDREA MOZO, TABITHA
MULLINAX, SANTEQUIA NGWU, STEPHANIE
NORGAARD, LEAH M. OSTAPCHENKO,
ROBERT PARTELLO, MELINDA PASS, KRISHNA
PATEL, MIA  PELLETIER, KARINA PENA, TINA
MARIE PEREZ, MAURICE CARLOS PETETSON,
ASHLEY PIERCE, ALI PLILER-LOPEZ, HOLLY
PLOTTS, JANINNE E PRICE, DEBBIE REED,
SARAH RIDINGS, KASSANDRA ROMERO,
MAGGIE ROUSE, TIFFANY SALAZAR,
CHRISTINA SALYERS, SHEENA SANDERS, LEA
SANTOS, KIRTHI SASIKUMAR, AMANDA
SCHRAM, BRENDA SCHROEDER, JULIE
SECRIST, MICHELLELE SHORTER, CHERYL
ELAINE SMITH, KINDER SMITH, EMILY
SODERBLOOM-CATHEY, ABBY SONDALL,
KIRSTEN SOUTH, LAKRISHA SPIKES,
CHRISTINE STEELE, PORSCHE S. STOKES,
ABBY STRATTON, RACHEL STRATTON,
ASHLEY SWENNINGSON, KYLA C TALLEY,
MARGO TEZENO, SHILOH THOMAS, KATRINA
THOMAS, RHIANNA THORNTON, DILLON
TOWNZEN, RACHAEL TREETOP, EMMA
TROLINDER, MEGAN TROYER, SONJA RENÉE
TWIGGS, BRITTANY (DUTTON) WALLACE,
MONIQUE WARREN, BEVERLY WATKINS,
JENNIFER KAY WATTS, ACACIA WILSON,
AMBER WRIGHT, LAUREN YESH, RETRENA
YOUNGE, AND CHARISSE ZAPATA,

*Plaintiffs*,

v.

GERBER PRODUCTS COMPANY,

*Defendant.*

## COMPLAINT

COME NOW Plaintiffs, individually and on behalf of all other similarly situated persons, by and through its undersigned attorneys, and for its Complaint against Gerber Products Company, state as follows:

### NATURE OF CASE

1.      Toxic heavy metals such as arsenic, lead, cadmium, and mercury have no health benefit.   These toxic heavy metals are unfit for consumption. Both the Food and Drug Administration and the World Health Organization have declared these toxic heavy metals dangerous to human health, particularly to babies and children, who are most vulnerable to its neurotoxic effects.

2.      Babies' developing brains are exceptionally sensitive to injury caused by these toxic heavy metals, and several developmental processes have been shown to be highly vulnerable to chemical toxicity.

3.      Even low levels of exposure to toxic heavy metals can cause serious and often irreversible damage to brain development leading to permanent decreases in IQ, diminished future economic productivity, and increased risk of future criminal and antisocial behavior. As a result, there is no established safe level of toxic heavy metals for babies.  Any amount is too much.

4.      On February 4, 2021, the Subcommittee on Economic and Consumer Policy Committee on Oversight and Reform of the U.S. House of Representatives released a staff report which detailed an investigation that revealed that Defendant's baby foods were contaminated with significant levels of toxic heavy metals, including arsenic, lead, cadmium, and mercury.

5.      The presence of toxic heavy metals in food, especially in baby food, is material to consumers. No consumer would knowingly purchase baby foods for its child from a manufacturer that allowed its baby foods to contain measurable amounts of arsenic, lead, cadmium, or mercury. Yet, Defendant, knowingly sold baby foods containing high levels of arsenic and lead and despite having actual knowledge of this fact, did not disclose the presence of toxic heavy metals in its baby foods to consumers.

## PARTIES

6.      Defendant Gerber Products Company ("Gerber") is a Michigan corporation with its principal place of business in Arlington, Virginia that manufactures, markets and sells baby food.

7.      Gerber markets its baby food as "Nutrition for your little one at every age and stage" and calls itself "the trusted brand for babies." Gerber holds itself out to be an expert in babies and its nutrition. Its website notes that Dorothy Gerber used to mail advice to new parents and now you can chat with Gerber's live baby experts are any time.  At various times, Gerber has touted the safety and nutrition of its baby foods by claiming: "At Gerber we obsess over organic so that you don't have to." "We know the exact field, farm and farmer organic."  "Go for what's natural. Gerber, anything for baby."  "Grown in better soil for baby."  "Higher standards set for baby." "All babies should be handled with care."   Gerber claims to provide "three fundamental areas of benefits for parents:  safety and quality; nutrition and health; and taste, texture, and convenience." Gerber claims, regarding its ingredients: "At Gerber, we believe little ones deserve the very best. That's why we have stringent quality and food safety standards for all our foods."

8.      When reference in this Complaint is made to any act or omission of a defendant, it should be read to mean that the officers, directors, agents, employees, or representatives of the

Defendant committed or authorized such act or omission or failed to adequately supervise or properly control or direct its employees while engaged in the management, direction, operation, or control of the affairs of the defendant, and did so while acting within the scope of its employment or agency.

9.      The Plaintiffs in this action consist of consumers who purchased Defendant's baby food in each of the U.S. States and the District of Columbia without knowledge that Defendant was knowingly manufacturing and selling baby foods with ingredients that contained high levels of toxic heavy metals.

10.      Plaintiff Rebecca Abbott is a natural person and a citizen and resident of Mena, Arkansas.  In 2020-2021, Plaintiff purchased Gerber baby foods, including but not limited to rice cereal, oatmeal, fruits and vegetables, in the state of Arkansas, to feed her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

11.      Plaintiff Erin Abdoo is a natural person and is a citizen and resident of Buckeye, Arizona.  In 2011-2013, 2014-2017, and 2018-2020, Plaintiff purchased Gerber baby foods, including but not limited to fruits and vegetables, in the states of Arizona and California, to feed her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

12.      Plaintiff Sophia Alfaro is a natural person and is a citizen and resident of Pahoa, Hawaii.  Plaintiff purchased Gerber baby foods, including but not limited to rice cereal, oatmeal, and other foods, in the state of Hawaii, to feed her child(ren).  Plaintiff made those purchases

without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

13.     Plaintiff Krystal Leigh Anderson is a natural person and is a citizen and resident of Sanford, North Carolina.  In 2020-2021, Plaintiff purchased Gerber baby foods, including but not limited to oatmeal, fruits, and vegetables, in the state of North Carolina, to feed her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

14.     Plaintiff Angela Arrowsmith is a natural person and is a citizen and resident of Taunton, Massachusetts.  In 2017-2018 and 2020-2021, Plaintiff purchased Gerber baby foods, including but not limited to rice cereal, in the states of Maine and Massachusetts, to feed her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

15.     Plaintiff Megan Ashley is a natural person and is a citizen and resident of New Castle, Indiana.  Plaintiff purchased Gerber baby foods, including but not limited to fruits, vegetables, Hawaiian delight, and meat, in the states of Indiana and Tennessee, to feed her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

16.     Plaintiff Elizabeth Austin is a natural person and is a citizen and resident of Mount Pleasant, South Carolina.  In 2007-2018, Plaintiff purchased Gerber baby foods, including but not

limited to fruits and vegetables, in the states of South Carolina and Virginia, to feed her child(ren). Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

17.     Plaintiff Jennifer Bainbridge is a natural person and is a citizen and resident of Mars, Pennsylvania.  In 2017-2019, Plaintiff purchased Gerber baby foods, including but not limited to puffs, lil' crunchies, and yogurt melts, in the state of Pennsylvania, to feed her child(ren). Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

18.     Plaintiff Alyssa Megan Barb is a natural person and is a citizen and resident of Augusta, West Virginia.   In 2003-2004, 2013-2014, 2018-2019, and 2020-2021, Plaintiff purchased Gerber baby foods, including but not limited to puffs, lil' crunchies, and yogurt melts, in the states of West Virginia, Virginia, Maryland, and Pennsylvania, to feed her child(ren). Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

19.     Plaintiff Miriah Barbero is a natural person and is a citizen and resident of Roseburg, Oregon.  In 2020, Plaintiff purchased Gerber baby foods, including but not limited to rice cereal, oatmeal, fruits, vegetables, and meats, in the state of Oregon, to feed her child(ren). Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

20.     Plaintiff Lindsay Barr is a natural person and is a citizen and resident of Broken Arrow, Oklahoma.   In 2015-2016 and 2019-2020, Plaintiff purchased Gerber baby foods, including but not limited to rice cereal, oatmeal, fruits, vegetables, yogurt melts, and good start soothe, in the state of Oklahoma, to feed her child(ren).   Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.   Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

21.     Plaintiff Grisel Barreto is a natural person and is a citizen and resident of Henderson, Nevada.   In 2015-2018, Plaintiff purchased Gerber baby foods, including but not limited to rice cereal, oatmeal, vegetables, and meats, in the states of Massachusetts and Nevada, to feed her child(ren).   Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.   Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

22.     Plaintiff Courtney Barron is a natural person and is a citizen and resident of Renton, Washington.   In 2019-2021, Plaintiff purchased Gerber baby foods, including but not limited to oatmeal cereal, fruits, and vegetables in the states of Washington and Utah and Nevada, to feed her child(ren).   Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.   Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

23.     Plaintiff Ashley Baxter is a natural person and is a citizen and resident of Camden, North Carolina.   In 2020, Plaintiff purchased Gerber baby foods, including but not limited to rice cereal, in the state of Virginia, to feed her child(ren).   Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.   Had Plaintiff known that

the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

24.    Plaintiff Brittany Bennett is a natural person and is a citizen and resident of Battle Creek, Michigan.  In 2006-2007 and 2019-2020, Plaintiff purchased Gerber baby foods, including but not limited to rice cereal, oatmeal, fruits, vegetables, snacks, to go foods, and lunch time meals, in the state of Michigan, to feed her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

25.    Plaintiff Cristal Marie Bettis is a natural person and is a citizen and resident of Hobart, Indiana.  In 2021, Plaintiff purchased Gerber baby foods, including but not limited to rice cereal, oatmeal, fruits, vegetables, beef, and chicken, in the states of Indiana and Illinois, to feed her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

26.    Plaintiff Julie Blakeley is a natural person and is a citizen and resident of Rising Sun, Maryland.  In 2019-2020, Plaintiff purchased Gerber baby foods, including but not limited to rice cereal, barley cereal, oatmeal, fruits, vegetables, yogurt, and teething cookies, in the states of Maryland, West Virginia, and Pennsylvania, to feed her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

27.     Plaintiff Kelsey Blankenship is a natural person and is a citizen and resident of Union City, Tennessee.  In 2020-2021, Plaintiff purchased Gerber baby foods, including but not limited to oatmeal, fruits, and vegetables, in the states of Tennessee and Nevada, to feed her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

28.     Plaintiff Melissa Bloomquist-Smith is a natural person and is a citizen and resident of Camillus, New York.  In 2016-2020, Plaintiff purchased Gerber baby foods, including but not limited to fruits and vegetables, in the state of New York, to feed her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods. Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

29.     Plaintiff Amanda Boots is a natural person and is a citizen and resident of Truman, Minnesota.  In 2018-2019, Plaintiff purchased Gerber baby foods, including but not limited to cereal, fruits, and vegetables, in the states of Minnesota and Illinois, to feed her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

30.     Plaintiff Olivia Boyer is a natural person and is a citizen and resident of Odenville, Alabama. In 2017, 2018, 2020 and 2021, Plaintiff purchased Gerber baby foods, including but not limited to rice cereal, oatmeal, fruits and vegetables, in the states of Alabama and Florida, to feed her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals

in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

31.     Plaintiff Amanda Bratton is a natural person and is a citizen and resident of Windsor, South Carolina.  In 2019-2021, Plaintiff purchased Gerber baby foods, including but not limited to rice cereal, fruits, and vegetables, in the state of South Carolina, to feed her child(ren). Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

32.     Plaintiff Augustina Briones is a natural person and is a citizen and resident of Crosby, Tennessee.   In 2018-2020, Plaintiff purchased Gerber baby foods, in the states of Tennessee and Texas, to feed her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

33.     Plaintiff Nicole Brisky is a natural person and is a citizen and resident of Fremont, Wisconsin.  In 2020-2021, Plaintiff purchased Gerber baby foods, in the state of Wisconsin, to feed her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

34.     Plaintiff Cheyenne Browning is a natural person and is a citizen and resident of Smiths Station, Alabama. In 2019 and 2020, Plaintiff purchased Gerber baby foods, including, but not limited to rice cereal and oatmeal, in the state of Alabama, to feed her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby

foods. Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

35.     Plaintiff Celia Bruno is a natural person and is a citizen and resident of Portage, Indiana. In 2007-2009 and 2020-2021, Plaintiff purchased Gerber baby foods, including but not limited to rice cereal, fruits, vegetables, Hawaiian delight, yogurt melts, graduates, and cookies, in the states of Indiana and Illinois, to feed her child(ren). Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods. Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

36.     Plaintiff Ana Butkus is a natural person and is a citizen and resident of Louisville, Kentucky. In 2020-2021, Plaintiff purchased Gerber baby foods, including but not limited to rice cereal, oatmeal, puffs, fruits, and vegetables, in the state of Kentucky, to feed her child(ren). Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods. Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

37.     Plaintiff Maria Calderon is a natural person and is a citizen and resident of Dallas, Texas. In 2008, 2010, 2012, 2014, 2016, and 2018-2020, Plaintiff purchased Gerber baby foods, including but not limited to rice cereal, oatmeal, puffs, fruits, teethers, and biscuits, in the state of Texas, to feed her child(ren). Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods. Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

38.     Plaintiff Serenitey Carlin is a natural person and is a citizen and resident of Collinsville, Oklahoma. In 2016 and 2019-2021, Plaintiff purchased Gerber baby foods, including

but not limited to rice cereal, oatmeal, fruits, and vegetables, in the state of Oklahoma, to feed her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

39.     Plaintiff Mayelin Carranza is a natural person and is a citizen and resident of Crete, Nebraska.  In 2014-2021, Plaintiff purchased Gerber baby foods, in the state of Nebraska, to feed her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

40.     Plaintiff Anna Chase is a natural person and is a citizen and resident of Tacoma, Washington.  In 2004, 2010, 2012, 2014, and 2018, Plaintiff purchased Gerber baby foods, including but not limited to rice cereal, oatmeal, fruits, vegetables, and meats, in the state of Washington, to feed her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

41.     Plaintiff Sheral Shah Chheda is a natural person and is a citizen and resident of Gering, Nebraska.  Plaintiff purchased Gerber baby foods, in the states of Colorado, Florida, Louisiana, and Nebraska, to feed her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

42.     Plaintiff Victoria Coker is a natural person and is a citizen and resident of Camden, Arkansas.  In 2020-2021, Plaintiff purchased Gerber baby foods, including but not limited to rice

cereal, oatmeal, fruits, and vegetables, in the state of Arkansas, to feed her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

43.     Plaintiff Melanie Cole is a natural person and is a citizen and resident of St. Louis, Missouri.  In 2013-2019, Plaintiff purchased Gerber baby foods, including but not limited to fruits and vegetables, in the state of Missouri, to feed her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

44.     Plaintiff Jen Comeau is a natural person and is a citizen and resident of Lagrange, Maine.  In 2020-2021, Plaintiff purchased Gerber baby foods, including but not limited to rice cereal, oatmeal, fruits, vegetables, chicken, lil' mixtures, Hawaiian delight, and custard, in the state of Maine, to feed her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

45.     Plaintiff Kimberly Conway is a natural person and is a citizen and resident of Standish, Maine.  In 2016-2020, Plaintiff purchased Gerber baby foods, including but not limited to fruits, vegetables, mac and cheese, turkey, and chicken, in the states of Maine, Maryland, and New Jersey, to feed her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

46.     Plaintiff Adrianne Cooper is a natural person and is a citizen and resident of Tulsa, Oklahoma.  In 2015, 2017, and 2019, Plaintiff purchased Gerber baby foods, including but not limited to rice cereal, oatmeal, fruits, and vegetables, in the states of Oklahoma and Texas, to feed her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

47.     Plaintiff Michelle Corbett is a natural person and is a citizen and resident of Paragon, Indiana.  In 2019 Plaintiff purchased Gerber baby foods, including but not limited to cereals, fruits and vegetables, in the state of Indiana, to feed her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

48.     Plaintiff Angela Cox is a natural person and is a citizen and resident of Pueblo, Colorado.  In 2015-2017 and 2020-2021, Plaintiff purchased Gerber baby foods, including but not limited to rice cereal, fruits and vegetables, in the states of Colorado and Oregon, to feed her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

49.     Plaintiff Elaine Cryer is a natural person and is a citizen and resident of Hartselle, Alabama. In 2020 and 2021, Plaintiff purchased Gerber baby foods, including but not limited to rice cereal and oatmeal, in the states of Alabama and Tennessee, to feed her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby

foods.  Had Plaintiff known that the Defendant's foods she purchased contained heavy metals, she would not have purchased them.

50.     Plaintiff Brandy Davis is a natural person and is a citizen and resident of Thompsonville, Illinois.  In 2015-2016, Plaintiff purchased Gerber baby foods, including but not limited to fruits, vegetables, puffs, yogurt melts, teethers, and lil' crunchies, in the state of Illinois, to feed her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

51.     Plaintiff Kaley Deford is a natural person and is a citizen and resident of Logansport, Indiana.  In 2016-2018 and 2020-2021, Plaintiff purchased Gerber baby foods, including but not limited to rice cereal, oatmeal, fruits, and vegetables, in the state of Indiana, to feed her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

52.     Plaintiff Chelzy Desvigne is a natural person and is a citizen and resident of Biloxi, Mississippi.  In 2017-2021, Plaintiff purchased Gerber baby foods, including but not limited to rice cereal, oatmeal, fruits, and vegetables in the states of Mississippi, California, Georgia, and Washington to feed her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

53.     Plaintiff Brittany Distaso is a natural person and is a citizen and resident of Macomb, Michigan.  In 2019-2020, Plaintiff purchased Gerber baby foods, including but not limited to oatmeal, puffs, fruits, and vegetables, in the states of New Jersey and Maryland, to feed

her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

54.     Plaintiff Alycia Donovan is a natural person and is a citizen and resident of Bangor, California.  In 2020-2021, Plaintiff purchased Gerber baby foods, including but not limited to oatmeal, fruits, vegetables, chicken, pork, and turkey, in the state of California, to feed her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

55.     Plaintiff Alana Doyeto is a natural person and is a citizen and resident of Oklahoma City, Oklahoma.  In 2013-2019, Plaintiff purchased Gerber baby foods, including but not limited to rice cereal, puffs, fruits, vegetables, and meats, in the states of New Mexico and Oklahoma, to feed her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

56.     Plaintiff Jessica Durrett is a natural person and is a citizen and resident of Texarkana, Texas.  In 2010, and 2014-2015, Plaintiff purchased Gerber baby foods, including but not limited to rice cereal, oatmeal, fruits, vegetables, chicken, beef, and turkey, in the states of Arkansas and Texas, to feed her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

57.     Plaintiff Sudipta Dutta is a natural person and is a citizen and resident of Lagrangeville, New York.   In 2016 and 2020-2021, Plaintiff purchased Gerber baby foods,

including but not limited to rice cereal, oatmeal, puffs, and vegetables, in the state of New York, to feed her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

58.     Plaintiff Natalya Dzyuba is a natural person and is a citizen and resident of Blaine, Minnesota.  In 2005-2008, 2012-2013, 2017, and 2019-2021, Plaintiff purchased Gerber baby foods, including but not limited to rice cereal, oatmeal, whole grain cereal, fruits, vegetables, snacks and yogurt, in the states of Minnesota, Florida, and Nebraska, to feed her child(ren). Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

59.     Plaintiff Samantha Edwards is a natural person and is a citizen and resident of Oak Creek, Wisconsin.  In 2017-2019, Plaintiff purchased Gerber baby foods, including but not limited to rice cereal, oatmeal, and fruits, in the state of Wisconsin, to feed her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods. Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

60.     Plaintiff Amanda Fincannon is a natural person and is a citizen and resident of Homer, Georgia.  In 2009-2011, 2016-2017, and 2020-2021, Plaintiff purchased Gerber baby foods, including but not limited to rice cereal, oatmeal, fruits, vegetables, chicken, turkey, ham, and beef, in the state of Georgia, to feed her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that

the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

61.     Plaintiff Ayame Tatiana Galassini is a natural person and is a citizen and resident of Roswell, New Mexico.  In 2018-2021, Plaintiff purchased Gerber baby foods, including but not limited to fruits, vegetables, and teethers, in the state of New Mexico, to feed her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

62.     Plaintiff Marcela Garcia is a natural person and is a citizen and resident of Henderson, Colorado.  In 2019-2021, Plaintiff purchased Gerber baby foods, including but not limited to oatmeal, fruits, vegetables, snack puffs, pasta pick-ups, lil' entrees, arrowroot cookies, and turkey sausage, in the state of Colorado, to feed her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

63.     Plaintiff Angela Gardner is a natural person and is a citizen and resident of Macon, Missouri.  In 2020-2021, Plaintiff purchased Gerber baby foods, including but not limited to rice cereal, oatmeal, puffs, fruits, vegetables, meats, lil' crunchies, and teethers, in the state of Missouri, to feed her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

64.     Plaintiff Carissa Geloso is a natural person and is a citizen and resident of Seymour, Connecticut.  In 2018-2020, Plaintiff purchased Gerber baby foods, including but not limited to

fruits and vegetables, in the state of Connecticut, to feed her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

65.     Plaintiff Shelby Geraci is a natural person and is a citizen and resident of Mechanicville, New York.  In 2018-2020, Plaintiff purchased Gerber baby foods, including but not limited to rice cereal and 2nd stage foods, in the state of New York, to feed her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

66.     Plaintiff Kelsey Glennon is a natural person and is a citizen and resident of New Bedford, Massachusetts.  In 2020-2021, Plaintiff purchased Gerber baby foods, including but not limited to rice cereal, oatmeal, fruits, vegetables, rice pudding, chicken, and beef, in the state of Massachusetts, to feed her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

67.     Plaintiff Austin Gundersen is a natural person and is a citizen and resident of Riverton, Utah.  In 2018-2021, Plaintiff purchased Gerber baby foods, in the state of Utah, to feed his child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods he purchased contained heavy metals, he would not have purchased them.

68.     Plaintiff Arundeep Kanwar Guraya is a natural person and is a citizen and resident of Carteret, New Jersey.  In 2018-2021, Plaintiff purchased Gerber baby foods, in the state of New

Jersey, to feed his child(ren). Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods. Had Plaintiff known that the Defendant's baby foods he purchased contained heavy metals, he would not have purchased them.

69. Plaintiff Charita Harrell is a natural person and is a citizen and resident of Philadelphia, Pennsylvania. In 2007, 2010, and 2019, Plaintiff purchased Gerber baby foods, including but not limited to rice cereal, fruits, and vegetables, in the states of Pennsylvania and Virginia, to feed her child(ren). Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods. Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

70. Plaintiff Gabrielle Harrison is a natural person and is a citizen and resident of Sumter, South Carolina. In 2014-2017, Plaintiff purchased Gerber baby foods, including but not limited to rice cereal, oatmeal, fruits, vegetables, graduates, and meats, in the state of South Carolina, to feed her child(ren). Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods. Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

71. Plaintiff Robert Hart is a natural person and is a citizen and resident of Pittsfield, Massachusetts. In 2019-2021, Plaintiff purchased Gerber baby foods, including but not limited to rice cereal, oatmeal, fruits, vegetables, Hawaiian delight, meats, toddler foods, and lil' crunchies, in the state of Massachusetts, to feed his child(ren). Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods. Had Plaintiff known that the Defendant's baby foods he purchased contained heavy metals, he would not have purchased them.

72.     Plaintiff Debbie Hawkins is a natural person and is a citizen and resident of West Jefferson, North Carolina.  Plaintiff purchased Gerber baby foods, including but not limited to rice cereal, oatmeal, fruits, and vegetables, in the state of North Carolina, to feed her child(ren). Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

73.     Plaintiff Shannon Herrington is a natural person and is a citizen and resident of Fort Scott, Kansas.  In 2011-2012, 2015, and 2018, Plaintiff purchased Gerber baby foods, including but not limited to rice cereal, fruits, and vegetables, in the states of California and Kansas, to feed her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

74.     Plaintiff Amanda Hill is a natural person and is a citizen and resident of Meigs, Georgia.  In 2020-2021, Plaintiff purchased Gerber baby foods, including but not limited to fruits, chicken and turkey, in the state of Georgia, to feed her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

75.     Plaintiff Lillian Hinkle is a natural person and is a citizen and resident of Newark, Ohio.  In 2020, Plaintiff purchased Gerber baby foods, including but not limited to rice cereal, in the state of Ohio, to feed her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

76.     Plaintiff Amanda Hobbs-Rogers is a natural person and is a citizen and resident of Stanwood, Washington.  In 2015-2020, Plaintiff purchased Gerber baby foods, including but not limited to rice cereal, fruits, and vegetables, in the states of Oklahoma, Texas, Washington, and Wisconsin, to feed her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

77.     Plaintiff Sammi Hobdy is a natural person and is a citizen and resident of Florala, Alabama.  In 2007-2008 and 2019-2020, Plaintiff purchased Gerber baby foods, including but not limited to rice cereal, fruits, and vegetables, in the states of Alabama, Florida, and Georgia to feed her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

78.     Plaintiff Nichole Holling is a natural person and is a citizen and resident of Pinetop-Lakeside, Arizona.  In 2018-2019, Plaintiff purchased Gerber baby foods, including but not limited to rice cereal, oatmeal, fruits, vegetables, chicken and turkey, in the state of Arizona, to feed her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

79.     Plaintiff Shaylan Isaacs is a natural person and is a citizen and resident of Springville, Utah.  In 2020-2021, Plaintiff purchased Gerber baby foods, including but not limited to rice cereal, puffs, fruits, pudding, mac and cheese, and yogurt, in the states of Ohio and Utah, to feed her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy

metals in Defendant's baby foods. Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

80.     Plaintiff Jasmine Jackson is a natural person and is a citizen and resident of Bridgeport, Connecticut. In 2020-2021, Plaintiff purchased Gerber baby foods, including but not limited to rice cereal, oatmeal, fruits and vegetables, in the states of Connecticut and Delaware, to feed her child(ren). Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods. Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

81.     Plaintiff Yuhwa Jang is a natural person and is a citizen and resident of Henderson, Nevada. In 2019-2021, Plaintiff purchased Gerber baby foods, including but not limited to cereals, in the states of Georgia and Nevada, to feed her child(ren). Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods. Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

82.     Plaintiff Olivia Johnson is a natural person and is a citizen and resident of Marietta, Ohio. In 2010, 2012-2013, and 2019-2020, Plaintiff purchased Gerber baby foods, including but not limited to rice cereal, oatmeal, barley cereal, puffs, teething biscuits, yogurt melts, and stage 1-3 foods, in the states of Ohio, West Virginia, and Florida, to feed her child(ren). Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods. Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

83.     Plaintiff Rebecca Keeton is a natural person and is a citizen and resident of Newark, Ohio. In 2019-2020, Plaintiff purchased Gerber baby foods, including but not limited to rice

cereal, fruits, and vegetables, in the states of Ohio and Illinois, to feed her child(ren). Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods. Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

84.     Plaintiff Sara Kilburn is a natural person and is a citizen and resident of Muscatine, Iowa. In 2020-2021, Plaintiff purchased Gerber baby foods, including but not limited to oatmeal, puffs, fruits, and vegetables, in the states of Iowa and Pennsylvania, to feed her child(ren). Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods. Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

85.     Plaintiff Sarah Knaapen is a natural person and is a citizen and resident of Sturgeon Bay, Wisconsin. In 2017-2018 and 2020-2021, Plaintiff purchased Gerber baby foods, including but not limited to puffs, fruits, and vegetables, in the state of Wisconsin, to feed her child(ren). Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods. Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

86.     Plaintiff Rachel Knudson is a natural person and is a citizen and resident of College Station, Texas. In 2014-2017, Plaintiff purchased Gerber baby foods, including but not limited to rice cereal, whole wheat cereal, oatmeal, fruits, vegetables, lil' crunchies, yogurts, arrowroot cookies, lil' meals, and meats, in the states of Texas and Pennsylvania, to feed her child(ren). Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods. Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

87.     Plaintiff Karleen Kozaczka is a natural person and is a citizen and resident of Pawtucket, Rhode Island.  In 2018-2021, Plaintiff purchased Gerber baby foods, including but not limited to oatmeal and fruits, in the states of Massachusetts, New Hampshire, and Rhode Island to feed her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

88.     Plaintiff Rachael Kruup is a natural person and is a citizen and resident of Bryant, South Dakota.  In 2019-2020, Plaintiff purchased Gerber baby foods, including but not limited to rice cereal, oatmeal, fruits, vegetables, meats, rice snacks, and yogurt, in the states of North Dakota, Pennsylvania, and South Dakota, to feed her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

89.     Plaintiff Deana Linegar is a natural person and is a citizen and resident of Dearborn, Michigan.  In 2013-2015 and 2018-2020, Plaintiff purchased Gerber baby foods, including but not limited to rice cereal, oatmeal, fruits, and vegetables, in the state of Michigan, to feed her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

90.     Plaintiff April Lockhart is a natural person and is a citizen and resident of Albuquerque, New Mexico.  In 2012-2018, Plaintiff purchased Gerber baby foods, including but not limited to rice cereal, in the state of California, to feed her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had

Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

91.    Plaintiff Andrew Lohse is a natural person and is a citizen and resident of Harrisburg, South Dakota.  In 2012-2019, Plaintiff purchased Gerber baby foods, including but not limited to oatmeal, puffs, fruits, and vegetables, in the states of Michigan and South Dakota, to feed his child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods he purchased contained heavy metals, he would not have purchased them.

92.    Plaintiff Lori Ann Louis is a natural person and is a citizen and resident of Fall River, Massachusetts.  In 2006-2007, 2010-2011, and 2020-2021, Plaintiff purchased Gerber baby foods, including but not limited to oatmeal, fruits and vegetables, in the states of Connecticut, Massachusetts, New York and Rhode Island, to feed her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

93.    Plaintiff Samantha Lui is a natural person and is a citizen and resident of Tacoma, Washington.  In 2018-2021, Plaintiff purchased Gerber baby foods, including but not limited to fruits, vegetables, biscuits, lil' crunchies, and teethers, in the state of Washington, to feed her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

94.    Plaintiff Traci Marie Lussier is a natural person and is a citizen and resident of Middlebury, Vermont.  In 2002-2003, 2008-2009, and 2017-2018, Plaintiff purchased Gerber baby

foods, including but not limited to rice cereal, oatmeal, fruits, and vegetables, in the state of Vermont, to feed her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

95.     Plaintiff Elina Mahmens is a natural person and is a citizen and resident of Gravette, Arkansas.  In 2013-2014 and 2019-2020, Plaintiff purchased Gerber baby foods, including but not limited to rice cereal, ham, beef and chicken, in the state of Arkansas, to feed her child(ren). Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

96.     Plaintiff Brittany Martin is a natural person and is a citizen and resident of Saraland, Alabama. In 2020 and 2021, Plaintiff purchased Gerber baby foods, including but not limited to fruits and vegetables, in the state of Alabama, to feed her child(ren).   Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

97.     Plaintiff Marquetta Matthews is a natural person and is a citizen and resident of Durham, North Carolina.  In 2009-2010 and 2013-2020, Plaintiff purchased Gerber baby foods, including but not limited to rice cereal, oatmeal, fruits, and vegetables, in the state of North Carolina, to feed her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

98.     Plaintiff Elizabeth McDowell is a natural person and is a citizen and resident of Cullman, Alabama.  In 2007-2019, Plaintiff purchased Gerber baby foods, including but not limited to fruits, in the states of Alabama and Tennessee, to feed her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

99.     Plaintiff Kali McGlinch is a natural person and is a citizen and resident of Fillmore, Utah.  In 2020-2021, Plaintiff purchased Gerber baby foods, including but not limited to rice cereal, oatmeal, puffs, fruits, vegetables, meats, mac and cheese, teething snacks, and cookies, in the states of Ohio and Utah, to feed her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

100.    Plaintiff LaToya McHenry is a natural person and is a citizen and resident of Covington, Georgia.  In 2017-2018 and 2021, Plaintiff purchased Gerber baby foods, including but not limited to oatmeal, fruits, and vegetables, in the state of Georgia, to feed her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

101.    Plaintiff Lori-Ann Mckenzie-Henry is a natural person and is a citizen and resident of Upper Marlboro, Maryland.  In 2020-2021, Plaintiff purchased Gerber baby foods, including but not limited to rice cereal, fruits, vegetables, and yogurt, in the district of Washington, D.C., to feed her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy

metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

102.   Plaintiff Janice Taina Mercado Guadalupe is a natural person and is a citizen and resident of Smyrna, Georgia.  In 2005 and 2009-2018, Plaintiff purchased Gerber baby foods, including but not limited to rice cereal, fruits, and meats, in the state of Georgia, to feed her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

103.   Plaintiff Renee Milline is a natural person and is a citizen and resident of Houston, Alaska.  In 2014-2015 and 2015-2018, Plaintiff purchased Gerber baby foods, including but not limited to rice cereal, puffs, fruits, vegetables, step meals and snacks, in the state of Alaska, to feed her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

104.   Plaintiff Christina Mitchell is a natural person and is a citizen and resident of Soddy Daisy, Tennessee.  In 2017-2020, Plaintiff purchased Gerber baby foods, including but not limited to rice cereal, oatmeal, fruits, vegetables, and mini meals, in the state of Tennessee, to feed her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

105.   Plaintiff Loukevia Moore is a natural person and is a citizen and resident of Westwego, Louisiana.  In 1999-2021, Plaintiff purchased Gerber baby foods, including but not limited to fruits, in the states of Alabama and Florida, to feed her child(ren).  Plaintiff made those

purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

106.    Plaintiff Amanda Morency is a natural person and is a citizen and resident of Clinton Township, Michigan.  In 2006, 2012, 2015, and 2018, Plaintiff purchased Gerber baby foods, including but not limited to rice cereal, oatmeal, fruits, and vegetables, in the state of Michigan, to feed her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

107.    Plaintiff Andrea Mozo is a natural person and is a citizen and resident of Spanish Fork, Utah.  In 2019-2020, Plaintiff purchased Gerber baby foods, including but not limited to rice cereal, oatmeal, multi-grain cereal, fruits, and meats, in the state of Utah, to feed her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

108.    Plaintiff Tabitha Mullinax is a natural person and is a citizen and resident of Gaffney, South Carolina.  In 2018-2019, Plaintiff purchased Gerber baby foods, including but not limited to rice cereal, fruits, vegetables, and meats, in the state of South Carolina, to feed her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

109.    Plaintiff Santequia Ngwu is a natural person and is a citizen and resident of Hattiesburg, Mississippi.  In 2002, 2004, 2015-2016, Plaintiff purchased Gerber baby foods,

including but not limited to rice cereal, in the state of Georgia, to feed her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

110.    Plaintiff Stephanie Norgaard is a natural person and is a citizen and resident of Portland, Oregon.  In 2018 and 2020-2021, Plaintiff purchased Gerber baby foods, including but not limited to rice cereal, puffs, fruits, vegetables, yogurt melts, and snacks, in the state of Oregon, to feed her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

111.    Plaintiff Leah Ostapchenko is a natural person and is a citizen and resident of Leesburg, Georgia.  In 2019-2021, Plaintiff purchased Gerber baby foods, including but not limited to rice cereal, oatmeal, fruits, vegetables, meats, and lil' meals, in the state of Georgia, to feed her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

112.    Plaintiff Robert Partello is a natural person and is a citizen and resident of Gasport, New York.  In 2019-2020, Plaintiff purchased Gerber baby foods, including but not limited to rice cereal, oatmeal, whole-grain cereal, fruits, vegetables, meats, yogurt, snacks and finger foods, in the state of New York, to feed his child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods he purchased contained heavy metals, he would not have purchased them.

113.   Plaintiff Melinda Pass is a natural person and is a citizen and resident of Estill Springs, Tennessee.  In 2019-2020, Plaintiff purchased Gerber baby foods, including but not limited to rice cereal and oatmeal, in the states of Tennessee and Kentucky, to feed her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

114.   Plaintiff Krishna Patel is a natural person and is a citizen and resident of Carmel, Indiana.  In 2016-2018, Plaintiff purchased Gerber baby foods, including but not limited to rice cereal and fruits, in the states of Indiana and California, to feed her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

115.   Plaintiff Mia Pelletier is a natural person and is a citizen and resident of Limestone, Maine.  In 2016-2020, Plaintiff purchased Gerber baby foods, including but not limited to rice cereal, fruits, and vegetables, in the state of Maine, to feed her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

116.   Plaintiff Karina Pena is a natural person and is a citizen and resident of Newberg, Oregon.  In 2009-2012 and 2019-2021, Plaintiff purchased Gerber baby foods, including but not limited to solid foods, yogurts, and cookies, in the state of Oregon, to feed her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby

foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

117.    Plaintiff Tina Marie Perez is a natural person and is a citizen and resident of Horseheads, New York.  In 2020-2021, Plaintiff purchased Gerber baby foods, including but not limited to rice cereal, oatmeal, fruits, vegetables, and pasta primavera, in the states of New York and Pennsylvania, to feed her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

118.    Plaintiff Maurice Petetson is a natural person and is a citizen and resident of Washington, D.C.  In 2015-2017, Plaintiff purchased Gerber baby foods, including but not limited to rice cereal, in the states of Maryland, and Washington, D.C., to feed his child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods he purchased contained heavy metals, he would not have purchased them.

119.    Plaintiff Ashley Pierce is a natural person and is a citizen and resident of Berlin, New Hampshire.  In 2019-2021, Plaintiff purchased Gerber baby foods, including but not limited to rice cereal, fruits, and vegetables, in the state of Texas, to feed her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

120.    Plaintiff Ali Pliler-Lopez is a natural person and is a citizen and resident of North Little Rock, Arkansas.  In 2020-2021, Plaintiff purchased Gerber baby foods, including but not limited to rice cereal, oatmeal and multigrain cereal, in the state of Arkansas, to feed her child(ren).

Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods. Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

121.     Plaintiff Holly Plotts is a natural person and is a citizen and resident of Baltimore, Maryland. In 2001-2002, 2012-2013, and 2016-2017, Plaintiff purchased Gerber baby foods, including but not limited to rice cereal, oatmeal, fruits, vegetables, turkey, chicken, and yogurt, in the state of Maryland, to feed her child(ren). Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods. Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

122.     Plaintiff Janinne Price is a natural person and is a citizen and resident of Ninilchik, Alaska. In 2009-2021, Plaintiff purchased Gerber baby foods, including but not limited to rice cereal, oatmeal, puffs, cereal bars, all varieties of pouch and jarred foods, and rice teethers, in the state of Alaska, to feed her child(ren). Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods. Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

123.     Plaintiff Debbie Reed is a natural person and is a citizen and resident of Franklin, New Hampshire. In 2016-2021, Plaintiff purchased Gerber baby foods, including but not limited to fruits and vegetables, in the state of New Hampshire, to feed her child(ren). Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods. Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

124.    Plaintiff Sarah Ridings is a natural person and is a citizen and resident of Villa Ridge, Missouri.  In 2003, 2005-2008, 2016, and 2021, Plaintiff purchased Gerber baby foods, including but not limited to rice cereal, oatmeal, fruits, and vegetables, in the state of Missouri, to feed her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

125.    Plaintiff Kassandra Romero is a natural person and is a citizen and resident of Rock Springs, Wyoming.  In 2020 and 2021 Plaintiff purchased Gerber baby foods, including but not limited to cereal, oatmeal, fruits, and vegetables, in the state of Wyoming to feed her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

126.    Plaintiff Maggie Rouse is a natural person and is a citizen and resident of Cheyenne, Wyoming.  In 2012-2015, Plaintiff purchased Gerber baby foods, including but not limited to rice cereal, fruits, and vegetables, in the states of California and Wyoming, to feed her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

127.    Plaintiff Tiffany Salazar is a natural person and is a citizen and resident of Bullhead City, Arizona.  In 2017 and 2020, Plaintiff purchased Gerber baby foods, including but not limited to rice cereal and turkey, in the states of Arizona and California, to feed her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby

foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

128.    Plaintiff Sheena Sanders is a natural person and is a citizen and resident of Estill Springs, Tennessee.  In 2017-2021, Plaintiff purchased Gerber baby foods, including but not limited to rice cereal and oatmeal, in the state of Tennessee, to feed her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods. Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

129.    Plaintiff Lea Santos is a natural person and is a citizen and resident of Stroudsburg, Pennsylvania.  In 2020-2021, Plaintiff purchased Gerber baby foods, including but not limited to fruits, vegetables, teethers, and meats, in the state of Pennsylvania, to feed her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

130.    Plaintiff Kirthi Sasikumar is a natural person and is a citizen and resident of Rochester Hills, Michigan.  In 2018-2020, Plaintiff purchased Gerber baby foods, including but not limited to cereal, fruits, and vegetables, in the state of Michigan, to feed her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

131.    Plaintiff Amanda Schram is a natural person and is a citizen and resident of Rock Hill, South Carolina.  In 2019-2020, Plaintiff purchased Gerber baby foods, including but not limited to rice cereal, oatmeal, fruits, and vegetables, in the states of South Carolina and North

Carolina, to feed her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

132.    Plaintiff Brenda Schroeder is a natural person and is a citizen and resident of Browns Mills, New Jersey.  In 2020-2021, Plaintiff purchased Gerber baby foods, including but not limited to rice cereal, oatmeal, multigrain cereal, fruits, and vegetables, in the state of New Jersey, to feed her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

133.    Plaintiff Julie Secrist is a natural person and is a citizen and resident of Lakewood, Colorado.  In 2005-2007 and 2018-2020, Plaintiff purchased Gerber baby foods, including but not limited to rice cereal, oatmeal, fruits, vegetables, snack puffs, Hawaiian delight, and turkey, in the state of Colorado, to feed her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

134.    Plaintiff Michellele Shorter is a natural person and is a citizen and resident of Gary, Indiana.  In 2018-2021, Plaintiff purchased Gerber baby foods, including but not limited to rice cereal, fruits, and vegetables, in the state of Indiana, to feed her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

135.    Plaintiff Cheryl Smith is a natural person and is a citizen and resident of Lawrenceburg, Kentucky.  In 1999-2001, 2005-2006, and 2019-2020, Plaintiff purchased Gerber

baby foods, including but not limited to oatmeal, fruits, vegetables, and meat in the states of Kentucky, Florida and North Carolina, to feed her child(ren). Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods. Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

136.    Plaintiff Kinder Smith is a natural person and is a citizen and resident of Gallatin, Tennessee. In 2008-2011 and 2014-2017, Plaintiff purchased Gerber baby foods, including but not limited to rice cereal, oatmeal, fruits, vegetables, meats, and juices in the state of Tennessee, to feed her child(ren). Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods. Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

137.    Plaintiff Emily Soderbloom-Cathey is a natural person and is a citizen and resident of Fulton, Missouri. In 2010, 2012 and 2016, Plaintiff purchased Gerber baby foods, including but not limited to rice cereal and oatmeal, in the states of Missouri, Michigan and Illinois, to feed her child(ren). Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods. Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

138.    Plaintiff Abby Sondall is a natural person and is a citizen and resident of Wailuku, Hawaii. In 2017-2018, Plaintiff purchased Gerber baby foods, including but not limited to rice cereal, fruits, and vegetables, in the state of Hawaii, to feed her child(ren). Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods. Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

139.    Plaintiff Kirsten South is a natural person and is a citizen and resident of Carthage, Mississippi.  In 2020-2021, Plaintiff purchased Gerber baby foods, including but not limited to rice cereal, in the state of Mississippi, to feed her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

140.    Plaintiff Lakrisha Spikes is a natural person and is a citizen and resident of Colfax, Louisiana.  In 2010-2019, Plaintiff purchased Gerber baby foods, including but not limited to rice cereal and oatmeal, in the states of Louisiana and Texas, to feed her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

141.    Plaintiff Christine Steele is a natural person and is a citizen and resident of Sioux Falls, South Dakota.  In 2000-2006 and 2018-2020, Plaintiff purchased Gerber baby foods, including but not limited to rice cereal, oatmeal, puffs, fruits, vegetables, meats, yogurts, juices, and lil' crunchies, in the state of South Dakota, to feed her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

142.    Plaintiff Porsche Stokes is a natural person and is a citizen and resident of Macon, Georgia.  In 2020-2021, Plaintiff purchased Gerber baby foods, including but not limited to rice cereal, oatmeal, fruits, vegetables, and chicken, in the state of Georgia, to feed her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's

baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

143.    Plaintiff Abby Stratton is a natural person and is a citizen and resident of Hurricane, Utah.  In 2016-2018, Plaintiff purchased Gerber baby foods, including but not limited to rice cereal, oatmeal, fruits, vegetables, and meats, in the state of Utah, to feed her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

144.    Plaintiff Rachel Stratton is a natural person and is a citizen and resident of Tinmouth, Vermont.  In 2018-2021, Plaintiff purchased Gerber baby foods, including but not limited to rice cereal and fruits, in the state of Vermont, to feed her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

145.    Plaintiff Ashley Swenningson is a natural person and is a citizen and resident of Hazen, North Dakota.  In 2009-2021, Plaintiff purchased Gerber baby foods, including but not limited to rice cereal, oatmeal, fruits, vegetables, meats, rice snacks, and yogurt, in the state of North Dakota, to feed her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

146.    Plaintiff Kyla Talley is a natural person and is a citizen and resident of Torrington, Wyoming.  In 2018-2021, Plaintiff purchased Gerber baby foods, including but not limited to fruits and vegetables, in the states of Nebraska and Wyoming, to feed her child(ren).  Plaintiff made

those purchases without knowledge of the presence of heavy metals in Defendant's baby foods. Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

147.  Plaintiff Margo Tezeno is a natural person and is a citizen and resident of Opelousas, Louisiana.  In 2010-2021, Plaintiff purchased Gerber baby foods, including but not limited to rice cereal, barley cereal, fruits, vegetables, Hawaiian delight, chicken, turkey, and entrees, in the states of Louisiana and Florida, to feed her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

148.  Plaintiff Shiloh Thomas is a natural person and is a citizen and resident of Gatesville, Texas.  In 2021, Plaintiff purchased Gerber baby foods, including but not limited to oatmeal, fruits, vegetables, and pick-ups, in the state of Texas, to feed her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

149.  Plaintiff Katrina Thomas is a natural person and is a citizen and resident of Dover, Delaware.  In 2013-2018, Plaintiff purchased Gerber baby foods, including but not limited to fruits and vegetables, in the states of Delaware, Maryland and Virginia, to feed her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

150.    Plaintiff Rhianna Thorton is a natural person and is a citizen and resident of Waycross, Georgia.  In 2020-2021, Plaintiff purchased Gerber baby foods, including but not limited to fruits rice puffs, fruits, and vegetables, in the states of Georgia and Florida, to feed her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

151.    Plaintiff Dillon Townzen is a natural person and is a citizen and resident of Medford, Oregon.  In 2012-2013, 2016, 2018, and 2020, Plaintiff purchased Gerber baby foods, in the state of Oregon, to feed her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

152.    Plaintiff Rachael Treetop is a natural person and is a citizen and resident of Bismarck, North Dakota.  In 2015-2019, Plaintiff purchased Gerber baby foods in the states of Minnesota and North Dakota, to feed her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

153.    Plaintiff Emma Trolinder is a natural person and is a citizen and resident of St. Paul, Indiana.  In 2019-2020, Plaintiff purchased Gerber baby foods, including but not limited to rice cereal, oatmeal, fruits, vegetables, chicken, turkey, ham, and beef, in the state of Indiana, to feed her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals

in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

154.  Plaintiff Megan Troyer is a natural person and is a citizen and resident of Oscoda, Michigan.  In 2014-2016 and 2020-2021, Plaintiff purchased Gerber baby foods, including but not limited to rice cereal, oatmeal, fruits, vegetables, and meats, in the states of Michigan and Texas, to feed her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

155.  Plaintiff Sonja Renee Twiggs is a natural person and is a citizen and resident of Sandpoint, Idaho.  In 2008-2021, Plaintiff purchased Gerber baby foods, in the states of Idaho, Montana, and Washington, to feed her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

156.  Plaintiff Brittany Wallace is a natural person and is a citizen and resident of Golconda, Illinois.  In 2016-2021, Plaintiff purchased Gerber baby foods, including but not limited to grain bars, yogurt blends, puffs, biscuits, lil' crunchies, and lil' meals, in the states of Illinois and Kentucky, to feed her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

157.  Plaintiff Monique Warren is a natural person and is a citizen and resident of Norwich, Connecticut.  In 2017-2019, Plaintiff purchased Gerber baby foods, including but not limited to cereals, vegetables and meals, in the states of Connecticut and Oklahoma, to feed her

child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

158.    Plaintiff Beverly Watkins is a natural person and is a citizen and resident of Burlington, North Carolina.  In 2011, 2013, and 2020-2021, Plaintiff purchased Gerber baby foods, including but not limited to rice cereal, oatmeal, fruits, vegetables, meats, Hawaiian delight, mac n cheese, barley bowls, lil' crunchies, grain bars, teether wheels, toddler snacks, lil' biscuits, yogurt melts, and arrowroot cookies, in the state of North Carolina, to feed her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods. Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

159.    Plaintiff Jennifer Watts is a natural person and is a citizen and resident of Mattoon, Illinois.  In 2002-2003 and 2013-2015, Plaintiff purchased Gerber baby foods, including but not limited to rice cereal, fruits, and vegetables, in the states of Washington and Illinois, to feed her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

160.    Plaintiff Acacia Wilson is a natural person and is a citizen and resident of Atlantic, Iowa.  In 2020-2021, Plaintiff purchased Gerber baby foods, including but not limited to rice cereal, puffs, fruits, lil' crunchies, and harvest bowl, in the states of Iowa and Nebraska, to feed her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

161.    Plaintiff Amber Wright is a natural person and is a citizen and resident of Louisville, Kentucky.  In 2020-2021, Plaintiff purchased Gerber baby foods, including but not limited to rice cereal, oatmeal, fruits, vegetables, and chicken, in the state of Kentucky, to feed her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

162.    Plaintiff Lauren Yesh is a natural person and is a citizen and resident of Madisonville, Kentucky.  In 2019-2020, Plaintiff purchased Gerber baby foods, including but not limited to rice cereal, oatmeal, puffs, fruits, vegetables, teething wheels and wafers, lil' crunchies, yogurt, and animal crackers, in the states of Kentucky and Indiana, to feed her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

163.    Plaintiff Retrena Younge is a natural person and is a citizen and resident of Little Rock, Arkansas.  In 1998, 2014-2016, 2018, and 2020-2021, Plaintiff purchased Gerber baby foods, including but not limited to rice cereal, ham, beef and chicken, in the state of Arkansas, to feed her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

164.    Plaintiff Charisse Zapata is a natural person and is a citizen and resident of Branchville, New Jersey.  In 2021, Plaintiff purchased Gerber baby foods, including but not limited to fruits and vegetables, in the state of New Jersey, to feed her child(ren).  Plaintiff made those purchases without knowledge of the presence of heavy metals in Defendant's baby foods.  Had

Plaintiff known that the Defendant's baby foods she purchased contained heavy metals, she would not have purchased them.

## JURISDICTION AND VENUE

165.     This Court has original subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d).  Plaintiffs bring this civil action seeking to represent a class of more than 100 plaintiffs ("Class", "Classes", or "Subclass"), pursuant to Fed. R. Civ. P. 23.  The amount in controversy exceeds the sum of $5,000,000, exclusive of interest and costs.  At all times relevant herein, at least one member of the proposed Class of plaintiffs is a citizen of a state different from the defendant.

166.     As its principal place of business, Gerber is at home in the State of Virginia giving the Court general personal jurisdiction over it.

167.     Moreover, Gerber has intentionally availed itself of the Virginia market, by regularly marketing and advertising its products there and purposefully selling to distributors with the intent those products be sold in Virginia giving sufficient connection between Gerber's contacts with the state and this litigation to provide the Court specific personal jurisdiction over Gerber.

168.     Venue is proper in this district under 28 U.S.C. § 1391(b). A substantial part of the events giving rise to plaintiffs' claims, namely the sale and purchase of baby food contaminated with toxic heavy metals, occurred in this District.

## FACTS RELEVANT TO ALL COUNTS

169.     Toxic heavy metals generally refer to naturally occurring metals and semi-metallic compounds and elements that negatively affect human health. Toxic heavy metals include arsenic, beryllium, cadmium, lead, and mercury.

170. There is no established health benefit for the consumption of mercury, cadmium, lead or arsenic and foods containing them are unfit for consumption. The poisonous effects of toxic heavy metals have been known for thousands of years.

171. Some of the well-known effects of exposure to arsenic, beryllium, cadmium, lead, and mercury include: cancer, encephalopathy (brain disfunction), osteomalacia (softening of bones), pulmonary fibrosis, diabetes, autism, and attention deficit/hyperactivity disorder.

172. Babies' developing brains are exceptionally sensitive to injury caused by these toxic heavy metals, and several developmental processes have been shown to be highly vulnerable to chemical toxicity.

173. Even low levels of exposure to toxic heavy metals can cause serious and often irreversible damage to brain development leading to permanent decreases in IQ, diminished future economic productivity, and increased risk of future criminal and antisocial behavior. As a result, there is no established safe level of toxic heavy metals for babies. Any amount is too much.

174. Although not generally known by the general public, toxic heavy metals can contaminate foods in the growing process when the food is grown in contaminated soil or watered with contaminated water.

175. Therefore, it is important that food ingredients are grown in soil and watered with water that are free of these contaminants.

176. However, even when a grower fails to take the necessary steps to prevent contamination of food ingredients with heavy metals through soil or water exposures, various techniques can be used to remediate the contamination. For example, studies have shown that simply washing rice before it is cooked can reduce the arsenic concentration by 57%. Boiling vegetables in distilled water can reduce the arsenic concentration by 60%. Peeling beets, carrots,

and potatoes also reduces arsenic levels. Chelating agents can also be used for the removal of heavy metals from foods.

177.    On February 4, 2021, the Subcommittee on Economic and Consumer Policy Committee on Oversight and Reform of the U.S. House of Representatives released a staff report ("House Staff Report") which detailed an investigation that revealed that Defendant's baby foods were contaminated with significant levels of toxic heavy metals, including arsenic, lead, cadmium, and mercury. The House Staff Report is attached as Exhibit 1 and incorporated herein.

178.    Gerber regularly tests the ingredients it uses to manufacture its baby foods as well as its finished baby foods for toxic heavy metals.

179.    In a letter dated December 19, 2019, Gerber's Chief Executive Officer responded for Gerber to questions from members of Congress. Gerber's careful answers to Congress stand in stark contrast to Gerber's commercially motivated public messaging. Examples of these contrasting statements include but are not limited to the following:

    A.  Sourcing of ingredients.

        1)  *To Congress:* Gerber carefully distinguished "our growers" and "growers or suppliers that are new to Gerber." Gerber revealed its passive involvement and the limited scope of testing soil prior to planting crops for use in Gerber products—"Our Gerber team works directly with our growers to advise on soil testing prior to planting . . ." (emphasis added). Further, due to changing customer needs, Gerber is "constantly evaluating new crops and ingredients," and only "[s]ometimes these can be sourced from [Gerber's] current growers

and suppliers." The majority of the "new" ingredients that Gerber "are sourced from growers or suppliers that are new to Gerber."

2) *To Parents:* In public messaging, Gerber overstates the scope and use of its soil testing and entirely omits any information about crops that come from growers and suppliers who are new to Gerber. Even after responding to Congress, Gerber continues to mislead the public. On February 4, 2021, Gerber posted to its website a page entitled "How We Make Health Foods for Baby." At the top of the page is a graphic that purports to describe Gerber's farming and testing practices to convince parents: "From farm to high chair, Gerber thinks about the health and safety of baby every step of the way." The images suggest that Gerber's ingredients are grown only in fields that Gerber picks, only after Gerber tests the water and the soil in those fields, and all within a system that Gerber entirely controls according to the best available science. In the text that accompanies the graphic, Gerber makes unqualified assertions: "All of our foods meet our safety and quality standards . . . We thoroughly oversee all levels of the growing and the production process." Then, in a February 18, 2021 post to its website, Gerber was misleadingly selective about what it stated to Congress concerning its efforts to minimize heavy metals in Gerber products: "We prioritize growing locations based on climate and soil composition. We approve fields before crops are planted based on soil testing." Gerber's recent statements are a continuation of its long-

standing branding strategy, and at all times relevant to the subject complaint, Gerber used similar misleading assertions about sourcing ingredients to persuade Plaintiffs and Class members to buy Gerber products instead of other brands of baby food—on its "Commitment to Quality" webpage, Gerber explains, "Unlike any other baby brand, we have dedicated Gerber Farms – and many of these farms have been with us for generations."

B. <u>Testing</u>.

1) *To Congress:* Gerber explained to Congress, "We regularly test our ingredients, and periodically test our finished foods. The majority of our contaminant testing is focused on incoming ingredients . . . Finished product testing is considered as a verification activity and is done less frequently." Gerber does not further explain how much less frequently it tests finished products for contaminants.

2) *To Parents:* On August 16, 2018, Gerber touted on its official Facebook page that nothing is more important to Gerber than the health and safety of parents' little one, which is why all their foods meet Gerber's standards, "which are among the strictest not just in the U.S., but in the world, and are based on guidelines like those set by the FDA and the EPA." The next day, a parent replied to Gerber by flatly asking: "How often do you test the ingredients coming into your factories or the finished baby food before you put into jars to ensure the levels are safe for consumption?" Gerber responded: "<u>All</u> of our foods meet our

high safety and quality standards and are <u>absolutely safe</u>. We regularly test our ingredients before using them <u>and then still test our finished foods</u>" (emphasis added). Not only were Gerber's general branding and advertisements calculated to conceal the presence of heavy metals and other contaminants, but even when responding to a parent's specific question in a public forum, Gerber chose to misrepresentation and omissions instead of honest disclosure of even the minimal level of detail that Gerber stated in its 2019 letter to Congress.

180.    Gerber held itself out to be a leading expert and authority all matters relating to baby food. One section of Gerber's website boldly displays the title: "We Know Babies Better than Anyone." According to Gerber, Gerber would do anything for your baby, just like parents, which is apparently the reason Gerber makes available their "baby experts" to answer parents' questions "and even help with feeding schedules and personalized menu planning." Gerber boasts that its worldwide research and development network, the largest of any food company, have achieved many nutrition breakthroughs, including its Feeding Infants and Toddlers Study, "[o]ne of the most notable research efforts" that "has resulted in over 50 peer-reviewed publications and is widely referenced by nutrition and feeding experts and/organizations including the American Academy of Pediatrics and the Institute of Medicine."

181.    Gerber knowingly sold baby food made from ingredients that it had tested to contain over 90 ppb inorganic arsenic, as high as 48 ppb lead, and cadmium in excess of 5 ppb.

182.    Gerber knowingly sold baby food containing arsenic, cadmium and lead.

183.    Despite knowingly manufacturing and selling baby foods that contain toxic heavy metals, Defendant did not disclose these facts to consumers through any of its branding, advertising, or labeling.

184.    Defendant did not disclose the presence of toxic heavy metals in its baby foods with the intent that Plaintiffs and Class members would purchase its baby foods as they knew the presence of toxic heavy metals was material to purchasers of baby foods, including Plaintiffs and Class members, and that Plaintiffs and Class members would not purchase its baby foods if they knew that Defendant knowingly sold baby foods containing toxic heavy metals.

185.    Plaintiffs and Class members purchased the baby foods at issue herein for its use or that of members of its households.

186.    At all times material hereto, Defendant was a merchant of baby food and engaged in the advertising, offering for sale, sale, and/or distribution of goods, namely baby food.

187.    Defendant's acts or practices were likely to cause, and did cause, substantial injury to consumers.

188.    Defendant's acts or practices were likely to mislead a reasonable consumer, and did mislead Plaintiffs and Class members.

189.    Plaintiffs and Class members were deceived by Defendant's deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendant's baby foods or would have paid less for those products.

190.    Instead, as a result of Defendant's misrepresentation, Plaintiffs and Class members suffered monetary losses in that (1) the actual value of the merchandise they received was less than the value of the merchandise as represented denying them of the benefit of their bargain; and (2)

Plaintiffs and Class members paid more than the fair market value of the merchandise they received causing them out-of-pocket damages.

191.    The injuries caused by Defendant's acts or practices, namely consumers' monetary losses, are not outweighed by any countervailing benefit to consumers or competition. Defendant's unfair acts served no purpose other than to increase its own profits.

192.    Plaintiff and Class members' injuries were not reasonably avoidable. Because Defendant was the sole source of material information and did not disclose such information to its customers, consumers could not have had reason to anticipate the impending harm and thus avoided their injuries.

## CLASS ACTION ALLEGATIONS

193.    Plaintiffs bring this action individually and on behalf of the following Class pursuant to Fed. R. Civ. P. 23(b)(3): All retail purchasers of Defendant's Baby Food sold in the United States from within the applicable statute of limitations until February 4, 2021.

194.    Plaintiffs also bring this action on behalf of state Subclasses consisting of all retail purchasers of Defendant's Baby Food sold in that state from within the applicable statute of limitations until February 4, 2021.

195.    Specifically excluded from each Class are: Defendant's employees and agents; any Judge conducting proceedings in this action and its parents, spouses and children as well as any other member of its family residing in the judge's household; counsel of record in this action and its parents, spouses and children as well as any other member of its family residing in Counsel's household; and the legal representatives, heirs, successors and assigns of any excluded person.

196.    The exact number of the members of the Class (or Subclasses) is not presently known, but is so numerous that joinder of individual members is this action is impracticable.  Based

on the nature of the activities alleged, Plaintiffs believe that the members of the Class number in the millions and are geographically dispersed throughout the United States.

197.    Plaintiffs are members of the Class, and Plaintiffs' claims are typical of the claims of the other Class members. Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs understand and appreciate its duties to the Class and Subclass and are committed to vigorously protecting the rights of absent members of the Class and Subclass.

198.    Plaintiffs' interests are coincident with, and not antagonistic to, those of the other members of the Class. The claims of all members of the Class, including Plaintiffs, depend upon a showing that Defendant sold baby food contaminated with toxic heavy metals.

199.    Plaintiffs are represented by counsel who are competent and experienced in the prosecution of class action litigation.

200.    The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendant.

201.    The questions of law and fact common to the members of the Class predominate over any questions affecting only individual members.

202.    Common issues of law and fact include, but are not limited to, the following:

    a.  Did Defendant sell baby food contaminated with toxic heavy metals?

    b.  Did Defendant's testing reveal the presence of toxic heavy metals in its baby food ingredients?

    c.  Does the presence of toxic heavy metals make baby food unfit for consumption?

    d.  Is the presence of toxic heavy metals material to reasonable consumers of baby foods?

e. Did Defendant disclose the presence of toxic heavy metals in its baby foods?

203. A class action is superior to the other available methods for the fair and efficient adjudication of this controversy. The prosecution of separate actions by individual members of the Class would impose heavy burdens on the courts and Defendant and would create a risk of inconsistent or varying adjudications of the questions of law and fact common to the Class. A class action, on the other hand, would achieve substantial economies of time, effort, and expense, and would assure uniformity of decision as to persons similarly situated without sacrificing procedural fairness or bringing about other undesirable results. Absent a class action, it would not be feasible for the vast majority of the members of the Class to seek redress for the violations of law alleged herein.

204. This class action presents no difficulties in management that would preclude its maintenance as a class action.

## COUNT 1
### Breach of Implied Warranty of Merchantability
### on Behalf of Plaintiffs and the Nationwide Class

205. Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

206. Plaintiffs bring this Count individually and on behalf of the members of the Nationwide Class against Defendant.

207. The Magnuson-Moss Warranty Act creates a private right of action for any consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under the Act or under a written warranty, implied warranty, or service contract. 15 U.S.C. § 2310(d)(1).

208. At all times relevant hereto, Defendant was engaged in the sale of toxic baby food, as described herein, throughout the United States, including Virginia, for use by members of the

general public, including Plaintiffs and the members of the Class with the intent that it be used as food for babies.

209.    At all times relevant hereto, Defendant manufactured its toxic baby food and placed it in sealed packaging to be opened by the ultimate consumer and fed to human babies.

210.    In so doing, Defendant impliedly warranted that the toxic baby food sold to Plaintiffs and the Class was wholesome, uncontaminated and fit for the ordinary purpose for which such goods are used, i.e., feeding babies.

211.    When sold by Defendant, the package was expected to reach the ultimate consumer without substantial change in the condition in which it was sold, and it did, in fact, reach its ultimate consumer without substantial change.

212.    Plaintiffs used Defendant's toxic baby foods to feed their children as intended by Defendant.

213.    The toxic baby food sold by Defendant was not wholesome, uncontaminated or fit for human consumption at the time of sale due to the presence of toxic heavy metals.

214.    Defendant had actual knowledge of its breaches of warranty set forth above as they routinely measure the amount of heavy metals in the ingredients of its toxic baby foods.

215.    Plaintiffs provided Defendant with pre-suit notice of its breaches of warranty by sending a certified letter to Defendant containing the basis of Plaintiffs' claims.  Notice was received by Defendant on or about March 24, 2021.

216.    As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Plaintiffs and the other members of the Class have suffered damages in the amount of the sales price of the toxic baby food.

217. As a result of Defendant's breach of warranty, Plaintiffs and Class members suffered actual damages in that (1) the actual value of the merchandise they received was less than the value of the merchandise they bargained for denying them of the benefit of their bargain; and (2) Plaintiffs and Class members paid more than the fair market value of the merchandise they received causing them out-of-pocket damages.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

     a. Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

     b. Designating Plaintiffs as Class representative and counsel as Class counsel;

     c. Entering judgment in favor of Plaintiffs and the Class and against Defendant;

     d. Awarding Plaintiffs and Class members damages; and

     e. Granting such further relief as the Court deems just.

**COUNT 2**
**Magnuson-Moss Warranty Act (25 U.S.C. §§ 2301, *et seq*.),**
**on Behalf of Plaintiffs and the Nationwide Class**

218. Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

219. Plaintiffs bring this Count individually and on behalf of the members of the nationwide Class against Defendant.

220. At all times relevant hereto, Defendant was engaged in the sale of toxic baby food, as described herein, throughout the United States, including Virginia, for use by members of the

general public, including Plaintiffs and the members of the Class with the intent that it be used as food for babies.

221.    At all times relevant hereto, Defendant manufactured its toxic baby food and placed it in sealed packaging to be opened by the ultimate consumer and fed to human babies.

222.    Defendant's toxic baby foods are goods that are normally purchased for personal, family or household purposes.

223.    Plaintiffs and Class members purchased Defendant's toxic baby food for consumption by babies in its care. Plaintiffs have each purchased more than $5 of Defendant's toxic baby food and their individual claims exceed $25.

224.    In connection with the sale of its toxic baby foods, Defendant made written affirmations of fact directed to Plaintiffs and Class members relating to the nature of the material and affirming that such material is defect free or will meet a specified level of performance over a specified period of time.

225.    Defendant represented through its marketing and labeling that its toxic baby foods were fit for consumption.

226.    However, due to the presence of toxic heavy metals, Defendant's toxic baby foods were not fit for consumption.

227.    Plaintiffs relied on Defendant's representations that its toxic baby foods were fit for consumption and these representations were part of the basis of the bargain.

228.    Plaintiffs and Class members were injured as a direct and proximate cause of Defendant's breach of warranty. Plaintiffs and members of the Class have been harmed because they would not have purchased the toxic baby food had they known it was unfit for consumption.

229. Defendant had actual knowledge of its breaches of warranty set forth above as they routinely measure the amount of heavy metals in the ingredients of its toxic baby foods.

230. Plaintiffs provided Defendant with pre-suit notice of its breaches of warranty by sending a certified letter to Defendant containing the basis of Plaintiffs' claims. Notice was received by Defendant on or about March 24, 2021.

231. As a direct and proximate result of Defendant's breach of warranty, Plaintiffs and the other members of the Class have suffered damages in the amount of the sales price of the toxic baby food.

232. As a result of Defendant's breach of warranty, Plaintiffs and Class members suffered actual damages in that (1) the actual value of the merchandise they received was less than the value of the merchandise they bargained for denying them of the benefit of their bargain; and (2) Plaintiffs and Class members paid more than the fair market value of the merchandise they received causing them out-of-pocket damages.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

a. Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

b. Designating Plaintiffs as Class representative and counsel as Class counsel;

c. Entering judgment in favor of Plaintiffs and the Class and against Defendant;

d. Awarding Plaintiffs and Class members damages; and

e. Granting such further relief as the Court deems just.

**COUNT 3**
**Breach of Express Warranty**
**on Behalf of Plaintiffs and the Nationwide Class**

233.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

234.    Plaintiffs bring this Count individually and on behalf of the members of the nationwide Class against Defendant.

235.    At all times relevant hereto, Defendant was engaged in the sale of toxic baby food, as described herein, throughout the United States, including Illinois, for use by members of the general public, including Plaintiffs and the members of the Class with the intent that it be used as food for babies.

236.    At all times relevant hereto, Defendant manufactured its toxic baby food and placed it in sealed packaging to be opened by the ultimate consumer and fed to human babies.

237.    When sold by Defendant, the package was expected to reach the ultimate consumer without substantial change in the condition in which it was sold, and it did, in fact, reach its ultimate consumer without substantial change.

238.    The toxic baby food sold by Defendant did not conform to Defendant's representations and warranties in that it was not wholesome, uncontaminated or fit for human consumption due to the presence of toxic heavy metals.

239.    Defendant had actual knowledge of its breaches of warranty set forth above as they routinely measure the amount of heavy metals in the ingredients of its toxic baby foods.

240.    Plaintiffs provided Defendant with pre-suit notice of its breaches of warranty by sending a certified letter to Defendant containing the basis of Plaintiffs' claims.  Notice was received by Defendant on or about March 24, 2021.

241.    As a direct and proximate result of Defendant's breach of warranty, Plaintiffs and the other members of the Class have suffered damages in the amount of the sales price of the toxic baby food.

242.    As a result of Defendant's breach of warranty, Plaintiffs and Class members suffered actual damages in that (1) the actual value of the merchandise they received was less than the value of the merchandise they bargained for denying them of the benefit of their bargain; and (2) Plaintiffs and Class members paid more than the fair market value of the merchandise they received causing them out-of-pocket damages.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

a.  Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

b.  Designating Plaintiffs as Class representative and counsel as Class counsel;

c.  Entering judgment in favor of Plaintiffs and the Class and against Defendant;

d.  Awarding Plaintiffs and Class members damages; and

e.  Granting such further relief as the Court deems just.

**COUNT 4**
**Violation of the Alabama Deceptive Trade Practices Act—Deception (Ala. Code §§ 8-19-1**
***et seq.*), on Behalf of Plaintiffs Olivia Boyer, Cheyenne Browning, Elaine Cryer, Sammi**
**Hobdy, Brittany Martin, Elizabeth McDowell, Loukevia Moore, and the Alabama Subclass**

243.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

212.     Plaintiffs Olivia Boyer, Cheyenne Browning, Elaine Cryer, Sammi Hobdy, Brittany Martin, Elizabeth McDowell and Loukevia Moore bring this Count individually and on behalf of the members of the Alabama Subclass.

213.     This claim is brought in the alternative to any common law claim for fraud, misrepresentation, deceit, suppression of material facts or fraudulent concealment arising out of any act, occurrence or transaction actionable under the Alabama Deceptive Trade Practices Act.

214.     At all relevant times, members of the Alabama Subclass were natural people who purchased Defendant's toxic baby food products detailed above for personal, family or household use.

215.     At all relevant times, Defendant was either natural persons or corporations, trusts, partnerships, incorporated or unincorporated associations or some other legal entity.

216.     The Alabama Deceptive Trade Practices Act declares that (1) passing off goods or services as those of another; (2) causing confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services; (3) causing confusion or misunderstanding as to the affiliation, connection, or association with, or certification by another, provided that this section shall not prohibit the private labeling of goods or services; (4) using deceptive representations or designations of geographic origin in connection with goods or services; (5) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have or that a person has sponsorship, approval, status, affiliation, or connection that he or she does not have; (6) representing that goods are original or new if they are deteriorated, reconditioned, reclaimed, used, secondhand, or altered to the point of decreasing their value or rendering the goods unfit for the ordinary purpose for which they were purchased; (7) representing that goods or services are of a particular standard,

quality, or grade, or that goods are of a particular style or model, if they are of another; (8) disparaging the goods, services, or business of another by false or misleading representation of fact; (9) advertising goods or services with intent not to sell them as advertised; (10) advertising goods or services with intent not to supply reasonably expectable public demand unless the advertisement discloses a limitation of quantity; (11) making a false or misleading statement of fact concerning the reasons for, existence of, or amounts of, price reductions; and (12) engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce; is unlawful. *See* Ala. Code § 8-19-5.

217.    The Alabama Deceptive Trade Practices Act further states that any person who commits one or more of the acts or practices declared unlawful under this chapter and thereby causes monetary damage to a consumer, shall be liable to each consumer for (1) any actual damages sustained by such consumer or person, or the sum of $100, whichever is greater; or (2) up to three times any actual damages. *See* Ala. Code § 8-19-10.

218.    Defendant, by and through its employees, agents, and/or servants, and in connection with its advertising and sale of its toxic baby food products detailed above, knowingly engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts as described in the allegations above.

219.    Defendant knew that its statements were false or that its conduct was deceptive because, on information and belief, it routinely tested the raw ingredients used in its toxic baby foods as well as its finished toxic baby foods for the presence of toxic heavy metals.

220.    The facts that Defendant misrepresented, concealed, suppressed or omitted as alleged above were material, in that such facts are the type of information upon which a reasonable consumer is expected to rely in making a decision of whether to purchase Defendant's products.

221.   Defendant's misrepresentation, concealment, suppression and omission of material facts as alleged above creates a likelihood of deception and has the capacity to deceive a reasonable consumer.

222.   Defendant engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts as described in the allegations above with the intent that Plaintiffs and Class members would rely on those deceptive and unfair acts and practices and induce Plaintiffs and Class members to purchase Defendant's products.

223.   Because the characteristics of Defendant's merchandise were not as represented, and those characteristics are material to a reasonable consumer of the type of merchandise, the value of that merchandise was less than the value of the merchandise would have had the merchandise actually possessed the characteristics that were represented.

224.   Plaintiffs and Class members were deceived by Defendant's deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendant's products or would have paid less for those products.

225.   Instead, as a result of Defendant's misrepresentation, Plaintiffs and Class members suffered monetary losses in that (1) the actual value of the merchandise they received was less than the value of the merchandise as represented denying them of the benefit of their bargain; and (2) Plaintiffs and Class members paid more than the fair market value of the merchandise they received causing them out-of-pocket damages.

226.   Plaintiffs and Class members could not have avoided these injuries. Because Defendant were the sole source of material information that Defendant failed to disclose, Plaintiffs and Class members could not have had reason to anticipate the impending harm and thus avoided their injuries.

227.    Plaintiffs provided Defendant pre-suit notice pursuant to Ala. Code § 8-19-10(e) by sending a certified letter containing the basis of Plaintiffs' claims on April 13, 2021.  Notice was received by Defendant on or about April 19, 2021.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

   a.  Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

   b.  Designating Plaintiffs as Class representative and counsel as Class counsel;

   c.  Entering judgment in favor of Plaintiffs and the Class and against Defendant;

   d.  Entering injunctive relief against Defendant requiring that it cease its deceptive and unfair acts and practices and make corrective disclosures;

   e.  Awarding Plaintiffs and Class their actual damages, or the sum of $100, whichever is greater; or up to three times their actual damages; and

   f.  Granting such further relief as the Court deems proper.

## COUNT 5
**Violation of the Alabama Deceptive Trade Practices Act—Unconscionability (Ala. Code §§ 8-19-1 *et seq.*), on Behalf of Plaintiffs Olivia Boyer, Cheyenne Browning, Elaine Cryer, Sammi Hobdy, Brittany Martin, Elizabeth McDowell, Loukevia Moore, and the Alabama Subclass**

228.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

229.    Plaintiffs Olivia Boyer, Cheyenne Browning, Elaine Cryer, Sammi Hobdy, Brittany Martin, Elizabeth McDowell, and Loukevia Moore bring this Count individually and on behalf of the members of the Alabama Subclass.

230.    This claim is brought in the alternative to any common law claim for fraud, misrepresentation, deceit, suppression of material facts or fraudulent concealment arising out of any act, occurrence or transaction actionable under the Alabama Deceptive Trade Practices Act.

231.    At all relevant times, members of the Alabama Subclass were natural people who purchased Defendant's toxic baby food products detailed above for personal, family or household use.

232.    At all relevant times, Defendant was either a natural person or corporation, trust, partnership, incorporated or unincorporated association or some other legal entity.

233.    The Alabama Deceptive Trade Practices Act declares that engaging in unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce is unlawful.  *See* Ala. Code § 8-19-5.

234.    The Alabama Deceptive Trade Practices Act further that any person who commits an unlawful practice under this chapter and thereby causes monetary damage to a consumer, shall be liable to each consumer for (1) Any actual damages sustained by such consumer or person, or the sum of $100, whichever is greater; or (2) Up to three times any actual damages. *See* Ala. Code § 8-19-10.

235.    Defendant, by and through its employees, agents, and/or servants, and in connection with its advertising and sale of toxic baby food products detailed above, knowingly engaged in deceptive and unconscionable acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts as described in the allegations above.

236.    Defendant knew that its statements were false or that its conduct was unconscionable because there was an absence of meaningful choice on plaintiff's part.

237.     Defendant engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts as described in the allegations above with the intent that Plaintiffs and Class members would rely on those deceptive and unfair acts and practices and induce Plaintiffs and Class members to purchase Defendant's products.

238.     Because the characteristics of Defendant's merchandise were not as represented, and those characteristics are material to a reasonable consumer of the type of merchandise, the value of that merchandise was less than the value of the merchandise would have had the merchandise actually possessed the characteristics that were represented.

239.     Plaintiffs and Class members were deceived by Defendant's deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendant's products or would have paid less for those products.

240.     Instead, as a result of Defendant's misrepresentation, Plaintiffs and Class members suffered monetary losses in that (1) the actual value of the merchandise they received was less than the value of the merchandise as represented denying them of the benefit of their bargain; and (2) Plaintiffs and Class members paid more than the fair market value of the merchandise they received causing them out-of-pocket damages.

241.     Plaintiffs and Class members could not have avoided these injuries. Because Defendant were the sole source of material information that Defendant failed to disclose, Plaintiffs and Class members could not have had reason to anticipate the impending harm and thus avoided their injuries.

242.     Plaintiffs provided Defendant pre-suit notice pursuant to Ala. Code § 8-19-10(e) by sending a certified letter containing the basis of Plaintiffs' claims on April 13, 2021.  Notice was received by Defendant on or about April 19, 2021.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

    a. Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

    b. Designating Plaintiffs as Class representative and counsel as Class counsel;

    c. Entering judgment in favor of Plaintiffs and the Class and against Defendant;

    d. Entering injunctive relief against Defendant requiring that it cease its deceptive and unfair acts and practices and make corrective disclosures;

    e. Awarding Plaintiffs and Class their actual damages, or the sum of $100, whichever is greater; or up to three times their actual damages; and

    f. Granting such further relief as the Court deems proper.

**COUNT 6**
**Violation of the Alaska Unfair Trade Practices and Consumer Protection Act**
**(Alaska Stat. §§ 45.50.471, *et seq.*), on Behalf of Plaintiffs Renee Milline, Janinne Price, and the Alaska Subclass**

244. Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

245. Plaintiffs Renee Milline and Janinne Price bring this Count individually and on behalf of the members of the Alaska Subclass against all Defendant.

246. The Alaska Unfair Trade Practices and Consumer Protection Act ("Alaska UTPCPA") provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce are declared to be unlawful."

247. The Alaska UTPCPA further provides that (1) fraudulently conveying or transferring goods or services by representing them to be those of another; (2) falsely representing

or designating the geographic origin of goods or services; (3) causing a likelihood of confusion or misunderstanding as to the source, sponsorship, or approval, or another person's affiliation, connection, or association with or certification of goods or services; (4) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have; (5) representing that goods are original or new if they are deteriorated, altered, reconditioned, reclaimed, used, secondhand, or seconds; (6) representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; (7) disparaging the goods, services, or business of another by false or misleading representation of fact; (8) advertising goods or services with intent not to sell them as advertised; (9) advertising goods or services with intent not to supply reasonable expectable public demand, unless the advertisement prominently discloses a limitation of quantity; (10) making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions; (11) engaging in any other conduct creating a likelihood of confusion or of misunderstanding and that misleads, deceives, or damages a buyer or a competitor in connection with the sale or advertisement of goods or services; and (12) using or employing deception, fraud, false pretense, false promise, misrepresentation, or knowingly concealing, suppressing, or omitting a material fact with intent that others rely upon the concealment, suppression, or omission in connection with the sale or advertisement of goods or services whether or not a person has in fact been misled, deceived, or damaged; are unfair or deceptive acts or practices. *See* Alaska Stat. Ann. § 45.50.471.

248.    The Alaska UTPCPA further provides that a person who suffers an ascertainable loss of money or property as a result of another person's act or practice may bring a civil action to

recover for each unlawful act or practice three times the actual damages or $500, whichever is greater. *See* Alaska Stat. Ann. § 45.50.531. Any person who was the victim of the unlawful act, whether or not the person suffered actual damages, may bring an action to obtain an injunction prohibiting a seller or lessor from continuing to engage in an act or practice.

249. Defendant, by and through its employees, agents, and/or servants, and in connection with its advertising, offering for sale, sale, and/or distribution of services in Alaska, engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts as described in the allegations above.

250. The facts that Defendant misrepresented, concealed, suppressed or omitted as alleged above were material, in that such facts are the type of information upon which a reasonable consumer is expected to rely in making a decision of whether to purchase Defendant's products.

251. Defendant's misrepresentation, concealment, suppression and omission of material facts as alleged above creates a likelihood of deception and has the capacity to deceive a reasonable consumer.

252. Defendant engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts as described in the allegations above with the intent that Plaintiffs and Class members would rely on those deceptive and unfair acts and practices and induce Plaintiffs and Class members to purchase Defendant's products.

253. Because the characteristics of Defendant's merchandise were not as represented, and those characteristics are material to a reasonable consumer of the type of merchandise, the value of that merchandise was less than the value of the merchandise would have had the merchandise actually possessed the characteristics that were represented.

254.     Plaintiffs and Class members were deceived by Defendant's deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendant's products or would have paid less for those products.

255.     Instead, as a result of Defendant's misrepresentation, Plaintiffs and Class members suffered monetary losses in that (1) the actual value of the merchandise they received was less than the value of the merchandise they bargained for denying them of the benefit of their bargain; and (2) Plaintiffs and Class members paid more than the fair market value of the merchandise they received causing them out-of-pocket damages.

256.     Plaintiffs and Class members could not have avoided these injuries. Because Defendant was the sole source of material information that Defendant failed to disclose, Plaintiffs and Class members could not have had reason to anticipate the impending harm and thus avoided their injuries.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

a.  Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

b.  Designating Plaintiffs as Class representative and counsel as Class counsel;

c.  Entering judgment in favor of Plaintiffs and the Class and against Defendant;

d.  Entering injunctive relief against Defendant requiring that it cease its deceptive and unfair acts and practices and make corrective disclosures;

e.  Awarding Plaintiffs and Class three times their actual damages, or the sum of $500, whichever is greater; reasonable attorneys' fees and costs; and

f.   Granting such further relief as the Court deems proper.

## COUNT 7
**Violation of the Arizona Consumer Fraud Act (Ariz. Rev. Stat. Ann. § 44-1521), on Behalf of Plaintiffs Erin Abdoo, Nichole Holling, Tiffany Salazar, and the Arizona Subclass**

257.   Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

258.   Plaintiffs Erin Abdoo, Nichole Holling, and Tiffany Salazar bring this Count individually and on behalf of the Arizona Subclass.

259.   Arizona's Consumer Fraud Act prohibits the "act, use or employment by any person of any deception, deceptive or unfair act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely on such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice."

260.   At all relevant times, members of the Arizona Subclass and Defendant were either natural people or the person's legal representative, a partnership or domestic or foreign corporation, a company, trust, business entity or association or an agent, employee, salesman, partner, officer, director, member, stockholder, associate or trustee.

261.   Defendant willfully engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts they intended others to rely upon in connection with the sale and advertisement of "merchandise" in violation of Ariz. Rev. Stat. Ann. §44-1522(A) as described in the allegations above.

262.   Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it is inequitably enriching Defendant at the expense of the Arizona Subclass.

263.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it offends public policy, and is so oppressive that the Arizona Subclass has little alternative but to submit and causes consumers substantial injury.

264.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair in that it violates the well-established public policies of protecting children from avoidable dangers and that the manufacturer of food is responsible for ensuring that it is fit for human consumption.

265.    The Arizona Subclass has suffered economic injury as a direct and proximate result of the Arizona Defendant's conduct.

266.    Plaintiffs and Class members were deceived by Defendant's deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendant's products or would have paid less for those products.

267.    Instead, as a result of Defendant's misrepresentation, Plaintiffs and Class members suffered monetary losses in that (1) the actual value of the merchandise they received was less than the value of the merchandise as represented denying them of the benefit of their bargain; and (2) Plaintiffs and Class members paid more than the fair market value of the merchandise they received causing them out-of-pocket damages.

268.    As a direct and proximate result of the foregoing acts and practices, the Arizona Defendant has received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

a. Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

b. Designating Plaintiffs as Class representative and counsel as Class counsel;

c. Entering judgment in favor of Plaintiffs and the Class and against Defendant;

d. Awarding Plaintiffs and Class members damages; and

e. Granting such further relief as the Court deems just.

**COUNT 8**
**Violation of the Arkansas Deceptive Trade Practices Act (Ark. Code Ann. §§ 4-88-101, *et seq.*), on Behalf of Plaintiffs Rebecca Abbott, Victoria Coker, Jessica Durrett, Elina Mahmens, Ali Plier-Lopez, Retrena Younge, and the Arkansas Subclass**

269. Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

270. Plaintiffs Rebecca Abbott, Victoria Coker, Jessica Durrett, Elina Mahmens, Ali Plier-Lopez, and Retrena Younge bring this Court individually and on behalf of the Arkansas Subclass.

271. The Arkansas Deceptive Trade Practices Act prohibits, among other things: (a) deceptive and unconscionable trade practices including, but not limited to, (1) knowingly making a false representation as to the characteristics, ingredients, uses, benefits, alterations, source, sponsorship, approval, or certification of goods or services or as to whether goods are original or new or of a particular standard, quality, grade, style, or model; (2) advertising the goods or services with the intent not to sell them as advertised; (3) engaging in any other unconscionable, false, or deceptive act or practice in business, commerce, or trade; and (b) in connection with the sale or advertisement of any goods or services, (1) the act, use, or employment by a person of any deception, fraud, or false pretense; or (2) the concealment, suppression, or omission of any material

fact with intent that others rely upon the concealment, suppression, or omission. *See* Ark. Code Ann. §§ 4-88-101(1-3).

272.    Under the Arkansas Deceptive Trade Practices Act, a person who suffers an actual financial loss as a result of his or her reliance on the use of an unlawful practice may bring an action to recover his or her actual financial loss proximately caused by the offense or violation and reasonable attorney's fees.

273.    At all relevant times, members of the Arkansas Subclass and Defendant were individuals, organizations, groups, associations, partnerships, or corporations.

274.    Defendant willfully engaged in deceptive and unconscionable acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts it intended others to rely upon in connection with the sale and advertisement of its toxic baby foods.

275.    Because the characteristics of Defendant's toxic baby foods were not as represented, and those characteristics are material to a reasonable consumer of the type of merchandise, the value of that merchandise was less than the value of the merchandise would have had the merchandise actually possessed the characteristics that were represented. Because the product defect has actually manifested, Plaintiffs have suffered actual damages as a result of Defendant's conduct.

276.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unconscionable because it offends public policy, and is so oppressive that the Arkansas Subclass has little alternative but to submit and causes consumers substantial injury.

277.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unconscionable in that it violates the well-established public policies of

protecting children from avoidable dangers and that the manufacturer of food is responsible for ensuring that it is fit for human consumption.

278. Plaintiffs relied on Defendant's representations when purchasing Defendant's toxic baby foods.

279. Plaintiffs and Class members were deceived by Defendant's deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendant's products.

280. Instead, as a result of Defendant's misrepresentation, Plaintiffs and Class members suffered actual damages in that (1) the actual value of the merchandise they received was less than the value of the merchandise they bargained for denying them of the benefit of their bargain; and (2) Plaintiffs and Class members paid more than the fair market value of the merchandise they received causing them out-of-pocket damages.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

a. Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

b. Designating Plaintiffs as Class representative and counsel as Class counsel;

c. Entering judgment in favor of Plaintiffs and the Class and against Defendant;

d. Awarding Plaintiffs and Class members damages; and reasonable attorney's fees; and

e. Granting such further relief as the Court deems just.

**COUNT 9**

**Violation of the California Consumers Legal Remedies Act (Cal. Civ. Code §§ 1750, *et seq*.), on Behalf of Plaintiffs Erin Abdoo, Chelzy Desvigne, Alycia Donovan, Shannon Herrington, April Lockhart, Krishna Patel, Maggie Rouse, Tiffany Salazar, Christen Zulli, and the California Subclass**

281.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

282.    Plaintiffs Erin Abdoo, Chelzy Desvigne, Alycia Donovan, Shannon Herrington, April Lockhart, Krishna Patel, Maggie Rouse, Tiffany Salazar, and Christen Zulli bring this Count individually and on behalf of the California Subclass.

283.    The California Consumers Legal Remedies Act ("California CLRA") prohibits any unfair, deceptive, and/or unlawful practices, as well as unconscionable commercial practices in connection with the sale of any goods or services to consumers. *See* Cal. Civ. Code § 1770.

284.    The California CLRA specifically prohibits, among other things: (1) passing off goods or services as those of another; (2) misrepresenting the source, sponsorship, approval, or certification of goods or services; (3) misrepresenting the affiliation, connection, or association with, or certification by, another; (4) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have; (5) representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; and (6) advertising goods or services with intent not to sell them as advertised.

285.    The CLRA allows any consumer who suffers any damage as a result of the use or employment by any person of a prohibited practice to bring a private action against that person to recover actual damages, an order enjoining the methods, acts, or practices; restitution of property; punitive damages; and any other relief that the court deems proper.

286.    Defendant is either an individual, partnership, corporation, limited liability company, association, or other group, however organized.

287.    Defendant's products are tangible chattels bought or leased for use primarily for personal, family, or household purposes.

288.    Members of the California Subclass are individuals who acquired, by purchase or lease, Defendant's goods or services for personal, family, or household purposes.

289.    Defendant willfully engaged in unfair, deceptive, and/or unlawful practices, as well as unconscionable commercial practices as described in the allegations above.

290.    As a result, Defendant's conduct violates several provisions of the California CLRA, including but not limited to:

    a.    Section 1770(a)(5): Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have—here, Defendant's branding of its toxic baby food carried with it the impression that the toxic baby food was a safe, legally compliant product which consumers could use without unduly exposing their babies to the risk of exposure to toxins; and

    b.    Section 1770(a)(7): Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another—as above, Defendant's toxic baby food carried with it the impression that it was a safe, legally compliant product which consumers could use without unduly exposing their babies to health risks from exposure to toxins.

291.    In addition, under California law, a duty to disclose arises in any of the following four circumstances: (1) when the defendant is in a fiduciary relationship with the plaintiff; (2)

when the defendant has exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts.

292.    Defendant had a duty to disclose to Plaintiffs and the California Subclass that the toxic baby food was of substandard quality and contained excessive levels of toxins for the following two independent reasons: (1) Defendant had exclusive knowledge of the information at the time of sale; and (2) Defendant actively concealed from Plaintiffs and the California Subclass the excessive amount of toxins contained in the toxic baby food.

293.    Defendant's omissions in violation of the California CLRA were likely to mislead an ordinary consumer. Plaintiffs and the California Subclass reasonably understood Defendant's omissions to mean that the toxic baby food did not contain toxins at levels that are dangerous to babies' health. Plaintiff and the California Subclass also reasonably understood Defendant's omissions to mean that the toxic baby food was not of substandard quality. If Defendant had disclosed that its toxic baby food contained toxins at levels that are dangerous to babies' health and was of substandard quality, Plaintiffs and the California Subclass would have been aware that the toxic baby food contained excessive amounts of toxins and was of substandard quality, and Plaintiffs and the California Subclass would not have purchased Defendant's toxic baby food.

294.    Defendant's omissions alleged herein were material in that a reasonable person would attach importance to the information and would be induced to act upon the information in making purchase decisions.

295.    Plaintiffs and the California Subclass relied to their detriment on Defendant's omissions in purchasing toxic baby food.

296.   Plaintiffs and Class members were deceived by Defendant's deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendant's products or would have paid less for those products.

297.   Instead, as a result of Defendant's misrepresentation, Plaintiffs and Class members suffered monetary losses in that (1) the actual value of the merchandise they received was less than the value of the merchandise as represented denying them of the benefit of their bargain; and (2) Plaintiffs and Class members paid more than the fair market value of the merchandise they received causing them out-of-pocket damages.

298.   Plaintiffs provided Defendant pre-suit notice pursuant to Cal. Civ. Code § 1782(a) by sending a certified letter containing the basis of Plaintiffs' claims on March 12, 2021.  Notice was received by Defendant on or about March 23, 2021.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

a.   Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

b.   Designating Plaintiffs as Class representative and counsel as Class counsel;

c.   Entering judgment in favor of Plaintiffs and the Class and against Defendant;

d.   Awarding Plaintiffs and Class members damages; and reasonable attorney's fees; and

e.   Granting such further relief as the Court deems just.

**COUNT 10**

**Violation of the California Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200, *et seq*.), on Behalf of Plaintiffs Erin Abdoo, Chelzy Desvigne, Alycia Donovan, Shannon Herrington, April Lockhart, Krishna Patel, Maggie Rouse, Tiffany Salazar, Christen Zulli, and the California Subclass**

299.   Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

300.   Plaintiffs Erin Abdoo, Chelzy Desvigne, Alycia Donovan, Shannon Herrington, April Lockhart, Krishna Patel, Maggie Rouse, Tiffany Salazar, and Christen Zulli bring this Count individually and on behalf of the California Subclass.

301.   The California Unfair Competition Law ("California UCL") prohibits any "unconscionable, false, or deceptive act or practice in business, commerce, or trade unlawful, unfair or fraudulent business act or practice[.]"

302.   The California UCL further provides that any person who has engaged in unfair competition may be enjoined in any court of competent jurisdiction. The court may make such orders or judgments as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition.

303.   The California UCL allows for an action for relief to be brought by a person who has suffered injury in fact and has lost money or property as a result of the unfair competition.

304.   At all relevant times, members of the California Subclass and Defendant were either natural persons, corporations, firms, partnerships, joint stock companies, associations or other organizations of persons.

305.   Defendant willfully engaged in unlawful, fraudulent and unfair acts and practices in violation of Cal. Bus. & Prof. Code § 17200 as described in the allegations above.

306.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is an act or practice in the conduct of trade or commerce.

307.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above impacts the public interest.

308.    Defendant's conduct was illegal in that it violated Proposition 65, Cal. Health & Safety Code § 25249.5, *et seq.* by failing to warn that Defendant's toxic baby food contained potential carcinogens.

309.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is fraudulent in that concealing and failing to disclose the presence of toxic heavy metals in its baby food was likely to deceive consumers.

310.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it is inequitably enriching Defendant at the expense of the California Subclass.

311.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it offends public policy, and is so oppressive that the California Subclass has little alternative but to submit and causes consumers substantial injury.

312.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair in that it violates the well-established public policies of protecting children from avoidable dangers and that the manufacturer of food is responsible for ensuring that it is fit for human consumption.

313.    The California Subclass has suffered economic injury as a direct and proximate result of the Defendant's conduct.

314.     Plaintiffs and Class members were deceived by Defendant's deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendant's products or would have paid less for those products.

315.     Instead, as a result of Defendant's misrepresentation, Plaintiffs and Class members suffered monetary losses in that (1) the actual value of the merchandise they received was less than the value of the merchandise as represented denying them of the benefit of their bargain; and (2) Plaintiffs and Class members paid more than the fair market value of the merchandise they received causing them out-of-pocket damages.

316.     As a direct and proximate result of the foregoing acts and practices, the California Defendant has received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

317.     WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

   a.   Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

   b.   Designating Plaintiffs as Class representative and counsel as Class counsel;

   c.   Entering judgment in favor of Plaintiffs and the Class and against Defendant;

   d.   Awarding Plaintiffs and Class members restitution of Defendant's wrongfully obtained revenue; and

   e.   Granting such further relief as the Court deems just.

**COUNT 11**

**Violation of the California False Advertising Law (Cal. Bus. & Prof. Code §§ 17500, *et seq*.), on Behalf of Plaintiffs Erin Abdoo, Chelzy Desvigne, Alycia Donovan, Shannon Herrington, April Lockhart, Krishna Patel, Maggie Rouse, Tiffany Salazar, Christen Zulli, and the California Subclass**

318.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

319.    Plaintiffs Erin Abdoo, Chelzy Desvigne, Alycia Donovan, Shannon Herrington, April Lockhart, Krishna Patel, Maggie Rouse, Tiffany Salazar, and Christen Zulli bring this Count individually and on behalf of the California Subclass.

320.    Defendant engaged in advertising and marketing to the public and offered for sale toxic baby food that contained toxins in amounts that are unsafe for babies.

321.    The California False Advertising Law ("California FAL") states:

> It is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services, professional or otherwise, or anything of any nature whatsoever or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated before the public in this state, or to make or disseminate or cause to be made or disseminated from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement, concerning that real or personal property or those services, professional or otherwise, or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading, or for any person, firm, or corporation to so make or disseminate or cause to be so made or disseminated any such statement as part of a plan or scheme with the intent not to sell that personal property or those services, professional or otherwise, so advertised at the price stated therein, or as so advertised. *See* Cal. Bus. & Prof. Code §§ 17500, *et seq*.

322.    Defendant's business practices as alleged herein constitute unfair, deceptive, untrue and misleading advertising pursuant to California's FAL because Defendant advertised toxic baby

food in a manner that is untrue and misleading, and that is known or reasonably should have been known to Defendant to be untrue or misleading, as Defendant created the impression that the product was safe for babies to consume when, in fact, it was not. Defendant concealed the material information from consumers that toxic baby food contained excessive amounts of toxins and was of substandard quality.

323.    Defendant's omissions alleged herein deceived or had the tendency to deceive the general public regarding the quality and composition of toxic baby food.

324.    Defendant's omissions alleged herein were the type of omissions that are material, i.e., a reasonable person would attach importance to them and would be induced to act on the information in making purchase decisions.

325.    Defendant's omissions alleged herein are objectively material to a reasonable consumer, and therefore reliance upon such omissions may be presumed as a matter of law.

326.    At the time Defendant made the omissions alleged herein, Defendant knew or should have known that they were untrue or misleading, and Defendant acted in violation of Cal. Bus. & Prof. Code §§ 17500, *et seq*.

327.    Plaintiffs and Class members were deceived by Defendant's deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendant's products or would have paid less for those products.

328.    Instead, as a result of Defendant's misrepresentation, Plaintiffs and Class members suffered monetary losses in that (1) the actual value of the merchandise they received was less than the value of the merchandise as represented denying them of the benefit of their bargain; and (2) Plaintiffs and Class members paid more than the fair market value of the merchandise they received causing them out-of-pocket damages.

329.    As a result, Plaintiffs and each member of the California Subclass have been injured, lost money or property, and are entitled to relief.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

a.   Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

b.   Designating Plaintiffs as Class representative and counsel as Class counsel;

c.   Entering judgment in favor of Plaintiffs and the Class and against Defendant;

d.   Awarding Plaintiffs and Class members restitution of Defendant's wrongfully obtained revenue; and

e.   Granting such further relief as the Court deems just.

**COUNT 12**
**Violation of the Colorado Consumer Protection Act (Colo. Rev. Stat. §§ 6-1-105(1), *et seq.*), on Behalf of Plaintiffs Sheral Shah Chheda, Angela Cox, Marcela García, Julie Secrist, and the Colorado Subclass**

330.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

331.    Plaintiffs Sheral Shah Chheda, Angela Cox, Marcela García, and Julie Secrist bring this Count individually and on behalf of the Colorado Subclass.

332.    The Colorado Consumer Protection Act defines deceptive trade practices to include, among other things, when, in the course of the person's business, vocation, or occupation, the person: (a) either knowingly or recklessly makes a false representation as to the characteristics, ingredients, uses, benefits, alterations, or quantities of goods, food, services, or property or a false representation as to the sponsorship, approval, status, affiliation, or connection of a person

therewith; (b) represents that goods, food, services, or property are of a particular standard, quality, or grade, or that goods are of a particular style or model, if he knows or should know that they are of another; (c) advertises goods, services, or property with intent not to sell them as advertised; (d) fails to disclose material information concerning goods, services, or property which information was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce the consumer to enter into a transaction; and (e) either knowingly or recklessly engages in any unfair, unconscionable, deceptive, deliberately misleading, false, or fraudulent act or practice. *See* Colo. Rev. Stat. §§ 6-1-105(1), *et seq*.

333.    The Colorado Consumer Protection Act further provides for a civil action against any person who has engaged in or caused another to engage in any deceptive trade practice listed in this article by any person who is an actual or potential consumer of the defendant's goods, services, or property and is injured as a result of such deceptive trade practice.

334.    At all relevant times, members of the Colorado Subclass and Defendant were either individuals, corporations, business trusts, estates, trusts, partnerships, unincorporated associations, or any other legal or commercial entity.

335.    In marketing and selling its toxic baby food, Defendant either knowingly or recklessly made a false representation as to the characteristics of its toxic baby foods.

336.    In marketing and selling its toxic baby food, Defendant either knowingly or recklessly represented that its toxic baby food was of a particular standard, quality, or grade, when it knew or should know that they are of another.

337.    In marketing and selling its toxic baby food, Defendant either knowingly or recklessly failed to disclose material information concerning goods, services, or property which

information was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce the consumer to enter into a transaction.

338.    In marketing and selling its toxic baby food, Defendant either knowingly or recklessly engaged in an unfair, unconscionable, deceptive, deliberately misleading, false, or fraudulent act or practice.

339.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is an act or practice in the conduct of Defendant's business.

340.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above significantly impact the public as they are actual or potential consumers of Defendant's goods.

341.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it is inequitably enriching Defendant at the expense of the Colorado Subclass.

342.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair in that it violates the well-established public policies of protecting children from avoidable dangers and that the manufacturer of food is responsible for ensuring that it is fit for human consumption.

343.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it offends public policy, and is so oppressive that the Colorado Subclass has little alternative but to submit and causes consumers substantial injury.

344.    Defendant's knowing misrepresentations and omissions in the sale of its toxic baby food detailed above had the capacity to mislead consumers.

345.    Plaintiffs and Class members were deceived by Defendant's deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendant's products or would have paid less for those products.

346.    Instead, as a result of Defendant's misrepresentation, Plaintiffs and Class members suffered monetary losses in that (1) the actual value of the merchandise they received was less than the value of the merchandise as represented denying them of the benefit of their bargain; and (2) Plaintiffs and Class members paid more than the fair market value of the merchandise they received causing them out-of-pocket damages.

347.    The Colorado Subclass has suffered economic injury as a direct and proximate result of the Defendant's conduct.

348.    As a direct and proximate result of the foregoing acts and practices, Defendant has received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

a.  Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

b.  Designating Plaintiffs as Class representative and counsel as Class counsel;

c.  Entering judgment in favor of Plaintiffs and the Class and against Defendant;

d.  Awarding Plaintiffs and Class members damages; and

e.  Granting such further relief as the Court deems just.

## COUNT 13

**Violation of the Connecticut Unfair Trade Practices Act (Conn. Gen. Stat. §§ 42-110A, *et seq.*), on Behalf of Plaintiffs Carissa Geloso, Jasmine Jackson, Lori Ann Louis, Monique Warren, and the Connecticut Subclass**

349.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

350.    Plaintiffs Carissa Geloso, Jasmine Jackson, Lori Ann Louis, and Monique Warren bring this Count individually and on behalf of the Connecticut Subclass.

351.    Connecticut's Unfair Trade Practices Act ("Connecticut UTPA") prohibits any "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

352.    The Connecticut UTPA further provides that any person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by Conn. Gen. Stat. § 42-110(b), may bring an action to recover actual damages.

353.    At all relevant times, members of the Connecticut Subclass and Defendant were either a natural person, corporation, limited liability company, trust, partnership, incorporated or unincorporated association.

354.    Defendant willfully engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts in connection with its advertising and sale of its toxic baby food in violation of Conn. Gen. Stat. § 42-110b(a), as described in the allegations above.

355.    Defendant's misrepresentations and omissions as alleged above occurred in connection with its advertising, sale, offering for sale or the distribution of property in Connecticut.

356.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above impacts the public interest.

357.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it is inequitably enriching Defendant at the expense of the Connecticut Subclass.

358.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it offends public policy, and is so oppressive that the Connecticut Subclass has little alternative but to submit and causes consumers substantial injury.

359.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair in that it violates the well-established public policies of protecting children from avoidable dangers and that the manufacturer of food is responsible for ensuring that it is fit for human consumption.

360.    Plaintiffs and Class members were deceived by Defendant's deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendant's products or would have paid less for those products.

361.    Instead, as a result of Defendant's misrepresentation, Plaintiffs and Class members suffered ascertainable losses in that (1) the actual value of the merchandise they received was less than the value of the merchandise as represented denying them of the benefit of their bargain; and (2) Plaintiffs and Class members paid more than the fair market value of the merchandise they received causing them out-of-pocket damages.

362.    As a direct and proximate result of the foregoing acts and practices, Defendant has received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

a. Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

b. Designating Plaintiffs as Class representative and counsel as Class counsel;

c. Entering judgment in favor of Plaintiffs and the Class and against Defendant;

d. Awarding Plaintiffs and Class members damages; costs of suit and reasonable attorneys' fees, and

e. Granting such further relief as the Court deems just.

**COUNT 14**
**Violation of the Delaware Consumer Fraud Act (Del. Code Ann. tit. 6, §§ 2511, *et seq*.), on Behalf of Plaintiffs Jasmine Jackson, Katrina Thomas, and the Delaware Subclass**

363. Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

364. Plaintiffs Jasmine Jackson, and Katrina Thomas bring this Count individually and on behalf of the Delaware Subclass.

365. Delaware's Consumer Fraud Act prohibits any "act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale, lease or advertisement of any merchandise, whether or not any person has in fact been misled, deceived or damaged thereby, is an unlawful practice."

366.    At all relevant times, members of the Delaware Subclass and Defendant were either an individual, corporation, government, or governmental subdivision or agency, statutory trust, business trust, estate, trust, partnership, unincorporated association or other legal or commercial entity.

367.    Defendant willfully engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts in connection with the sale and advertisement of "merchandise" (as defined in the Delaware Consumer Fraud Act, Del. Code Ann. tit. 6, § 2511(6)) in violation of Del. Code Ann. tit. 6, § 2513(a), as described in the allegations above.

368.    The Delaware Subclass relied on Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above.

369.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is an act or practice in the conduct of trade or commerce.

370.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above impacts the public interest.

371.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it is inequitably enriching Defendant at the expense of the Delaware Subclass.

372.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it offends public policy, and is so oppressive that the Delaware Subclass has little alternative but to submit and causes consumers substantial injury.

373.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair in that it violates the well-established public policies of protecting children

from avoidable dangers and that the manufacturer of food is responsible for ensuring that it is fit for human consumption.

374. The Delaware Subclass has suffered economic injury as a direct and proximate result of the Defendant's conduct.

375. Plaintiffs and Class members were deceived by Defendant's deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendant's products or would have paid less for those products.

376. Instead, as a result of Defendant's misrepresentation, Plaintiffs and Class members suffered monetary losses in that (1) the actual value of the merchandise they received was less than the value of the merchandise as represented denying them of the benefit of their bargain; and (2) Plaintiffs and Class members paid more than the fair market value of the merchandise they received causing them out-of-pocket damages.

377. As a direct and proximate result of the foregoing acts and practices, Defendant has received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

     a. Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

     b. Designating Plaintiffs as Class representative and counsel as Class counsel;

     c. Entering judgment in favor of Plaintiffs and the Class and against Defendant;

     d. Awarding Plaintiffs and Class members damages; and

e.  Granting such further relief as the Court deems just.

**COUNT 15**

**Violation of the District of Columbia Consumer Protection Procedures Act (D.C. Code §§ 28-3904,** *et seq.***), on Behalf of Plaintiffs Lori-Ann McKenzie-Henry, Maurice Petetson, and the District of Columbia Subclass**

378.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

379.    Plaintiffs Lori-Ann McKenzie-Henry and Maurice Petetson bring this Count individually and on behalf of the District of Columbia Subclass.

380.    The District of Columbia's Consumer Protection Procedures Act ("District of Columbia CPPA") prohibits any person from engaging "in an unfair or deceptive trade practice, whether or not any consumer is in fact misled, deceived, or damaged thereby."

381.    The District of Columbia CPPA specifically forbids, among other things, (1) representing that goods or services have a source, sponsorship, approval, certification, accessories, characteristics, ingredients, uses, benefits, or quantities that they do not have; (2) representing that goods or services are of particular standard, quality, grade, style, or model, if in fact they are of another; (3) misrepresenting a material fact which has a tendency to mislead; (4) failing to state a material fact if such failure tends to mislead; (5) Using innuendo or ambiguity as to a material fact, which has a tendency to mislead; and (6) advertising or offering goods or services without the intent to sell them or without the intent to sell them as advertised or offered.

382.    The District of Columbia CPPA provides that a consumer may bring an action seeking relief from the use of an unfair or deceptive act and may, on behalf of that individual, or on behalf of both the individual and the general public, bring an action seeking relief from the use of unfair or deceptive act when it involves consumer goods or services that the individual purchased for personal, household, or family purposes.

383. At all relevant times, members of the District of Columbia Subclass and Defendant were individuals, firms, corporations, partnerships, cooperatives, associations, or another organization, legal entity, or group of individuals.

384. At all relevant times, members of the District of Columbia Subclass were persons who purchased Defendant's products for personal, household or family purposes and not for resale.

385. At all relevant times, Defendant in the ordinary course of business sells, directly or indirectly, consumer goods or services.

386. Defendant willfully engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts in connection with the sale and advertisement of its baby foods in violation of D.C. Code § 28-3904 as described in the allegations above.

387. Specifically, Defendant's acts described above violate the prohibition of (1) representing that goods or services have a source, sponsorship, approval, certification, accessories, characteristics, ingredients, uses, benefits, or quantities that they do not have in that Defendant's branding of its toxic baby food carried with it the impression that the toxic baby food was a safe, legally compliant product which consumers could use without unduly exposing their babies to the risk of exposure to toxins; (2) representing that goods or services are of particular standard, quality, grade, style, or model, if in fact they are of another in that Defendant's toxic baby food carried with it the impression that it was a safe, legally compliant product which consumers could use without unduly exposing their babies to health risks from exposure to toxins; (3) misrepresenting a material fact which has a tendency to mislead in that Defendant's marketing of its baby food represented that its safety and quality; and (4) failing to state a material fact if such failure tends

to mislead in that Defendant failed to disclose the material fact that it knowingly sold baby food containing toxic heavy metals.

388.   Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is an act or practice in the conduct of trade or commerce.

389.   Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above impacts the public interest.

390.   Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair in that it violates the well-established public policies of protecting children from avoidable dangers and that the manufacturer of food is responsible for ensuring that it is fit for human consumption.

391.   Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it is inequitably enriches Defendant at the expense of the District of Columbia Subclass.

392.   Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it offends public policy, and is so oppressive that the District of Columbia Subclass has little alternative but to submit and causes consumers substantial injury.

393.   The District of Columbia Subclass has suffered economic injury as a direct and proximate result of Defendant's conduct.

394.   Plaintiffs and Class members were deceived by Defendant's deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendant's products or would have paid less for those products.

395.   Instead, as a result of Defendant's misrepresentation, Plaintiffs and Class members suffered monetary losses in that (1) the actual value of the merchandise they received was less than

the value of the merchandise as represented denying them of the benefit of their bargain; and (2) Plaintiffs and Class members paid more than the fair market value of the merchandise they received causing them out-of-pocket damages.

396.     As a direct and proximate result of the foregoing acts and practices, Defendant has received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

a.   Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

b.   Designating Plaintiffs as Class representative and counsel as Class counsel;

c.   Entering judgment in favor of Plaintiffs and the Class and against Defendant;

d.   Awarding Plaintiffs and Class members treble damages or $1,500 per violation, whichever is greater; reasonable attorneys' fees; punitive damages; and costs;

e.   Entering an injunction against the use of the unlawful trade practice; and entering any order as may be necessary to restore to the consumer money which may have been acquired by means of the unlawful trade practice; and

f.   Granting such further relief as the Court deems just.

### COUNT 16
**Violation of the Florida Deceptive and Unfair Trade Practices Act (Fla. Stat. §§ 501.201, *et seq.*), on Behalf of Plaintiffs Olivia Boyer, Sheral Shah Chheda, Natalya Dzyuba, Sammi Hobdy, Olivia Johnson, Loukevia Moore, Cheryl Smith, Margo Tezeno, Rhianna Thorton, and the Florida Subclass**

397.     Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

398.    Plaintiffs Olivia Boyer, Sheral Shah Chheda, Natalya Dzyuba, Sammi Hobdy, Olivia Johnson, Loukevia Moore, Cheryl Smith, Margo Tezeno, and Rhianna Thorton bring this Count individually and on behalf of the Florida Subclass.

399.    Florida's Deceptive and Unfair Trade Practices Act prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."

400.    Florida's Deceptive and Unfair Trade Practices Act further provides anyone aggrieved by a violation of this part may bring an action to obtain a declaratory judgment that an act or practice violates this part and to enjoin a person who has violated, is violating, or is otherwise likely to violate this part and in any action brought by a person who has suffered a loss as a result of a violation of this part, such person may recover actual damages, plus attorney's fees and court costs.

401.    Plaintiffs and Class members purchased the product or services at issue in this matter for their own use or for that of members of their households.

402.    At all times material hereto, Defendants engaged in the advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of goods or services, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, in or from Florida.

403.    The facts that Defendant misrepresented, concealed, suppressed or omitted as alleged above were material, in that such facts are the type of information upon which a reasonable consumer is expected to rely in making a decision of whether to purchase Defendant's products.

404.    Defendant's misrepresentation, concealment, suppression and omission of material facts as alleged above creates a likelihood of deception and was likely to deceive a consumer acting reasonably in the same circumstances.

405.    Defendant engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts as described in the allegations above with the intent that Plaintiffs and Class members would rely on those deceptive and unfair acts and practices and induce Plaintiffs and Class members to purchase Defendant's products.

406.    Because the characteristics of Defendant's merchandise were not as represented, and those characteristics are material to a reasonable consumer of the type of merchandise, the value of that merchandise was less than the value of the merchandise would have had the merchandise actually possessed the characteristics that were represented.

407.    Plaintiffs and Class members purchased Defendant's products or services at issue in this action in Florida without knowledge of the material facts that were concealed, suppressed or omitted and without knowledge that Defendants affirmative representations were false.

408.    Plaintiffs and Class members were deceived by Defendant's deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendant's products or would have paid less for those products.

409.    Instead, as a result of Defendant's misrepresentations, Plaintiffs and Class members suffered monetary losses in that (1) the actual value of the merchandise they received was less than the value of the merchandise as represented denying them of the benefit of their bargain; and (2) Plaintiffs and Class members paid more than the fair market value of the merchandise they received causing them out-of-pocket damages.

410.     Plaintiffs and Class members could not have avoided these injuries. Because Defendant was the sole source of material information that Defendant failed to disclose, Plaintiffs and Class members could not have had reason to anticipate the impending harm and thus avoided their injuries.

411.     Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it offends public policy, and is so oppressive that the Florida Subclass has little alternative but to submit and causes consumers substantial injury.

412.     Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair in that it violates the well-established public policies of protecting children from avoidable dangers and that the manufacturer of food is responsible for ensuring that it is fit for human consumption.

413.     The Florida Subclass has suffered economic injury as a direct and proximate result of the Defendant's conduct.

414.     As a direct and proximate result of the foregoing acts and practices, the Florida Defendant has received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

   a.   Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

   b.   Designating Plaintiffs as Class representative and counsel as Class counsel;

   c.   Entering judgment in favor of Plaintiffs and the Class and against Defendant;

    d.   Awarding Plaintiffs and Class members actual damages; attorney's fees and court

costs; and

    e.   Granting such further relief as the Court deems just.

**COUNT 17**

**Violation of the Georgia Fair Business Practices Act (Ga. Code Ann. §§ 10-1-390, *et seq.*),
on Behalf of Plaintiffs Chelzy Desvigne, Amanda Fincannon, Amanda Hill, Sammi Hobdy,
Yuhwa Jang, LaToya McHenry, Janice Taina Mercado Guadalupe, Santequia Ngwu, Leah
Ostapchenko, Porsche S. Stokes, Rhianna Thornton, and the Georgia Subclass**

415.    Plaintiffs incorporate by reference and reallege each and every allegation contained

above, as though fully set forth herein.

416.    Plaintiffs Chelzy Desvigne, Amanda Fincannon, Amanda Hill, Sammi Hobdy,

Yuhwa Jang, LaToya McHenry, Janice Taina Mercado Guadalupe, Santequia Ngwu, Leah

Ostapchenko, Porsche S. Stokes, and Rhianna Thornton bring this Count individually and on

behalf of the Georgia Subclass.

417.    Georgia's Fair Business Practices Act prohibits the "[u]nfair or deceptive acts or

practices in the conduct of consumer transactions and consumer acts or practices in trade or

commerce."

418.    Georgia's Fair Business Practices Act specifically declares unlawful, among other

things: (1) representing that goods or services have sponsorship, approval, characteristics,

ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship,

approval, status, affiliation, or connection that he or she does not have; (2) representing that goods

or services are of a particular standard, quality, or grade or that goods are of a particular style or

model, if they are of another; and (3) advertising goods or services with intent not to sell them as

advertised.

419.    Georgia's Fair Business Practice Act further provides that any person who suffers

injury or damages as a result of a violation of the Act, as a result of consumer acts or practices in

violation of this part may bring an action against the person or persons engaged in such violations to seek equitable injunctive relief and to recover his or her general and exemplary damages sustained as a consequence thereof.

420.    At all relevant times, members of the Georgia Subclass and Defendant were either a natural person, corporation, trust, partnership, incorporated or unincorporated association, or other legal entity.

421.    Defendant willfully engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts they intended others to rely upon in connection with trade or commerce in violation of Ga. Code Ann. § 10-1-393(a) as described in the allegations above.

422.    Specifically, Defendant's acts and practices described above violated the Georgia Fair Business Practice Act's prohibitions on (1) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he or she does not have in that Defendant's branding of its toxic baby food carried with it the impression that the toxic baby food was a safe, legally compliant product which consumers could use without unduly exposing their babies to the risk of exposure to toxins; (2) representing that goods or services are of a particular standard, quality, or grade or that goods are of a particular style or model, if they are of another in that Defendant's toxic baby food carried with it the impression that it was a safe, legally compliant product which consumers could use without unduly exposing their babies to health risks from exposure to toxins; and (3) advertising goods or services with intent not to sell them as advertised in that Defendant advertised its toxic baby food as a safe, legally

compliant product which consumers could use without unduly exposing their babies to health risks from exposure to toxins when Defendant knew it was not.

423.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is an act or practice in the conduct of trade or commerce.

424.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above impacts the public interest.

425.    Defendant's misrepresentations and omissions discussed above had the capacity to deceive and did deceive Plaintiffs and Class members.

426.    Plaintiffs and Class members were deceived by Defendant's deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendant's products or would have paid less for those products.

427.    Instead, as a result of Defendant's misrepresentations, Plaintiffs and Class members suffered monetary losses in that (1) the actual value of the merchandise they received was less than the value of the merchandise as represented denying them of the benefit of their bargain; and (2) Plaintiffs and Class members paid more than the fair market value of the merchandise they received causing them out-of-pocket damages.

428.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it is inequitably enriching Defendant at the expense of the Georgia Subclass.

429.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it offends public policy, and is so oppressive that the Georgia Subclass has little alternative but to submit and causes consumers substantial injury.

430.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair in that it violates the well-established public policies of protecting children from avoidable dangers and that the manufacturer of food is responsible for ensuring that it is fit for human consumption.

431.    The Georgia Subclass has suffered economic injury as a direct and proximate result of Defendant's conduct.

432.    As a direct and proximate result of the foregoing acts and practices, Defendant has received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

433.    Plaintiffs provided Defendant pre-suit notice pursuant to Ga. Code Ann. § 10-1-399(b) by sending a certified letter containing the basis of Plaintiffs' claims on April 12, 2021. Said notice was received by Defendant on or about April 16, 2021.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

a.   Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

b.   Designating Plaintiffs as Class representative and counsel as Class counsel;

c.   Entering judgment in favor of Plaintiffs and the Class and against Defendant;

d.   Awarding Plaintiffs and Class members damages and reasonable attorneys' fees and expenses of litigation incurred with the action; and

e.   Granting such further relief as the Court deems just.

### COUNT 18
**Violation of the Hawaii Uniform Deceptive Trade Practices Act (Haw. Rev. Stat. §§ 480-1, *et seq.*), on Behalf of Plaintiffs Sophia Alfaro, Abby Sondall, and the Hawaii Subclass**

434.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

435.    Plaintiffs Sophia Alfaro, Abby Sondall, and Christen Zulli bring this Count individually and on behalf of the Hawaii Subclass.

436.    Hawaii's Uniform Deceptive Trade Practices Act ("Hawaii UDTPA") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful."

437.    Hawaii's UDTPA further provides that any person who is injured in the person's business or property by reason of anything forbidden or declared unlawful by this chapter may sue for damages sustained by the person.

438.    At all relevant times, members of the Hawaii Subclass were natural persons who, primarily for personal, family, or household purposes, purchased Defendant's goods or services.

439.    At all relevant times, Defendant and the members of the Hawaii Subclass were either individuals, corporations, firms, trusts, partnerships, limited partnerships, limited liability partnerships, limited liability limited partnerships, limited liability companies, and incorporated or unincorporated associations.

440.    Defendant willfully engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts in connection with trade or commerce in violation of Haw. Rev. Stat. § 480-2 as described in the allegations above.

441.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is an act or practice in the conduct of trade or commerce.

442.     Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above impacts the public interest.

443.     Plaintiffs and Class members were deceived by Defendant's deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendant's products or would have paid less for those products.

444.     Instead, as a result of Defendant's misrepresentations, Plaintiffs and Class members suffered monetary losses in that (1) the actual value of the merchandise they received was less than the value of the merchandise as represented denying them of the benefit of their bargain; and (2) Plaintiffs and Class members paid more than the fair market value of the merchandise they received causing them out-of-pocket damages.

445.     Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it is inequitably enriching Defendant at the expense of the Hawaii Subclass.

446.     Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it offends public policy, and is so oppressive that the Hawaii Subclass has little alternative but to submit and causes consumers substantial injury.

447.     Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair in that it violates the well-established public policies of protecting children from avoidable dangers and that the manufacturer of food is responsible for ensuring that it is fit for human consumption.

448.     The Hawaii Subclass has suffered economic injury as a direct and proximate result of the Defendant's conduct.

449.     As a direct and proximate result of the foregoing acts and practices, Defendant has received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

    a.  Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

    b.  Designating Plaintiffs as Class representative and counsel as Class counsel;

    c.  Entering judgment in favor of Plaintiffs and the Class and against Defendant;

    d.  Awarding Plaintiffs and Class members treble damages, reasonable attorneys' fees and costs; and

    e.  Granting such further relief as the Court deems just.

**COUNT 19**
**Violation of the Idaho Consumer Protection Act (Idaho Code Ann. §§ 48-601, *et seq.*), on Behalf of Plaintiff Sonja Renee Twiggs and the Idaho Subclass**

450.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

451.     Plaintiff Sonja Renee Twiggs brings this Count individually and on behalf of the Idaho Subclass.

452.     Idaho's Consumer Protection Act ("Idaho CPA") prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade of commerce," as well as "any unconscionable method, act or practice in the conduct of trade or commerce." *See* Idaho Code Ann. § 48-603.

453.    Specifically, the Idaho's CPA forbids: (1) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, connection, qualifications or license that he does not have; (2) representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; (3) advertising goods or services with intent not to sell them as advertised; (4) engaging in any act or practice that is otherwise misleading, false, or deceptive to the consumer; and (5) engaging in any unconscionable method, act or practice in the conduct of trade or commerce.

454.    The CPA provides that any person who purchases or leases goods or services and suffers any ascertainable loss of money or property as a result of the use by another person of an unfair or deceptive practice bay bring an action to recover actual damages.

455.    At all relevant times, members of the Idaho Subclass and Defendant were either natural people, corporations, trusts, partnerships, incorporated or unincorporated associations, companies, trusts, business entities or any other legal entity.

456.    Defendant willfully engaged in unfair, deceptive, and unconscionable practices in the conduct of trade or commerce as described in the allegations above.

457.    As a result, Defendant's conduct violates several provisions of the Idaho CPA, including but not limited to:

    a.  Section 48-603(5): Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have—here, Defendant's branding of its toxic baby food carried with it the impression that the toxic baby food was a safe, legally compliant product which consumers could use without unduly exposing their babies to the risk of exposure to toxins; and

b. Section 48-603(7): Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another—as above, Defendant's toxic baby food carried with it the impression that it was a safe, legally compliant product which consumers could use without unduly exposing their babies to health risks from exposure to toxins.

c. Section 48-603(17): Engaging in any act or practice which is otherwise misleading, false, or deceptive to the consumer—as above, Defendant's toxic baby food carried with it the impression that it was a safe, legally compliant product which consumers could use without unduly exposing their babies to health risks from exposure to toxins.

d. Section 48-603(18): Engaging in any unconscionable method, act or practice in the conduct of trade or commerce. Here, Defendant knew that its toxic baby food contained amounts of toxins that are unsafe for babies, knew or reasonably should have known that consumers would want to buy baby food that is free of toxins that are harmful to babies, and knew or reasonable should have known that consumers would not buy baby food that contains such toxins. Nevertheless, Defendant continually marketed its toxic baby food as safe for babies to consume and unconscionably withheld information from the public about the amounts of toxins in the toxic baby food.   These actions violate the well-established public policies of protecting children from avoidable dangers and that the manufacturer of food is responsible for ensuring that it is fit for human consumption.

458.   Defendant's omissions in violation of the Idaho CPA were likely to mislead an ordinary consumer. Plaintiffs and the Idaho Subclass reasonably understood Defendant's

omissions to mean that the toxic baby food did not contain toxins at levels that are dangerous to babies' health. Plaintiffs and the Idaho Subclass also reasonably understood Defendant's omissions to mean that the toxic baby food was not of substandard quality. If Defendant had disclosed that its baby food contained toxins at levels that are dangerous to babies' health and was of substandard quality, Plaintiffs and the Idaho Subclass would have been aware that the toxic baby food contained excessive amounts of toxins and was of substandard quality, and Plaintiffs and the Idaho Subclass would not have purchased Defendant's toxic baby food.

459.    Defendant's omissions alleged herein were material in that a reasonable person would attach importance to the information and would be induced to act upon the information in making purchase decisions.

460.    Plaintiffs and the Idaho Subclass relied to their detriment on Defendant's omissions in purchasing toxic baby food.

461.    Plaintiffs and Class members were deceived by Defendant's deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendant's products or would have paid less for those products.

462.    Instead, as a result of Defendant's misrepresentation, Plaintiffs and Class members suffered monetary losses in that (1) the actual value of the merchandise they received was less than the value of the merchandise as represented denying them of the benefit of their bargain; and (2) Plaintiffs and Class members paid more than the fair market value of the merchandise they received causing them out-of-pocket damages.

463.    As a direct and proximate result of the foregoing acts and practices, Defendant has received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

a. Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

b. Designating Plaintiffs as Class representative and counsel as Class counsel;

c. Entering judgment in favor of Plaintiffs and the Class and against Defendant;

d. Awarding Plaintiffs and Class members damages, reasonable attorneys' fees and costs; and

e. Granting such further relief as the Court deems just.

**COUNT 20**
**Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (815 Ill. Comp. Stat. Ann. 505/1, *et seq.*), on Behalf of Plaintiffs Cristal Marie Bettis, Amanda Boots, Celia Bruno, Brandy Davis, Rebecca Keeton, Emily Soderbloom-Cathey, Brittany Wallace, Jennifer Watts, and the Illinois Subclass**

464.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

465.    Plaintiffs Cristal Marie Bettis, Amanda Boots, Celia Bruno, Brandy Davis, Rebecca Keeton, Emily Soderbloom-Cathey, Brittany Wallace, and Jennifer Watts bring this Count individually and on behalf of the Illinois Subclass.

466.    Illinois's Consumer Fraud and Deceptive Business Practices Act prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any

practice… in the conduct of any trade or commerce … whether any person has in fact been misled, deceived or damaged thereby"

467.    At all times material hereto, Defendants engaged in the advertising, offering for sale, sale, and/or distribution of services in Illinois.

468.    Defendants, by and through their employees, agents, and/or servants, and in connection with their advertising, offering for sale, sale, and/or distribution of services, engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts as described in the allegations above.

469.    The facts that Defendants misrepresented, concealed, suppressed or omitted as alleged above were material, in that such facts are the type of information upon which a reasonable consumer is expected to rely in making a decision of whether to purchase Defendants' products.

470.    At all relevant times, members of the Illinois Subclass and Defendants were either natural persons or their legal representatives, partnerships, corporations, companies, trusts, business entities, or associations.

471.    Plaintiffs and Class members purchased the product or services at issue in this matter for their own use or for that of members of their households.

472.    Defendants' misrepresentation, concealment, suppression and omission of material facts as alleged above creates a likelihood of deception and has the capacity to deceive a reasonable consumer.

473.    Defendants engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts as described in the allegations above with the intent that Plaintiffs and Class members would rely on those deceptive and unfair acts and practices and induce Plaintiffs and Class members to purchase Defendants' products.

474.    Because the characteristics of Defendants' merchandise were not as represented, and those characteristics are material to a reasonable consumer of the type of merchandise, the value of that merchandise was less than the value of the merchandise would have had the merchandise actually possessed the characteristics that were represented.

475.    Plaintiffs and Class members purchased Defendants' products or services at issue in this action in Illinois without knowledge of the material facts that were concealed, suppressed or omitted and without knowledge that Defendants affirmative representations were false.

476.    Plaintiffs and Class members were deceived by Defendants' deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendants' products or would have paid less for those products.

477.    Instead, as a result of Defendants' misrepresentations, Plaintiffs and Class members suffered monetary losses in that (1) the actual value of the merchandise they received was less than the value of the merchandise as represented denying them of the benefit of their bargain; and (2) Plaintiffs and Class members paid more than the fair market value of the merchandise they received causing them out-of-pocket damages.

478.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it offends public policy, and is so oppressive that the Illinois Subclass has little alternative but to submit and causes consumers substantial injury.

479.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair in that it violates the well-established public policies of protecting children from avoidable dangers and that the manufacturer of food is responsible for ensuring that it is fit for human consumption.

480.     Plaintiffs and Class members could not have avoided these injuries. Because Defendants were the sole source of material information that Defendants failed to disclose, Plaintiffs and Class members could not have had reason to anticipate the impending harm and thus avoided their injuries.

481.     As a direct and proximate result of the foregoing acts and practices, the Defendant has received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

a.   Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

b.   Designating Plaintiffs as Class representative and counsel as Class counsel;

c.   Entering judgment in favor of Plaintiffs and the Class and against Defendant;

d.   Awarding Plaintiffs and Class members damages, attorneys' fees and costs of suit; and

e.   Granting such further relief as the Court deems just.

## COUNT 21
**Violation of the Indiana Deceptive Consumer Sales Act (Ind. Code §§ 24-5-0.5, *et seq.*), on Behalf of Plaintiffs Megan Ashley, Celia Bruno, Cristal Marie Bettis, Michelle Corbett, Kaley Deford, Krishna Patel, Michellele Shorter, Emma Trolinder, Lauren Yesh, and the Indiana Subclass**

482.     Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

483.    Plaintiffs Megan Ashley, Celia Bruno, Cristal Marie Bettis, Michelle Corbett, Kaley Deford, Krishna Patel, Michellele Shorter, Emma Trolinder, and Lauren Yesh bring this Count individually and on behalf of the Idaho Subclass.

484.    The Indiana Deceptive Consumer Sales Act ("Indiana DCSA") prohibits suppliers from committing acts or omissions that are unfair, abusive, or deceptive in connection with a consumer transaction; further, acts and omissions prohibited by the Indiana DCSA include both implicit and explicit misrepresentations. *See* Ind. Code § 24-5-0.5-3(a).

485.    Among other things, the Indiana DCSA specifically defines the following acts and representations about the subject matter of the consumer transaction as deceptive acts: (1) that such subject of a consumer transaction has sponsorship, approval, performance, characteristics, accessories, uses, or benefits it does not have which the supplier knows or should reasonably know it does not have; and (2) that such subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not and if the supplier knows or should reasonably know that it is not.

486.    At all relevant times, Plaintiffs, members of the Indiana Subclass, and Defendant were either individuals, corporations, business trusts, estates, trusts, partnerships, associations, nonprofit corporations or organizations, or cooperatives or some other legal entity.

487.    Defendant willfully engaged in unfair, deceptive, and/or unlawful practices, as well as unconscionable commercial practices as described in the allegations above.

488.    As a result, Defendant's conduct violates several provisions of the Indiana DCSA, including but not limited to:

a. Section 24-5-0.5-3(b)(1): Representing that the subject of a consumer transaction has sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities

that it does not have—here, Defendant's branding of its toxic baby food carried with it the impression that the toxic baby food was a safe, legally compliant product which consumers could use without unduly exposing their babies to the risk of exposure to toxins; and

b.  Section 24-5-0.5-3(b)(2): Representing that the subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not and if the supplier knows or should reasonably know that it is not—as above, Defendant's toxic baby food carried with it the impression that it was a safe, legally compliant product which consumers could use without unduly exposing their babies to health risks from exposure to toxins.

489.  Defendant's omissions in violation of the Indiana DCSA were likely to mislead an ordinary consumer. Plaintiffs and the Indiana Subclass reasonably understood Defendant's omissions to mean that the toxic baby food did not contain toxic heavy metals. Plaintiff and the Indiana Subclass also reasonably understood Defendant's omissions to mean that the toxic baby food was not of substandard quality. If Defendant had disclosed that its toxic baby food contained toxic heavy metals and was of substandard quality, Plaintiffs and the Indiana Subclass would have been aware that the toxic baby food contained excessive amounts of toxins and was of substandard quality, and Plaintiffs and the Indiana Subclass would not have purchased Defendant's toxic baby food.

490.  Defendant's omissions alleged herein were material in that a reasonable person would attach importance to the information and would be induced to act upon the information in making purchase decisions.

491.    Plaintiffs and Class members were deceived by Defendant's deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendant's products or would have paid less for those products.

492.    Instead, as a result of Defendant's misrepresentation, Plaintiffs and Class members suffered monetary losses in that (1) the actual value of the merchandise they received was less than the value of the merchandise as represented denying them of the benefit of their bargain; and (2) Plaintiffs and Class members paid more than the fair market value of the merchandise they received causing them out-of-pocket damages.

493.    Plaintiffs provided Defendant pre-suit notice pursuant to Ind. Code § 24-5-0.5-5(a) by sending a certified letter containing the basis of Plaintiffs' claims on April 13, 2021.  Said notice was received by Defendant on or about April 19, 2021.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

a.  Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

b.  Designating Plaintiffs as Class representative and counsel as Class counsel;

c.  Entering judgment in favor of Plaintiffs and the Class and against Defendant;

d.  Awarding Plaintiffs and Class members their damages or $500, whichever is greater, reasonable attorneys' fees and costs; and

e.  Granting such further relief as the Court deems just.

## COUNT 22
## Violation of the Iowa Private Right of Action for Consumer Frauds Act (Iowa Code Ann. §§ 714H.1, *et seq.*), on Behalf of Plaintiffs Acacia Wilson, Sara Kilburn, and the Iowa Subclass

494.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

495.    Plaintiffs Acacia Wilson and Sara Kilburn bring this Count individually and on behalf of the Iowa Subclass.

496.    Iowa's Private Right of Action for Consumer Frauds Act ("Iowa PRACFA") prohibits any "practice or act the person knows or reasonably should know is an unfair practice, deception, fraud, false pretense, or false promise, or the misrepresentation, concealment, suppression, or omission of a material fact, with the intent that others rely upon the unfair practice, deception, fraud, false pretense, false promise, misrepresentation, concealment, suppression, or omission in connection with the advertisement, sale, or lease of consumer merchandise, or the solicitation of contributions for charitable purposes."

497.    The Iowa PRACFA further provides that a consumer who suffers an ascertainable loss of money or property as the result of an unfair or deceptive practice may bring an action to recover actual damages.

498.    At all relevant times, members of the Iowa Subclass were natural persons.

499.    Defendant willfully and purposefully engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts they intended others to rely upon in connection with trade or commerce in violation of Iowa Code Ann. § 714A.3(1) as described in the allegations above.

500.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is an act or practice in the conduct of trade or commerce.

501.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above impacts the public interest.

502.    Plaintiffs and Class members were deceived by Defendant's deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendant's products or would have paid less for those products.

503.    Instead, as a result of Defendant's misrepresentation, Plaintiffs and Class members suffered monetary losses in that (1) the actual value of the merchandise they received was less than the value of the merchandise as represented denying them of the benefit of their bargain; and (2) Plaintiffs and Class members paid more than the fair market value of the merchandise they received causing them out-of-pocket damages.

504.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it is inequitably enriching Defendant at the expense of the Iowa Subclass.

505.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it offends public policy, and is so oppressive that the Iowa Subclass has little alternative but to submit and causes consumers substantial injury.

506.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair in that it violates the well-established public policies of protecting children from avoidable dangers and that the manufacturer of food is responsible for ensuring that it is fit for human consumption.

507.    The Iowa Subclass has suffered economic injury as a direct and proximate result of the Defendant's conduct.

508.    As a direct and proximate result of the foregoing acts and practices, Defendant has received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

a.  Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

b.  Designating Plaintiffs as Class representative and counsel as Class counsel;

c.  Entering judgment in favor of Plaintiffs and the Class and against Defendant;

d.  Awarding Plaintiffs and Class members damages, reasonable attorneys' fees and costs; and

e.  Granting such further relief as the Court deems just.

### COUNT 23
**Violation of the Kansas Consumer Protection Act (Kan. Stat. Ann. §§ 50-623, *et seq.*), on Behalf of Plaintiff Shannon Herrington and the Kansas Subclass**

509.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

510.    Plaintiff Shannon Herrington brings this Count individually and on behalf of the Kansas Subclass.

511.    The Kansas Consumer Protection Act ("Kansas CPA") prohibits suppliers from engaging in any deceptive act or practice in connection with a consumer transaction. *See* Kan. Stat. Ann. § 50-626.

512.    Specifically, the Kansas CPA prohibits (1) representations made knowingly or with reason to know that: (a) property or services have sponsorship, approval, accessories,

characteristics, ingredients, uses, benefits or quantities that they do not have; (b) property or services are of particular standard, quality, grade, style or model, if they are of another which differs materially from the representation; (c) property or services has uses, benefits or characteristics unless the supplier relied upon and possesses a reasonable basis for making such representation; or (d) use, benefit or characteristic of property or services has been proven or otherwise substantiated unless the supplier relied upon and possesses the type and amount of proof or substantiation represented to exist; (2) the willful use, in any oral or written representation, of exaggeration, falsehood, innuendo or ambiguity as to a material fact; and (3) the willful failure to state a material fact, or the willful concealment, suppression or omission of a material fact.

513.   The Kansas CPA also provides that no supplier shall engage in any unconscionable act or practice in connection with a consumer transaction.

514.   The Kansas CPA allows a consumer who is aggrieved by a violation of the act to bring a private action for actual damages or a civil penalty not to exceed $10,000 per violation.

515.   At all relevant times, Plaintiffs and the Kansas Subclass were individuals who purchased Defendant's baby foods for personal, family or household purposes.

516.   At all relevant times, Defendant was a manufacturer, distributor, dealer, seller, lessor, assignor, or other person who, in the ordinary course of business, solicits, engages in or enforces consumer transactions, whether or not dealing directly with the consumer.

517.   Defendant willfully engaged in deceptive acts and practices in connection with consumer transactions as described in the allegations above.

518.   As a result, Defendant's conduct violates several provisions of the Kansas CPA, including but not limited to:

a.  Section 50-626(b)(1)(A): Representing, knowingly or with a reason to know, that property or services have sponsorship, approval, accessories, characteristics, ingredients, uses, benefits or quantities that they do not have—here, Defendant's branding of its toxic baby food carried with it the impression that the toxic baby food was a safe, legally compliant product which consumers could use without unduly exposing their babies to the risk of exposure to toxins;

b.  Section 50-626(b)(1)(D): Representing, knowingly or with a reason to know, that property or services of are a particular standard, quality, grade, style, or model, if they are of another which differs materially from the representation—as above, Defendant's branding of its toxic baby food carried with it the impression that the toxic baby food was a safe, legally compliant product which consumers could use without unduly exposing their babies to the risk of exposure to toxins; and

c.  Section 50-626(b)(3): The willful failure to state a material fact, or the willful concealment, suppression or omission of a material fact—here, Defendant willfully failed to state and concealed its knowledge about the levels of toxins in its toxic baby food, a material fact concerning the ingredients and health effects of its toxic baby food.

519.   Plaintiffs and Class members were deceived by Defendant's deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendant's products or would have paid less for those products.

520.   Instead, as a result of Defendant's misrepresentation, Plaintiffs and Class members suffered monetary losses in that (1) the actual value of the merchandise they received was less than the value of the merchandise as represented denying them of the benefit of their bargain; and (2)

Plaintiffs and Class members paid more than the fair market value of the merchandise they received causing them out-of-pocket damages.

521.    Defendant's conduct as alleged above was unfair, including but not limited to:

a.    Section 50-627(b)(1): The supplier took advantage of the inability of the consumer to reasonably protect the consumer's interests because of the consumer's ignorance or similar factor—here, the Defendant had knowledge about the amounts of toxins in its toxic baby food, which information:

i.    Defendant measures and analyzes in the regular operation of its business;

ii.    Is directly related to consumers' interest; and

iii.    Is not within the ability of the consumer to reasonably measure and analyze.

b.    Section 50-627(b)(6): The supplier made a misleading statement of opinion on which the consumer was likely to the consumer's detriment—Defendant's branding of its toxic baby food carried with it the impression that the toxic baby food was a safe, legally compliant product which consumers could use without unduly exposing their babies to the risk of exposure to toxins.

522.    Defendant's omissions in violation of the Kansas CPA were likely to mislead an ordinary consumer. Plaintiff and the Kansas Subclass reasonably understood Defendant's omissions to mean that the toxic baby food did not contain toxins at levels that are dangerous to babies' health. Plaintiff and the Kansas Subclass also reasonably understood Defendant's omissions to mean that the toxic baby food was not of substandard quality. If Defendant had disclosed that its toxic baby food contained toxins at levels that are dangerous to babies' health and was of substandard quality, Plaintiff and the Kansas Subclass would have been aware that the

toxic baby food contained excessive amounts of toxins and was of substandard quality, and Plaintiff and the Kansas Subclass would not have purchased Defendant's toxic baby food.

523.    Defendant's omissions alleged herein were material in that a reasonable person would attach importance to the information and would be induced to act upon the information in making purchase decisions.

524.    Plaintiffs and the Kansas Subclass relied to their detriment on Defendant's omissions in purchasing toxic baby food.

525.    As a direct and proximate result of the foregoing acts and practices, Defendant has received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

WHEREFORE, Plaintiff, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

a.   Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

b.   Designating Plaintiffs as Class representative and counsel as Class counsel;

c.   Entering judgment in favor of Plaintiffs and the Class and against Defendant;

d.   Awarding Plaintiffs and Class members damages or a civil penalty not to exceed $10,000 for each violation, whichever is greater, and

e.   Granting such further relief as the Court deems just.

## COUNT 24
### Violation of the Kentucky Consumer Protection Act (Ky. Rev. Stat. Ann. §§ 367.110, *et seq.*), on Behalf of Plaintiffs Ana Butkus, Melinda Pass, Cheryl Smith, Brittany Wallace, Amber Wright, Lauren Yesh, and the Kentucky Subclass

526.     Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

527.     Plaintiffs Ana Butkus, Melinda Pass, Cheryl Smith, Brittany Wallace, Amber Wright, and Lauren Yesh bring this Count individually and on behalf of the Kentucky Subclass.

528.     Kentucky's Consumer Protection Act ("Kentucky CPA") prohibits any "[u]nfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce."

529.     The Kentucky CPA further provides that any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of an unfair, false, misleading or deceptive act or practice may bring an action to recover actual damages.

530.     At all relevant times, members of the Kentucky Subclass and Defendant were either natural persons, corporations, trusts, partnerships, incorporated or unincorporated associations, or another legal entity.

531.     Defendant willfully and purposefully engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts in connection with trade or commerce in violation of Ky. Rev. Stat. Ann. § 367.170(1) as described in the allegations above.

532.     Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is an act or practice in the conduct of trade or commerce.

533.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above impacts the public interest.

534.    Plaintiffs and Class members were deceived by Defendant's deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendant's products or would have paid less for those products.

535.    Instead, as a result of Defendant's misrepresentation, Plaintiffs and Class members suffered monetary losses in that (1) the actual value of the merchandise they received was less than the value of the merchandise as represented denying them of the benefit of their bargain; and (2) Plaintiffs and Class members paid more than the fair market value of the merchandise they received causing them out-of-pocket damages.

536.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it is inequitably enriching Defendant at the expense of the Kentucky Subclass.

537.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it offends public policy, and is so oppressive that the Kentucky Subclass has little alternative but to submit and causes consumers substantial injury.

538.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair in that it violates the well-established public policies of protecting children from avoidable dangers and that the manufacturer of food is responsible for ensuring that it is fit for human consumption.

539.    The Kentucky Subclass has suffered economic injury as a direct and proximate result of Defendant's conduct.

540.     As a direct and proximate result of the foregoing acts and practices, Defendant has received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

a.   Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

b.   Designating Plaintiffs as Class representative and counsel as Class counsel;

c.   Entering judgment in favor of Plaintiffs and the Class and against Defendant;

d.   Awarding Plaintiffs and Class members damages, reasonable attorneys' fees and costs; and

e.   Granting such further relief as the Court deems just.

**COUNT 25**
**Violation of the Louisiana Unfair Trade Practices and Consumer Protection Law (La. Rev. Stat. Ann. §§ 51:1401, *et seq.*), on Behalf of Plaintiffs Sheral Shah Chheda, Loukevia Moore, Lakrisha Spikes, Margo Tezeno, and the Louisiana Subclass**

541.     Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

542.     Plaintiffs Sheral Shah Chheda, Loukevia Moore, Lakrisha Spikes, and Margo Tezeno bring this Count individually and on behalf of the Louisiana Subclass.

543.     Louisiana's Unfair Trade Practices and Consumer Protection Law prohibits any "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

544.    Louisiana's Unfair Trade Practices and Consumer Protection Law further provides that any person who suffers any ascertainable loss of money as a result of the use or employment by another person of an unfair or deceptive method, act, or practice may bring an action to recover actual damages.

545.    At all relevant times, members of the Louisiana Subclass and Defendant were either natural persons, corporations, trusts, partnerships, incorporated or unincorporated associations, or another legal entity.

546.    Defendant willfully and purposefully engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts they intended others to rely upon in connection its advertising, offering for sale, sale, or distribution of property, in violation of La. Rev. Stat. Ann. § 51:1405(A) as described in the allegations above.

547.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is an act or practice in the conduct of trade or commerce.

548.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above impacts the public interest.

549.    Plaintiffs and Class members were deceived by Defendant's deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendant's products or would have paid less for those products.

550.    Instead, as a result of Defendant's misrepresentation, Plaintiffs and Class members suffered monetary losses in that (1) the actual value of the merchandise they received was less than the value of the merchandise as represented denying them of the benefit of their bargain; and (2) Plaintiffs and Class members paid more than the fair market value of the merchandise they received causing them out-of-pocket damages.

551.   Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it is inequitably enriching Defendant at the expense of the Louisiana Subclass.

552.   Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it offends public policy, and is so oppressive that the Louisiana Subclass has little alternative but to submit and causes consumers substantial injury.

553.   Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair in that it violates the well-established public policies of protecting children from avoidable dangers and that the manufacturer of food is responsible for ensuring that it is fit for human consumption.

554.   The Louisiana Subclass has suffered economic injury as a direct and proximate result of the Louisiana Defendant's conduct.

555.   As a direct and proximate result of the foregoing acts and practices, the Louisiana Defendant has received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

a.   Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

b.   Designating Plaintiffs as Class representative and counsel as Class counsel;

c.   Entering judgment in favor of Plaintiffs and the Class and against Defendant;

d.  Awarding Plaintiffs and Class members actual damages, reasonable attorneys' fees and costs of suit; and

e.  Granting such further relief as the Court deems just.

**COUNT 26**
**Violation of the Maine Unfair Trade Practices Act (Me. Rev. Stat. Ann. tit. 5, §§ 205-A, *et seq.*), on Behalf of Plaintiffs Angela Arrowsmith, Jen Comeau, Kimberly Conway, Mia Pelletier, and the Maine Subclass**

556.  Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

557.  Plaintiffs Angela Arrowsmith, Jen Comeau, Kimberly Conway, and Mia Pelletier bring this Count individually and on behalf of the Maine Subclass.

558.  Maine's Unfair Trade Practices Act prohibits any "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

559.  Maine's Unfair Trade Practices Act further provides that any person who purchases or leases goods, services or property, real or personal, primarily for personal, family or household purposes and thereby suffers any loss of money or property, real or personal, as a result of the use or employment by another person of a unfair or deceptive acts or practices may bring an action for actual damages, restitution and for such other equitable relief, including an injunction, as the court determines to be necessary and proper.

560.  At all relevant times, members of the Maine Subclass and Defendant were either natural persons, corporations, trusts, partnerships, incorporated or unincorporated associations or another legal entity.

561.  Defendant willfully and purposefully engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts in

connection with trade or commerce in violation of Me. Rev. Stat. Ann. tit. 5, § 207 as described in the allegations above.

562.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above occurred in connection with its advertising, offering for sale, sale or distribution of services or property.

563.    Plaintiffs and Class members were deceived by Defendant's deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendant's products or would have paid less for those products.

564.    Instead, as a result of Defendant's misrepresentation, Plaintiffs and Class members suffered monetary losses in that (1) the actual value of the merchandise they received was less than the value of the merchandise as represented denying them of the benefit of their bargain; and (2) Plaintiffs and Class members paid more than the fair market value of the merchandise they received causing them out-of-pocket damages.

565.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above impacts the public interest.

566.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it is inequitably enriching Defendant at the expense of the Maine Subclass.

567.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it offends public policy, and is so oppressive that the Maine Subclass has little alternative but to submit and causes consumers substantial injury.

568.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair in that it violates the well-established public policies of protecting children

from avoidable dangers and that the manufacturer of food is responsible for ensuring that it is fit for human consumption.

569.    The Maine Subclass has suffered economic injury as a direct and proximate result of the Maine Defendant's conduct.

570.    As a direct and proximate result of the foregoing acts and practices, Defendant has received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

571.    Plaintiffs provided Defendant pre-suit settlement offer pursuant to Me. Rev. Stat. Ann. tit. 5, § 213(1-A), by sending a certified letter containing the basis of Plaintiffs' claims on April 13, 2021.  Said notice was received by Defendant on or about April 19, 2021.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

a. Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

b. Designating Plaintiffs as Class representative and counsel as Class counsel;

c. Entering judgment in favor of Plaintiffs and the Class and against Defendant;

d. Awarding Plaintiffs and Class members damages, reasonable attorneys' fees and costs; and

e. Granting such further relief as the Court deems just.

**COUNT 27**

**Violation of the Maryland Consumer Protection Act (Md. Code Ann., Com. Law §§ 13-101, *et seq.*), on Behalf of Plaintiffs Alyssa Barb, Julie Blakeley, Kimberly Conway, Lori-Ann McKenzie-Henry, Maurice Petetson, Holly Plotts, Katrina Thomas, and the Maryland Subclass**

572.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

573.    Plaintiffs Alyssa Barb, Julie Blakeley, Kimberly Conway, Lori-Ann McKenzie-Henry, Maurice Petetson, Holly Plotts, and Katrina Thomas brings this Count individually and on behalf of the Maryland Subclass.

574.    The Maryland Consumer Protection Act ("Maryland CPA") provides a person may not engage in any unfair, abusive or deceptive trade practice in the sale or lease or consumer goods or services.

575.    The Maryland CPA also provides that unfair, abusive, or deceptive trade practices include, among other things, any: (1) false, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers; (2) representation that: (i) consumer goods, consumer realty, or consumer services have a sponsorship, approval, accessory, characteristic, ingredient, use, benefit, or quantity which they do not have; or (ii) consumer goods, consumer realty, or consumer services are of a particular standard, quality, grade, style, or model which they are not; (3) failure to state a material fact if the failure deceives or tends to deceive; and (4) deception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection with (i) the promotion or sale of any consumer goods, consumer realty, or consumer service.

576. The Maryland CPA further provides that any person may bring an action to recover for injury or loss sustained by him as the result of an unfair, abusive or deceptive practice.

577. At all relevant times, Plaintiffs, members of the Maryland Subclass, and Defendant were either individuals, corporations, business trusts, statutory trusts, estates, trusts, partnerships, associations, two or more persons having a joint or common interest, or another legal or commercial entity.

578. Defendant willfully engaged in unfair, abusive, and deceptive trade practices as described in the allegations above.

579. As a result, Defendant's conduct violates several provisions of the Maryland CPA, including but not limited to:

    a. Section 13-301(1): Making false or misleading oral or written statements, visual descriptions, or other representations of any kind which have the capacity, tendency, or effect of deceiving or misleading consumers—here, Defendant's branding of its toxic baby food carried with it the impression that the toxic baby food was a safe, legally compliant product which consumers could use without unduly exposing their babies to the risk of exposure to toxins;

    b. Section 13-301(2)(b)(i): Representing that consumer goods, consumer realty, or consumer services have a sponsorship, approval, accessory, characteristic, ingredient, use, benefit, or quantity which they do not—Defendant's branding of its toxic baby food carried with it the impression that the toxic baby food was a safe, legally compliant product which consumers could use without unduly exposing their babies to the risk of exposure to toxins;

c.  Section 13-301(2)(b)(ii): Representing that consumer good, consumer realty, or consumer services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another—Defendant's toxic baby food carried with it the impression that it was a safe, legally compliant product which consumers could use without unduly exposing their babies to health risks from exposure to toxins;

d.  Section 13-301(3): Failing to state a material fact if the failure deceives or tends to deceive—Defendants failed to state the material fact that toxic baby food contains excessive levels of toxins, which both tends to deceive and did deceive Plaintiffs and the Maryland Subclass; and

e.  Section 13-301(9)(I): Committing deception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that the consumer rely on the same in connection with the promotion or sale of any consumer goods—Defendant deceived Plaintiffs and the Maryland Subclass by misrepresenting toxic baby food as a safe baby food by knowingly concealing, suppressing, and omitting from all marketing the material fact that toxic baby food contains harmful amounts of toxins.

580.  Defendant's omissions in violation of the Maryland CPA were likely to mislead an ordinary consumer. Plaintiffs and the Maryland Subclass reasonably understood Defendant's omissions to mean that the toxic baby food did not contain toxins at levels that are dangerous to babies' health. Plaintiff and the Maryland Subclass also reasonably understood Defendant's omissions to mean that the toxic baby food was not of substandard quality.

581. If Defendant had disclosed that its toxic baby food contained toxins at levels that are dangerous to babies' health and was of substandard quality, Plaintiffs and the Maryland Subclass would have been aware that the toxic baby food contained excessive amounts of toxins and was of substandard quality, and Plaintiffs and the Maryland Subclass would not have purchased Defendant's toxic baby food.

582. Plaintiffs and Class members were deceived by Defendant's deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendant's products or would have paid less for those products.

583. Instead, as a result of Defendant's misrepresentation, Plaintiffs and Class members suffered monetary losses in that (1) the actual value of the merchandise they received was less than the value of the merchandise as represented denying them of the benefit of their bargain; and (2) Plaintiffs and Class members paid more than the fair market value of the merchandise they received causing them out-of-pocket damages.

584. Plaintiffs and the Maryland Subclass relied to their detriment on Defendant's omissions in purchasing toxic baby food.

585. As a direct and proximate result of the foregoing acts and practices, Defendant has received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

      a. Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

b.  Designating Plaintiffs as Class representative and counsel as Class counsel;

c.  Entering judgment in favor of Plaintiffs and the Class and against Defendant;

d.  Awarding Plaintiffs and Class members damages, reasonable attorneys' fees and costs; and

e.  Granting such further relief as the Court deems just.

**COUNT 28**
**Violation of the Massachusetts Regulation of Business Practice and Consumer Protection Act (Mass. Gen. Laws Ann. ch. 93A, §§ 1, *et seq.*), on Behalf of Plaintiffs Angela Arrowsmith, Grisel Barreto, Brittany Distaso, Kelsey Glennon, Robert Hart, Karleen Kozaczka, Lori Ann Louis, and the Massachusetts Subclass**

586.   Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

587.   Plaintiffs Angela Arrowsmith, Grisel Barreto, Brittany Distaso, Kelsey Glennon, Robert Hart, Karleen Kozaczka, and Lori Ann Louis bring this Count individually and on behalf of the Massachusetts Subclass.

588.   Massachusetts's Regulation of Business Practice and Consumer Protection Act prohibits any "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

589.   At all relevant times, members of the Massachusetts Subclass and Defendant were either natural persons, corporations, trusts, partnerships, incorporated or unincorporated associations, and another legal entity.

590.   Defendant willfully and purposefully engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts in connection with trade or commerce in violation of Mass. Gen. Laws Ann. ch. 93A, § 2(a) as described in the allegations above.

591.   Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is an act or practice in the conduct of trade or commerce.

592.   Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above impacts the public interest.

593.   Plaintiffs and Class members were deceived by Defendant's deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendant's products or would have paid less for those products.

594.   Instead, as a result of Defendant's misrepresentation, Plaintiffs and Class members suffered monetary losses in that (1) the actual value of the merchandise they received was less than the value of the merchandise as represented denying them of the benefit of their bargain; and (2) Plaintiffs and Class members paid more than the fair market value of the merchandise they received causing them out-of-pocket damages.

595.   Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it is inequitably enriching Defendant at the expense of the Massachusetts Subclass.

596.   Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it offends public policy, and is so oppressive that the Massachusetts Subclass has little alternative but to submit and causes consumers substantial injury.

597.   Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair in that it violates the well-established public policies of protecting children from avoidable dangers and that the manufacturer of food is responsible for ensuring that it is fit for human consumption.

598.    The Massachusetts Subclass has suffered economic injury as a direct and proximate result of the Massachusetts Defendant's conduct.

599.    As a direct and proximate result of the foregoing acts and practices, Defendant has received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

600.    Plaintiffs provided Defendant pre-suit notice pursuant to Mass. Gen. Laws Ann. ch. 93A, § 9(3) by sending a certified letter containing the basis of Plaintiffs' claims on April 12, 2021. Said notice was received by Defendant on or about April 19, 2021.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

   a.   Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

   b.   Designating Plaintiffs as Class representative and counsel as Class counsel;

   c.   Entering judgment in favor of Plaintiffs and the Class and against Defendant;

   d.   Awarding Plaintiffs and Class members treble damages, attorneys' fees, costs; and

   e.   Granting such further relief as the Court deems just.

**COUNT 29**
**Violation of the Michigan Consumer Protection Act (Mich. Comp. Laws §§ 445.901, *et seq.*), on Behalf of Plaintiffs Brittany Bennett, Deana Linegar, Andrew Lohse, Amanda Morency, Kirthi Sasikumar, Emily Soderbloom-Cathey, Megan Troyer, and the Michigan Subclass**

601.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

602.     Plaintiffs Brittany Bennett, Deana Linegar, Andrew Lohse, Amanda Morency, Kirthi Sasikumar, Emily Soderbloom-Cathey, and Megan Troyer bring this Count individually and on behalf of the Michigan Subclass.

603.     Michigan's Consumer Protection Act makes unlawful "[f]ailing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer."

604.     At all relevant times, members of the Michigan Subclass and Defendant were "persons" within the meaning of the Consumer Protection Act. *See* Mich. Comp. Laws § 445.902(d).

605.     Defendant willfully and purposefully engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts they intended others to rely upon in connection with trade or commerce in violation of Mich. Comp. Laws § 445.903(1)(s) as described in the allegations above.

606.     Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is an act or practice in the conduct of trade or commerce.

607.     Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above impacts the public interest.

608.     Plaintiffs and Class members were deceived by Defendant's deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendant's products or would have paid less for those products.

609.     Instead, as a result of Defendant's misrepresentation, Plaintiffs and Class members suffered monetary losses in that (1) the actual value of the merchandise they received was less than the value of the merchandise as represented denying them of the benefit of their bargain; and (2)

Plaintiffs and Class members paid more than the fair market value of the merchandise they received causing them out-of-pocket damages.

610.   Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it is inequitably enriching the Defendant at the expense of the Michigan Subclass.

611.   Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it offends public policy, and is so oppressive that the Michigan Subclass has little alternative but to submit and causes consumers substantial injury.

612.   Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair in that it violates the well-established public policies of protecting children from avoidable dangers and that the manufacturer of food is responsible for ensuring that it is fit for human consumption.

613.   The Michigan Subclass has suffered economic injury as a direct and proximate result of Defendant's conduct.

614.   As a direct and proximate result of the foregoing acts and practices, Defendant has received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

   a.  Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

   b.  Designating Plaintiffs as Class representative and counsel as Class counsel;

    c.   Entering judgment in favor of Plaintiffs and the Class and against Defendant;

    d.   Awarding Plaintiffs and Class members damages their damages or $250, whichever is greater, together with reasonable attorneys' fees and costs; and

    e.   Granting such further relief as the Court deems just.

**COUNT 30**
**Violation of the Minnesota Prevention of Consumer Fraud Act (Minn. Stat. Ann. §§ 325F.68, *et seq.*), on Behalf of Plaintiffs Amanda Boots, Natalyz Dzyuba, Rachael TreeTop, and the Minnesota Subclass**

615.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

616.    Plaintiffs Amanda Boots, Natalyz Dzyuba, and Rachael TreeTop bring this Count individually and on behalf of the Minnesota Subclass.

617.    Minnesota's Prevention of Consumer Fraud Act ("Minnesota PCFA") prohibits any "act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby."

618.    At all relevant times, members of the Minnesota Subclass and Defendant were "persons" within the meaning of the Minnesota PCFA. *See* Minn. Stat. Ann. § 325F.68(3).

619.    Defendant willfully and purposefully engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts they intended others to rely upon in connection with the sale of merchandise (as defined by Minn. Stat. Ann. § 325F.68(2)) in violation of Minn. Stat. Ann. § 325F.69 as described in the allegations above.

620.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is an act or practice in the conduct of trade or commerce.

621.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above impacts the public interest.

622.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it is inequitably enriching Defendant at the expense of the Minnesota Subclass.

623.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it offends public policy, and is so oppressive that the Minnesota Subclass has little alternative but to submit and causes consumers substantial injury.

624.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair in that it violates the well-established public policies of protecting children from avoidable dangers and that the manufacturer of food is responsible for ensuring that it is fit for human consumption.

625.    At all relevant times, special circumstances have existed and required Defendant to disclose rather than omit information about the levels of toxins in its toxic baby food. These special circumstances include but are not limited to the following:

      a.    Defendant had a fiduciary relationship with Plaintiffs and members of the Minnesota Subclass in that (1) the Defendant knew or had reason to know that Plaintiffs and the Minnesota Subclass were placing trust and confidence in it and relying on it to counsel and inform them about the safety and nutrition of baby food; (2) Plaintiffs and the Minnesota Subclass placed their confidence in Defendant, resulting in superiority and influence over Plaintiffs and the Minnesota Subclass;

(3) there was an asymmetry of information between the parties in favor of the Defendant, in combination with the status of the relationship; and (4) the parties had disparate levels of business experience, and Defendant invited Plaintiffs and the Minnesota Subclass to place their confidence in Defendant.

b. Defendant had special knowledge of material facts to which Plaintiffs and the Minnesota Subclass did not have access.

c. Defendant speaks widely and loudly through its branding about the safety and nutrition of its toxic baby food, e.g., misleading statements about complying with government safety standards when Defendant knows such standards do not directly regulate the amounts of toxins in its toxic baby food, and therefore Defendant must be required at the same time to say enough about the amounts of toxins in its toxic baby food to prevent its words from misleading consumers.

626. The Minnesota Subclass has suffered economic injury as a direct and proximate result of Defendant's conduct.

627. As a direct and proximate result of the foregoing acts and practices, Defendant has received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

a. Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

b. Designating Plaintiffs as Class representative and counsel as Class counsel;

c.   Entering judgment in favor of Plaintiffs and the Class and against Defendant;

d.   Awarding Plaintiffs and Class members damages, reasonable attorneys' fees, and costs; and

e.   Granting such further relief as the Court deems just.

## COUNT 31
**Violation of the Minnesota Unlawful Trade Practices Act (Minn. Stat. Ann. §§ 325D.09, *et seq.*), on Behalf of Plaintiffs Amanda Boots, Natalyz Dzyuba, Rachael TreeTop, and the Minnesota Subclass**

628.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

629.    Plaintiffs Amanda Boots, Natalyz Dzyuba, and Rachael TreeTop bring this Count individually and on behalf of the Minnesota Subclass.

630.    At all relevant times, members of the Minnesota Subclass and Defendant were "persons" within the meaning of the Minnesota Unlawful Trade Practices Act ("Minnesota UTPA"). *See* Minn. Stat. Ann. § 325D.10.

631.    Minnesota's UTPA prohibits misrepresentations about the quality of goods: "No personal shall, in connection with the sale of merchandise, knowingly misrepresent, directly or indirectly, the true quality, ingredients or origin of such merchandise." *See* Minn. Stat. Ann. § 325D.13.

632.    Defendant willfully and purposefully engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts they intended others to rely upon in connection with the sale of merchandise as described in the allegations above.

633.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is an act in connection with the sale of merchandise.

634.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above impacts the public interest and is the type of harm that Minn. Stat. Ann. § 325D.09 expresses must be suppressed.

635.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it is inequitably enriching Defendant at the expense of the Minnesota Subclass.

636.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it offends public policy, and is so oppressive that the Minnesota Subclass has little alternative but to submit and causes consumers substantial injury.

637.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair in that it violates the well-established public policies of protecting children from avoidable dangers and that the manufacturer of food is responsible for ensuring that it is fit for human consumption.

638.    At all relevant times, special circumstances have existed and required Defendant to disclose rather than omit information about the levels of toxins in its toxic baby food. These special circumstances include but are not limited to the following:

a.    Defendant had a fiduciary relationship with Plaintiffs and members of the Minnesota Subclass in that (1) the Defendant knew or had reason to know that Plaintiffs and the Minnesota Subclass were placing trust and confidence in it and relying on it to counsel and inform them about the safety and nutrition of baby food; (2) Plaintiffs and the Minnesota Subclass placed their confidence in Defendant, resulting in superiority and influence over Plaintiffs and the Minnesota Subclass; (3) there was an asymmetry of information between the parties in favor of the

Defendant, in combination with the status of the relationship; and (4) the parties had disparate levels of business experience, and Defendant invited Plaintiffs and the Minnesota Subclass to place their confidence in Defendant.

b.  Defendant had special knowledge of material facts to which Plaintiffs and the Minnesota Subclass did not have access.

c.  Defendant speaks widely and loudly through its branding about the safety and nutrition of its toxic baby food, e.g., misleading statements about complying with government safety standards when Defendant knows such standards do not directly regulate the amounts of toxins in its toxic baby food, and therefore Defendant must be required at the same time to say enough about the amounts of toxins in its toxic baby food to prevent its words from misleading consumers.

639.   The Minnesota Subclass has suffered economic injury as a direct and proximate result of Defendant's conduct.

640.   As a direct and proximate result of the foregoing acts and practices, Defendant has received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

a.  Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

b.  Designating Plaintiffs as Class representative and counsel as Class counsel;

c.  Entering judgment in favor of Plaintiffs and the Class and against Defendant;

d.   Awarding Plaintiffs and Class members their damages; and

e.   Granting such further relief as the Court deems just.

## COUNT 32
### Violation of the Minnesota Uniform Deceptive Trade Practices Act (Minn. Stat. Ann. §§ 325D.43, *et seq.*), on Behalf of Plaintiffs Amanda Boots, Natalyz Dzyuba, Rachael TreeTop, and the Minnesota Subclass

641.   Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

642.   Plaintiffs Amanda Boots, Natalyz Dzyuba, and Rachael TreeTop bring this Count individually and on behalf of the Minnesota Subclass.

643.   The Minnesota Uniform Deceptive Trade Practices Act ("Minnesota UDTPA") prohibits persons from committing deceptive acts in the course of business. *See* Minn. Stat. Ann. § 325D.44.

644.   Among other things, the Minnesota UDTPA specifically defines the following acts and representations about the subject matter of the consumer transaction as deceptive acts: (1) causing likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods; (2) that such subject of a consumer transaction has sponsorship, approval, performance, characteristics, accessories, uses, or benefits it does not have which the supplier knows or should reasonably know it does not have; and (3) that such subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not and if the supplier knows or should reasonably know that it is not.

645.   At all relevant times, Plaintiffs, members of the Minnesota Subclass, and Defendant were either individuals, corporations, business trusts, estates, trusts, partnerships, associations, nonprofit corporations or organizations, or cooperatives or some other legal entity.

646. Defendant willfully engaged in unfair, deceptive, and/or unlawful practices, as well as unconscionable commercial practices as described in the allegations above.

647. As a result, Defendant's conduct violates several provisions of the Minnesota UDTPA, including but not limited to:

a. Section 325D.44(2): Causing likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods—here, Defendant's willful failure to disclose to consumers the excessive amounts of toxins in toxic baby food while at the same time asserting that the toxic baby food irrelevant safety standards causes the likelihood of confusion or misunderstanding about the sources and certifications of its ingredients in that it causes a likelihood that consumers will believe the toxic baby food does not contain excessive amounts of toxins and is regarded as safe for babies to eat. This provision does not require proof of actual confusion or misunderstanding.

b. Section 325D.44(5): Representing that the subject of a consumer transaction has sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that it do not have—here, Defendant's branding of its toxic baby food carried with it the impression that the toxic baby food was a safe, legally compliant product which consumers could use without unduly exposing their babies to the risk of exposure to toxins; and

c. Section 325D.44(7): Representing that the subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not and if the supplier knows or should reasonably know that it is not—as above, Defendant's toxic baby food carried with it the impression that it was a safe, legally compliant product

which consumers could use without unduly exposing their babies to health risks from exposure to toxins.

648. At all relevant times, special circumstances have existed and required Defendant to disclose rather than omit information about the levels of toxins in its toxic baby food. These special circumstances include but are not limited to the following:

a. Defendant had a fiduciary relationship with Plaintiffs and members of the Minnesota Subclass in that (1) the Defendant knew or had reason to know that Plaintiffs and the Minnesota Subclass were placing trust and confidence in it and relying on it to counsel and inform them about the safety and nutrition of baby food; (2) Plaintiffs and the Minnesota Subclass placed their confidence in Defendant, resulting in superiority and influence over Plaintiffs and the Minnesota Subclass; (3) there was an asymmetry of information between the parties in favor of the Defendant, in combination with the status of the relationship; and (4) the parties had disparate levels of business experience, and Defendant invited Plaintiffs and the Minnesota Subclass to place their confidence in Defendant.

b. Defendant had special knowledge of material facts to which Plaintiffs and the Minnesota Subclass did not have access.

c. Defendant speaks widely and loudly through its branding about the safety and nutrition of its toxic baby food, e.g., misleading statements about complying with government safety standards when Defendant knows such standards do not directly regulate the amounts of toxins in its toxic baby food, and therefore Defendant must be required at the same time to say enough about the amounts of toxins in its toxic baby food to prevent its words from misleading consumers.

649.     Defendant's omissions in violation of the Minnesota UDTPA were likely to mislead an ordinary consumer. Plaintiffs and the Minnesota Subclass reasonably understood Defendant's omissions to mean that the toxic baby food did not contain toxic heavy metals. Plaintiff and the Minnesota Subclass also reasonably understood Defendant's omissions to mean that the toxic baby food was not of substandard quality. If Defendant had disclosed that its toxic baby food contained toxic heavy metals and was of substandard quality, Plaintiffs and the Minnesota Subclass would have been aware that the toxic baby food contained excessive amounts of toxins and was of substandard quality, and Plaintiffs and the Minnesota Subclass would not have purchased Defendant's toxic baby food.

650.     Defendant's omissions alleged herein were material in that a reasonable person would attach importance to the information and would be induced to act upon the information in making purchase decisions.

651.     Plaintiffs and Class members were deceived by Defendant's deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendant's products or would have paid less for those products.

652.     Instead, as a result of Defendant's misrepresentation, Plaintiffs and Class members suffered monetary losses in that (1) the actual value of the merchandise they received was less than the value of the merchandise as represented denying them of the benefit of their bargain; and (2) Plaintiffs and Class members paid more than the fair market value of the merchandise they received causing them out-of-pocket damages.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

    a.   Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

    b.   Designating Plaintiffs as Class representative and counsel as Class counsel;

    c.   Entering judgment in favor of Plaintiffs and the Class and against Defendant;

    d.   Awarding Plaintiffs and Class members damages, reasonable attorneys' fees, and costs; and

    e.   Granting such further relief as the Court deems just.

**COUNT 33**
**Violation of the Mississippi Consumer Protection Act (Miss. Code Ann. §§ 75-24-1, *et seq.*),**
**on Behalf of Plaintiffs Chelzy Desvigne, Kirsten South, and the Mississippi Subclass**

653.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

654.    Plaintiffs Chelzy Desvigne, and Kirsten South bring this Count individually and on behalf of the Mississippi Subclass.

655.    At all relevant times, Plaintiffs, members of the Mississippi Subclass, and Defendant were "persons" within the meaning of Miss. Code Ann. § 75-24-3(a).

656.    The Mississippi Consumer Protection Act ("Mississippi CPA") prohibits unfair or deceptive trade practices in or affecting commerce. *See* Miss. Code Ann. § 75-24-5.

657.    Defendant willfully engaged in unfair or deceptive trade practices in or affecting commerce as described in the allegations above.

658.    As a result, Defendant's conduct violates several provisions of the Mississippi CPA, including but not limited to:

    a.   Section 75-24-5(2)(e): Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not

have—here, Defendant's branding of its toxic baby food carried with it the impression that the toxic baby food was a safe, legally compliant product which consumers could use without unduly exposing their babies to the risk of exposure to toxins; and

b. Section 75-24-5(2)(g): Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another—as above, Defendant's toxic baby food carried with it the impression that it was a safe, legally compliant product which consumers could use without unduly exposing their babies to health risks from exposure to toxins.

659.    Defendant's omissions in violation of the Mississippi CPA were likely to mislead an ordinary consumer. Plaintiffs and the Mississippi Subclass reasonably understood Defendant's omissions to mean that the toxic baby food did not contain toxins at levels that are dangerous to babies' health. Plaintiff and the Mississippi Subclass also reasonably understood Defendant's omissions to mean that the toxic baby food was not of substandard quality. If Defendant had disclosed that its toxic baby food contained toxins at levels that are dangerous to babies' health and was of substandard quality, Plaintiffs and the Mississippi Subclass would have been aware that the toxic baby food contained excessive amounts of toxins and was of substandard quality, and Plaintiffs and the Mississippi Subclass would not have purchased Defendant's toxic baby food.

660.    Plaintiffs and the Mississippi Subclass relied to their detriment on Defendant's omissions in purchasing toxic baby food.

661.    Pursuant to Miss. Code Ann. § 75-24-15(2), Plaintiffs made a reasonable attempt to resolve their claims through an informal dispute settlement program approved by the Attorney General by delivering a letter by to consumer@ago.ms.gov on June 30, 2021, in addition to

sending written notice by mail to Defendant on April 12, 2021, which Defendant received on or about April 16, 2021.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

   a. Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

   b. Designating Plaintiffs as Class representative and counsel as Class counsel;

   c. Entering judgment in favor of Plaintiffs and the Class and against Defendant;

   d. Awarding Plaintiffs and Class members their damages; and

   e. Granting such further relief as the Court deems just.

**COUNT 34**
**Violation of the Missouri Merchandising Practices Act (Mo. Rev. Stat. Ann. §§ 407.010, *et seq.*), on Behalf of Plaintiffs Melanie Cole, Angela Gardner, Sarah Ridings, Emily Soderbloom-Cathey, and the Missouri Subclass**

662.   Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

663.   Plaintiffs Melanie Cole, Angela Gardner, Sarah Ridings, and Emily Soderbloom-Cathey bring this Count individually and on behalf of the Missouri Subclass.

664.   Missouri's Merchandising Practices Act ("Missouri MPA") prohibits any "act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce or the solicitation of any funds for any charitable purpose."

665. At all relevant times, members of the Missouri Subclass and Missouri Defendant were "persons" within the meaning of the Missouri MPA. *See* Mo. Rev. Stat. Ann. § 407.010(5).

666. Defendant willfully and purposefully engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts in connection with trade or commerce in violation of Mo. Rev. Stat. Ann. § 407.020 as described in the allegations above.

667. Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is an act or practice in the conduct of trade or commerce.

668. At all relevant times, Plaintiffs and members of the Missouri Subclass acted as a reasonable consumer would in light of all circumstances.

669. Defendant's unlawful method, acts, and practices as alleged would cause a reasonable person to enter into the transactions that resulted in damages.

670. At trial, Plaintiffs will present, both individually and on behalf of the Missouri Subclass, evidence that is sufficiently definitive and objective to allow the loss of individual damages to be calculated with a reasonable degree of certainty.

671. Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above impacts the public interest.

672. Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it inequitably enriches Defendant at the expense of the Missouri Subclass.

673. Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it offends public policy, and is so oppressive that the Missouri Subclass has little alternative but to submit and causes consumers substantial injury.

674.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair in that it violates the well-established public policies of protecting children from avoidable dangers and that the manufacturer of food is responsible for ensuring that it is fit for human consumption.

675.    The Missouri Subclass has suffered economic injury as a direct and proximate result of Defendant's conduct.

676.    As a direct and proximate result of the foregoing acts and practices, Defendant has received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

a.   Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

b.   Designating Plaintiffs as Class representative and counsel as Class counsel;

c.   Entering judgment in favor of Plaintiffs and the Class and against Defendant;

d.   Awarding Plaintiffs and Class members their individual damages, punitive damages, attorneys' fees based on the amount of time reasonably expended, and costs; and

e.   Granting such further relief as the Court deems just.

## COUNT 35
### Violation of the Montana Unfair Trade Practices and Consumer Protection Act (Mont. Code Ann. §§ 30-14-101, *et seq.*), on Behalf of Plaintiffs Lea Santos, Sonja Renee Twiggs, and the Montana Subclass

677.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

678.    Plaintiff Plaintiffs Lea Santos and Sonja Renee Twiggs brings this Count individually and on behalf of the Montana Subclass.

679.    At all relevant times, Plaintiffs, the Montana Subclass, and Defendant were "persons" within the meaning of Mont. Code Ann. § 30-14-102(6).

680.    The Montana Unfair Trade Practices and Consumer Protection Act prohibits unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. *See* Mont. Code Ann. § 30-14-103.

681.    Defendant willfully engaged in unfair, deceptive, and/or unlawful practices as described in the allegations above.

682.    Defendant's misrepresentations, omissions, and suppression of material information in the sale of its toxic baby food are acts or practices in the conduct or trade or commerce.

683.    Plaintiffs and the Montana Subclass suffered loss of money as a direct and proximate result of Defendant's unfair, deceptive practices.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

a.    Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

b.   Designating Plaintiffs as Class representative and counsel as Class counsel;

c.   Entering judgment in favor of Plaintiffs and the Class and against Defendant;

d.   Awarding Plaintiffs and Class members the greater of their actual damages or $500, treble damages, attorneys' fees, and costs; and

e.   Granting such further relief as the Court deems just.

**COUNT 36**
**Violation of the Nebraska Consumer Protection Act (Neb. Rev. Stat. §§ 59-1601, *et seq.*), on Behalf of Plaintiffs Mayelin Carranza, Sheral Shah Chheda, Natalya Dzyuba, Kyla Talley, Acacia Wilson, and the Nebraska Subclass**

684.   Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

685.   Plaintiffs  Mayelin Carranza, Sheral Shah Chheda, Natalya Dzyuba, Kyla Talley, and Acacia Wilson bring this Count individually and on behalf of the Nebraska Subclass.

686.   Nebraska's Consumer Protection Act prohibits any "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

687.   At all relevant times, members of the Nebraska Subclass and Defendant were "persons" within the meaning of the Consumer Protection Act. *See* Neb. Rev. Stat. § 59-1601(1).

688.   Defendant willfully and purposefully engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts in connection with trade or commerce in violation of Neb. Rev. Stat. § 59-1602 as described in the allegations above.

689.   Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is an act or practice in the conduct of trade or commerce.

690.   Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above impacts the public interest.

691.     Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it is inequitably enriching Defendant at the expense of the Nebraska Subclass.

692.     Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it offends public policy, and is so oppressive that the Nebraska Subclass has little alternative but to submit and causes consumers substantial injury.

693.     Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair in that it violates the well-established public policies of protecting children from avoidable dangers and that the manufacturer of food is responsible for ensuring that it is fit for human consumption.

694.     The Nebraska Subclass has suffered economic injury as a direct and proximate result of Defendant's conduct.

695.     As a direct and proximate result of the foregoing acts and practices, Defendant has received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

a.  Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

b.  Designating Plaintiffs as Class representative and counsel as Class counsel;

c.  Entering judgment in favor of Plaintiffs and the Class and against Defendant;

d. Awarding Plaintiffs and Class members their damages or $1,000, whichever is greater; reasonable attorneys' fees; costs; and

e. Granting such further relief as the Court deems just.

**COUNT 37**
**Violation of the Nebraska Uniform Deceptive Trade Practices Act (Neb. Rev. Stat. §§ 87-301, *et seq.*), on Behalf of Plaintiffs Mayelin Carranza, Sheral Shah Chheda, Natalya Dzyuba, Kyla Talley, Acacia Wilson, and the Nebraska Subclass**

696. Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

697. Plaintiffs Mayelin Carranza, Sheral Shah Chheda, Natalya Dzyuba, Kyla Talley, and Acacia Wilson bring this Count individually and on behalf of the Nebraska Subclass.

698. The Nebraska Uniform Deceptive Trade Practices Act ("Nebraska UDTPA") prohibits persons from committing deceptive acts in the course of business. *See* Neb. Rev. Stat. § 87-301.

699. Among other things, the Nebraska UDTPA specifically defines the following acts and representations about the subject matter of the consumer transaction as deceptive acts: (1) causing likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods; (2) causing likelihood of confusion or misunderstanding as to affiliation, connection, or associations with, or certification by, another; (3) that such subject of a consumer transaction has sponsorship, approval, performance, characteristics, accessories, uses, or benefits it does not have which the supplier knows or should reasonably know it does not have; and (4) that such subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not and if the supplier knows or should reasonably know that it is not.

700.    At all relevant times, Plaintiffs, members of the Nebraska Subclass, and Defendant were either individuals, corporations, business trusts, estates, trusts, partnerships, associations, nonprofit corporations or organizations, or cooperatives or some other legal entity.

701.    Defendant willfully engaged in unfair, deceptive, and/or unlawful practices, as well as unconscionable commercial practices as described in the allegations above.

702.    As a result, Defendant's conduct violates several provisions of the Nebraska UDTPA, including but not limited to:

a. Section 87-302(a)(2): Causing likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods—here, Defendant's willful failure to disclose to consumers the excessive amounts of toxins in toxic baby food while at the same time asserting that the toxic baby food irrelevant safety standards causes the likelihood of confusion or misunderstanding about the sources and certifications of its ingredients in that it causes a likelihood that consumers will believe the toxic baby food does not contain excessive amounts of toxins as approved by the authorities who issue certain safety regulations. This provision does not require proof of actual confusion or misunderstanding.

b. Section 87-302(a)(3): Causing likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, another—here, Defendant's willful failure to disclose to consumers the excessive amounts of toxins in toxic baby food while at the same time asserting that the toxic baby food irrelevant safety standards causes the likelihood of confusion or misunderstanding about the sources and certifications of its ingredients in that it causes a likelihood that consumers will believe the toxic baby food does not contain excessive amounts

of toxins as approved by the authorities who issue certain safety regulations. This provision does not require proof of actual confusion or misunderstanding.

c.   Section 87-302(a)(4): Representing that the subject of a consumer transaction has sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that it do not have—here, Defendant's branding of its toxic baby food carried with it the impression that the toxic baby food was a safe, legally compliant product which consumers could use without unduly exposing their babies to the risk of exposure to toxins; and

d.   Section 87-302(a)(6): Representing that the subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not and if the supplier knows or should reasonably know that it is not—as above, Defendant's toxic baby food carried with it the impression that it was a safe, legally compliant product which consumers could use without unduly exposing their babies to health risks from exposure to toxins.

703.   Defendant's omissions in violation of the Nebraska UDTPA were likely to mislead an ordinary consumer. Plaintiffs and the Nebraska Subclass reasonably understood Defendant's omissions to mean that the toxic baby food did not contain toxic heavy metals. Plaintiff and the Nebraska Subclass also reasonably understood Defendant's omissions to mean that the toxic baby food was not of substandard quality. If Defendant had disclosed that its toxic baby food contained toxic heavy metals and was of substandard quality, Plaintiffs and the Nebraska Subclass would have been aware that the toxic baby food contained excessive amounts of toxins and was of substandard quality, and Plaintiffs and the Nebraska Subclass would not have purchased Defendant's toxic baby food.

704.    Defendant's omissions alleged herein were material in that a reasonable person would attach importance to the information and would be induced to act upon the information in making purchase decisions.

705.    Plaintiffs and Class members were deceived by Defendant's deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendant's products or would have paid less for those products.

706.    Instead, as a result of Defendant's misrepresentation, Plaintiffs and Class members suffered monetary losses in that (1) the actual value of the merchandise they received was less than the value of the merchandise as represented denying them of the benefit of their bargain; and (2) Plaintiffs and Class members paid more than the fair market value of the merchandise they received causing them out-of-pocket damages.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

    a.  Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

    b.  Designating Plaintiffs as Class representative and counsel as Class counsel;

    c.  Entering judgment in favor of Plaintiffs and the Class and against Defendant;

    d.  Awarding Plaintiffs and Class members damages, attorneys' fees, and costs; and

    e.  Granting such further relief as the Court deems just.

## COUNT 38
**Violation of the Nevada Deceptive Trade Practices Act (Nev. Rev. Stat. §§ 598.0903, *et seq.*), on Behalf of Plaintiffs Grisel Barreto, Kelsey Blankenship, Yuhwa Jang, and the Nevada Subclass**

707.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

708.    Plaintiffs Grisel Barreto, Kelsey Blankenship, and Yuhwa Jang bring this Count individually and on behalf of the Nevada Subclass.

709.    Nevada's Private Right of Action for Consumer Frauds Act prohibits any "false representation in a transaction" in the course of a business or operation.

710.    Defendant willfully and purposefully engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts they intended others to rely upon in the course of the Defendant's business in violation of Nev. Rev. Stat. § 598.0915 as described in the allegations above.

711.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is an act or practice in the conduct of trade or commerce.

712.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above impacts the public interest.

713.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it is inequitably enriching Defendant at the expense of the Nevada Subclass.

714.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it offends public policy, and is so oppressive that the Nevada Subclass has little alternative but to submit and causes consumers substantial injury.

715.   Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair in that it violates the well-established public policies of protecting children from avoidable dangers and that the manufacturer of food is responsible for ensuring that it is fit for human consumption.

716.   The Nevada Subclass has suffered economic injury as a direct and proximate result of Defendant's conduct.

717.   As a direct and proximate result of the foregoing acts and practices, Defendant has received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

a.   Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

b.   Designating Plaintiffs as Class representative and counsel as Class counsel;

c.   Entering judgment in favor of Plaintiffs and the Class and against Defendant;

d.   Awarding Plaintiffs and Class members damages; and

e.   Granting such further relief as the Court deems just.

**COUNT 39**
**Violation of the New Hampshire Regulation of Business Practices for Consumer Protection Act (N.H. Rev. Stat. Ann. §§ 358-A, *et seq.*), on Behalf of Plaintiffs Karleen Kozaczka, Debbie Reed, and the New Hampshire Subclass**

718.   Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

719.   Plaintiffs Karleen Kozaczka and Debbie Reed brings this Count individually and on behalf of the New Hampshire Subclass.

720.   New Hampshire's Regulation of Business Practices for Consumer Protection Act ("New Hampshire CPA") prohibits any "unfair method of competition or any unfair or deceptive act or practice in the conduct of any trade or commerce within this state." *See* N.H. Rev. Stat. Ann. § 358-A:2.

721.   Among other things, the New Hampshire CPA specifically defines the following acts and representations about the subject matter of the consumer transaction as deceptive acts: (1) causing likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods; (2) causing likelihood of confusion or misunderstanding as to affiliation, connection, or associations with, or certification by, another; (3) that such subject of a consumer transaction has sponsorship, approval, performance, characteristics, accessories, uses, or benefits it does not have which the supplier knows or should reasonably know it does not have; and (4) that such subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not. *See* N.H. Rev. Stat. Ann. § 358-A:2.

722.   At all relevant times, Plaintiffs, members of the New Hampshire Subclass, and Defendant were "persons" within the meaning of the New Hampshire CPA. *See* N.H. Rev. Stat. Ann. § 358-A:1, I.

723.   Defendant willfully and purposefully engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts in connection with trade or commerce in violation of N.H. Rev. Stat. Ann. § 358-A:2 as described in the allegations above.

724.   As a result, Defendant's conduct violates several provisions of the New Hampshire CPA, including but not limited to:

a.   Section 358-A:2, II: Causing likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods—here, Defendant's willful failure to disclose to consumers the excessive amounts of toxins in toxic baby food while at the same time asserting that the toxic baby food irrelevant safety standards causes the likelihood of confusion or misunderstanding about the sources and certifications of its ingredients in that it causes a likelihood that consumers will believe the toxic baby food does not contain excessive amounts of toxins as approved by the authorities who issue certain safety regulations. This provision does not require proof of actual confusion or misunderstanding;

b.   Section 358-A:2, III: Causing likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, another—here, Defendant's willful failure to disclose to consumers the excessive amounts of toxins in toxic baby food while at the same time asserting that the toxic baby food irrelevant safety standards causes the likelihood of confusion or misunderstanding about the sources and certifications of its ingredients in that it causes a likelihood that consumers will believe the toxic baby food does not contain excessive amounts of toxins as approved by the authorities who issue certain safety regulations. This provision does not require proof of actual confusion or misunderstanding;

c.   Section 358-A:2, V: Representing that the subject of a consumer transaction has sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that it do not have—here, Defendant's branding of its toxic baby food carried with it

the impression that the toxic baby food was a safe, legally compliant product which consumers could use without unduly exposing their babies to the risk of exposure to toxins; and

d.   Section 358-A:2, VII: Representing that the subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not and if the supplier knows or should reasonably know that it is not—as above, Defendant's toxic baby food carried with it the impression that it was a safe, legally compliant product which consumers could use without unduly exposing their babies to health risks from exposure to toxins.

725.   Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is an act or practice in the conduct of trade or commerce.

726.   Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above impacts the public interest.

727.   Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it is inequitably enriching Defendant at the expense of the New Hampshire Subclass.

728.   Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it offends public policy, and is so oppressive that the New Hampshire Subclass has little alternative but to submit and causes consumers substantial injury.

729.   Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair in that it violates the well-established public policies of protecting children from avoidable dangers and that the manufacturer of food is responsible for ensuring that it is fit for human consumption.

730.    The New Hampshire Subclass has suffered economic injury as a direct and proximate result of the Defendant's conduct.

731.    As a direct and proximate result of the foregoing acts and practices, Defendant has received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

a.    Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

b.    Designating Plaintiffs as Class representative and counsel as Class counsel;

c.    Entering judgment in favor of Plaintiffs and the Class and against Defendant;

d.    Awarding Plaintiffs and Class members their damages or $1,000, whichever is greater; three times the amount of their damages or $1,000, as the case may be; reasonable attorneys' fees; costs; and

e.    Granting such further relief as the Court deems just.

**COUNT 40**
**Violation of the New Jersey Consumer Fraud Act (N.J. Stat. Ann. §§ 56:8-1, *et seq.*), on Behalf of Plaintiffs Kimberly Conway, Brittany Distaso, Arundeep Kanwar Guraya, Brenda Schroeder, Charisse Zapata, and the New Jersey Subclass**

732.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

733.    Plaintiffs Kimberly Conway, Brittany Distaso, Arundeep Kanwar Guraya, Brenda Schroeder, and Charisse Zapata bring this Count individually and on behalf of the New Jersey Subclass.

734.    New Jersey's Consumer Fraud Act ("New Jersey CFA") prohibits any "act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise."

735.    At all relevant times, members of the New Jersey Subclass and Defendant were "persons" within the meaning of the New Jersey CFA. *See* N.J. Stat. Ann. § 56:8-1(d).

736.    Defendant willfully and purposefully engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts they intended others to rely upon in connection with the sale of merchandise (as defined by N.J. Stat. Ann. § 56:8-1(c)) in violation of N.J. Stat. Ann. § 56:8-2 as described in the allegations above.

737.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is an act or practice in the conduct of trade or commerce.

738.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above impacts the public interest.

739.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it is inequitably enriching Defendant at the expense of the New Jersey Subclass.

740.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it offends public policy, and is so oppressive that the New Jersey Subclass has little alternative but to submit and causes consumers substantial injury.

741.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair in that it violates the well-established public policies of protecting children

from avoidable dangers and that the manufacturer of food is responsible for ensuring that it is fit for human consumption.

742. The New Jersey Subclass has suffered economic injury as a direct and proximate result of Defendant's conduct.

743. As a direct and proximate result of the foregoing acts and practices, Defendant has received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

    a. Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

    b. Designating Plaintiffs as Class representative and counsel as Class counsel;

    c. Entering judgment in favor of Plaintiffs and the Class and against Defendant;

    d. Awarding Plaintiffs and Class members their damages; threefold their damages; reasonable attorneys' fees; filing fees; and costs; and

    e. Granting such further relief as the Court deems just.

**COUNT 41**
**Violation of the New Mexico Unfair Practices Act (N.M. Stat. Ann. §§ 57-12-1, *et seq.*), on Behalf of Plaintiffs Alana Doyeto, Ayame Tatiana Galassini, and the New Mexico Subclass**

744. Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

745. Plaintiffs Alana Doyeto and Ayame Tatiana Galassini bring this Count individually and on behalf of the New Mexico Subclass.

746.    New Mexico's Unfair Practices Act ("New Mexico UPA") prohibits any "[u]nfair or deceptive trade practices and unconscionable trade practices in the conduct of any trade or commerce."

747.    At all relevant times, members of the New Mexico Subclass and Defendant were "persons" within the meaning of the New Mexico UPA. *See* N.M. Stat. Ann. § 57-12-1(A).

748.    Defendant willfully and purposefully engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts in connection with trade or commerce in violation of N.M. Stat. Ann. § 57-12-3 as described in the allegations above.

749.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is an act or practice in the conduct of trade or commerce that Defendant intended to induce consumers to buy toxic baby food.

750.    Defendant's misrepresentations and omissions were likely to mislead an ordinary consumer. Plaintiffs and the New Mexico Subclass reasonably understood Defendant's omissions to mean that the toxic baby food did not contain toxins at levels that are dangerous to babies' health. Plaintiff and the New Mexico Subclass also reasonably understood Defendant's omissions to mean that the toxic baby food was not of substandard quality.

751.    If Defendant had disclosed that its toxic baby food contained toxins at levels that are dangerous to babies' health and was of substandard quality, Plaintiffs and the New Mexico Subclass would have been aware that the toxic baby food contained excessive amounts of toxins and was of substandard quality, and Plaintiffs and the New Mexico Subclass would not have purchased Defendant's toxic baby food.

752.    Plaintiffs and Class members were deceived by Defendant's deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendant's products or would have paid less for those products.

753.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above impacts the public interest.

754.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it is inequitably enriching Defendant at the expense of the New Mexico Subclass.

755.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it offends public policy, and is so oppressive that the New Mexico Subclass has little alternative but to submit and causes consumers substantial injury.

756.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair in that it violates the well-established public policies of protecting children from avoidable dangers and that the manufacturer of food is responsible for ensuring that it is fit for human consumption.

757.    The New Mexico Subclass has suffered economic injury as a direct and proximate result of Defendant's conduct.

758.    As a direct and proximate result of the foregoing acts and practices, Defendant has received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

a.   Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

b.   Designating Plaintiffs as Class representative and counsel as Class counsel;

c.   Entering judgment in favor of Plaintiffs and the Class and against Defendant;

d.   Awarding Plaintiffs and Class members treble damages or $300, whichever is greater; attorneys' fees, and costs; and

e.   Granting such further relief as the Court deems just.

**COUNT 42**
**Violation of the New York Deceptive Acts and Practices (N.Y. Gen. Bus. Law §§ 349, *et seq.*), on Behalf of Plaintiffs Melissa Bloomquist-Smith, Sudipta Dutta, Shelby Geraci, Lori Ann Louis, Robert Partello, Tina Marie Perez, and the New York Subclass**

759.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

760.    Plaintiffs Melissa Bloomquist-Smith, Sudipta Dutta, Shelby Geraci, Lori Ann Louis, Robert Partello, and Tina Marie Perez bring this Count individually and on behalf of the New York Subclass.

761.    New York's Deceptive Acts and Practices prohibits any "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service."

762.    Defendant willfully and purposefully engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts in connection with trade or commerce in violation of N.Y. Gen. Bus. Law § 349 as described in the allegations above.

763.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is an act or practice in the conduct of trade or commerce that Defendant intended to induce consumers to buy toxic baby food.

764.    Defendant's misrepresentations and omissions were likely to mislead an ordinary consumer. Plaintiffs and the New York Subclass reasonably understood Defendant's omissions to mean that the toxic baby food did not contain toxins at levels that are dangerous to babies' health. Plaintiff and the New York Subclass also reasonably understood Defendant's omissions to mean that the toxic baby food was not of substandard quality.

765.    If Defendant had disclosed that its toxic baby food contained toxins at levels that are dangerous to babies' health and was of substandard quality, Plaintiffs and the New York Subclass would have been aware that the toxic baby food contained excessive amounts of toxins and was of substandard quality, and Plaintiffs and the New York Subclass would not have purchased Defendant's toxic baby food.

766.    Plaintiffs and Class members were deceived by Defendant's deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendant's products or would have paid less for those products.

767.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above impacts the public interest.

768.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it is inequitably enriching Defendant at the expense of the New York Subclass.

769.   Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it offends public policy, and is so oppressive that the New York Subclass has little alternative but to submit and causes consumers substantial injury.

770.   Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair in that it violates the well-established public policies of protecting children from avoidable dangers and that the manufacturer of food is responsible for ensuring that it is fit for human consumption.

771.   The New York Subclass has suffered economic injury as a direct and proximate result of Defendant's conduct.

772.   As a direct and proximate result of the foregoing acts and practices, Defendant has received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

a.   Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

b.   Designating Plaintiffs as Class representative and counsel as Class counsel;

c.   Entering judgment in favor of Plaintiffs and the Class and against Defendant;

d.   Awarding Plaintiffs and Class members three times their actual damages or $1,000, whichever is greater; reasonable attorneys' fees; and costs; and

e.   Granting such further relief as the Court deems just.

**COUNT 43**

**Violation of the North Carolina Unfair Trade Practices Act (N.C. Gen. Stat. §§ 75-1.1, *et seq.*), on Behalf of Plaintiffs Krystal Leigh Anderson, Theresa Fintonis, Debbie Hawkins, Marquetta Matthews, Amanda Schram, Cheryl Smith, Beverly Watkins, and the North Carolina Subclass**

773.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

774.    Plaintiffs Krystal Leigh Anderson, Theresa Fintonis, Debbie Hawkins, Marquetta Matthews, Amanda Schram, Cheryl Smith, and Beverly Watkins bring this Count individually and on behalf of the North Carolina Subclass.

775.    North Carolina Unfair Trade Practices Act prohibits any "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce."

776.    Defendant willfully and purposefully engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts they intended others to reasonably rely upon in connection with trade or commerce in violation of N.C. Gen. Stat. § 75-1.1(a) as described in the allegations above.

777.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is an act or practice in the conduct of trade or commerce that Defendant intended to induce consumers to buy toxic baby food.

778.    Defendant's misrepresentations and omissions were likely to mislead an ordinary consumer. Plaintiffs and the North Carolina Subclass reasonably understood Defendant's omissions to mean that the toxic baby food did not contain toxins at levels that are dangerous to babies' health. Plaintiff and the North Carolina Subclass also reasonably understood Defendant's omissions to mean that the toxic baby food was not of substandard quality.

779.    If Defendant had disclosed that its toxic baby food contained toxins at levels that are dangerous to babies' health and was of substandard quality, Plaintiffs and the North Carolina Subclass would have been aware that the toxic baby food contained excessive amounts of toxins and was of substandard quality, and Plaintiffs and the North Carolina Subclass would not have purchased Defendant's toxic baby food.

780.    Plaintiffs and Class members were deceived by Defendant's deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendant's products or would have paid less for those products.

781.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above impacts the public interest.

782.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it is inequitably enriching Defendant at the expense of the North Carolina Subclass.

783.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it offends public policy, and is so oppressive that the North Carolina Subclass has little alternative but to submit and causes consumers substantial injury.

784.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair in that it violates the well-established public policies of protecting children from avoidable dangers and that the manufacturer of food is responsible for ensuring that it is fit for human consumption.

785.    The North Carolina Subclass has suffered economic injury as a direct and proximate result of Defendant's conduct.

786.     As a direct and proximate result of the foregoing acts and practices Defendant has received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

    a.  Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

    b.  Designating Plaintiffs as Class representative and counsel as Class counsel;

    c.  Entering judgment in favor of Plaintiffs and the Class and against Defendant;

    d.  Awarding Plaintiffs and Class members treble damages, attorneys' fees, and costs; and

    e.  Granting such further relief as the Court deems just.

**COUNT 44**
**Violation of the North Dakota Unlawful Sales or Advertising Practices Act (N.D. Cent. Code §§ 51-15-01, *et seq.*), on Behalf of Plaintiffs Rachael Kruup, Ashley Swenningson, Rachael TreeTop, and the North Dakota Subclass**

787.     Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

788.     Plaintiffs Rachael Kruup, Ashley Swenningson, and Rachael TreeTop bring this Count individually and on behalf of the North Dakota Subclass.

789.     North Dakota's Unlawful Sales or Advertising Practices Act ("North Dakota USAPA") prohibits any "act, use, or employment by any person of any deceptive act or practice, fraud, false pretense, false promise, or misrepresentation, with the intent that others rely thereon

in connection with the sale or advertisement of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby."

790.    At all relevant times, members of the North Dakota Subclass and Defendant were "persons" within the meaning of the North Dakota USAPA. *See* N.D. Cent. Code § 51-15-01(4).

791.    Defendant willfully and purposefully engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts they intended others to rely upon in connection with the sale or advertisement of "merchandise" (as defined by N.D. Cent. Code § 51-15-01(3)) in violation of N.D. Cent. Code § 51-15-02 as described in the allegations above.

792.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is an act or practice in the conduct of trade or commerce that Defendant intended to induce consumers to buy toxic baby food.

793.    Defendant's misrepresentations and omissions were likely to mislead an ordinary consumer. Plaintiffs and the North Dakota Subclass reasonably understood Defendant's omissions to mean that the toxic baby food did not contain toxins at levels that are dangerous to babies' health. Plaintiff and the North Dakota Subclass also reasonably understood Defendant's omissions to mean that the toxic baby food was not of substandard quality.

794.    If Defendant had disclosed that its toxic baby food contained toxins at levels that are dangerous to babies' health and was of substandard quality, Plaintiffs and the North Dakota Subclass would have been aware that the toxic baby food contained excessive amounts of toxins and was of substandard quality, and Plaintiffs and the North Dakota Subclass would not have purchased Defendant's toxic baby food.

795.    Plaintiffs and Class members were deceived by Defendant's deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendant's products or would have paid less for those products.

796.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above impacts the public interest.

797.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it is inequitably enriching Defendant at the expense of the North Dakota Subclass.

798.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it offends public policy, and is so oppressive that the North Dakota Subclass has little alternative but to submit and causes consumers substantial injury.

799.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair in that it violates the well-established public policies of protecting children from avoidable dangers and that the manufacturer of food is responsible for ensuring that it is fit for human consumption.

800.    The North Dakota Subclass has suffered economic injury as a direct and proximate result of the Defendant's conduct.

801.    As a direct and proximate result of the foregoing acts and practices, Defendant has received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

a.  Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

b.  Designating Plaintiffs as Class representative and counsel as Class counsel;

c.  Entering judgment in favor of Plaintiffs and the Class and against Defendant;

d.  Awarding Plaintiffs and Class members three times the actual damages, costs, disbursements, and actual reasonable attorneys' fees; and

e.  Granting such further relief as the Court deems just.

### COUNT 45
### Violation of the Ohio Consumer Sales Protection Act (Ohio Rev. Code Ann. §§ 1345, *et seq.*), on Behalf of Plaintiffs Lillian Hinkle, Shaylan Isaacs, Olivia Johnson, Rebecca Keeton, Kali McGlinch, and the Ohio Subclass

802.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

803.    Plaintiffs Lillian Hinkle, Shaylan Isaacs, Olivia Johnson, Rebecca Keeton, and Kali McGlinch bring this Count individually and on behalf of the Ohio Subclass.

804.    Ohio's Consumer Sales Protection Act ("Ohio CSPA") prohibits any "unfair or deceptive act or practice in connection with a consumer transaction."

805.    At all relevant times, members of the Ohio Subclass and Defendant were "persons" within the meaning of the Ohio CSPA. *See* Ohio Rev. Code Ann. § 1345.01(B).

806.    Specifically, the Ohio CSPA forbids: (1) representing that the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits that it does not have; (2) representing hat the subject of a consumer transaction is of a particular standard, quality, grade, style, prescription, or model, if it is not; and (3) knowingly providing a disclosure that includes a material misrepresentation. *See* Ohio Rev. Code Ann. § 1345.02.

807.    Further, the Ohio CSPA unconscionable acts or practices in connection with a consumer transaction, including but not limited to: (1) knowingly taking advantage of the inability of the consumer reasonably to protect the consumer's interest because of the consumer's ignorance, and (2) knowingly making a misleading statement of opinion on which the consumer was likely to rely to the consumer's detriment.

808.    Defendant willfully and purposefully engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts in connection with a consumer transaction (as defined by Ohio Rev. Code Ann. § 1345.01(A)) in violation of Ohio Rev. Code Ann. § 1345.02(A) as described in the allegations above.

809.    As a result, Defendant's conduct violates several provisions of the Ohio CSPA, including but not limited to:

a.   Section 1345.02(B)(1): Representing that the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits that it does not have —here, Defendant's branding of its toxic baby food carried with it the impression that the toxic baby food was a safe, legally compliant product which consumers could use without unduly exposing their babies to the risk of exposure to toxins;

b.   Section 1345.02(B)(7): Representing hat the subject of a consumer transaction is of a particular standard, quality, grade, style, prescription, or model, if it is not—as above, Defendant's toxic baby food carried with it the impression that it was a safe, legally compliant product which consumers could use without unduly exposing their babies to health risks from exposure to toxins;

    c.  Section 1345.02(F)(2): Knowingly providing a disclosure that includes a material misrepresentation—as one example, Defendant willfully failed to disclose to consumers the excessive amounts of toxins in toxic baby food and instead disclosing that the toxic baby food met government safety standards, which standards were irrelevant to the toxins that are the subject of this action;

    d.  Section 1345.03(B)(1): Knowingly taking advantage of the inability of the consumer reasonably to protect the consumer's interests because of the consumer's ignorance—the Defendant had knowledge about the amounts of toxins in its toxic baby food, which information:

      i.  Defendant measures and analyzes in the regular operation of its business;

      ii.  Is directly related to consumers' interest; and

      iii.  Is not within the ability of the consumer to reasonably measure and analyze.

    e.  Section 1345.03(B)(6): Knowingly making a misleading statement of opinion on which the consumer was likely to rely to the consumer's detriment—Defendant's branding of its toxic baby food, including but not limited to opinions and other descriptive language, carried with it the impression that the toxic baby food was a safe, legally compliant product which consumers could use without unduly exposing their babies to the risk of exposure to toxins, which branding the Defendant knew consumers would rely upon when purchasing baby food.

810.   Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is an act or practice in the conduct of trade or commerce that Defendant intended to induce consumers to buy toxic baby food.

811.    Defendant's misrepresentations and omissions were likely to mislead an ordinary consumer. Plaintiffs and the Ohio Subclass reasonably understood Defendant's omissions to mean that the toxic baby food did not contain toxins at levels that are dangerous to babies' health. Plaintiff and the Ohio Subclass also reasonably understood Defendant's omissions to mean that the toxic baby food was not of substandard quality.

812.    If Defendant had disclosed that its toxic baby food contained toxins at levels that are dangerous to babies' health and was of substandard quality, Plaintiffs and the Ohio Subclass would have been aware that the toxic baby food contained excessive amounts of toxins and was of substandard quality, and Plaintiffs and the Ohio Subclass would not have purchased Defendant's toxic baby food.

813.    Plaintiffs and Class members were deceived by Defendant's deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendant's products or would have paid less for those products.

814.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above impacts the public interest.

815.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it is inequitably enriching Defendant at the expense of the Ohio Subclass.

816.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it offends public policy, and is so oppressive that the Ohio Subclass has little alternative but to submit and causes consumers substantial injury.

817.    The Ohio Subclass has suffered economic injury as a direct and proximate result of Defendant's conduct.

818.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair in that it violates the well-established public policies of protecting children from avoidable dangers and that the manufacturer of food is responsible for ensuring that it is fit for human consumption.

819.    As a direct and proximate result of the foregoing acts and practices, Defendant has received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

a.    Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

b.    Designating Plaintiffs as Class representative and counsel as Class counsel;

c.    Entering judgment in favor of Plaintiffs and the Class and against Defendant;

d.    Awarding Plaintiffs and Class members three times the amount of their actual damages or $200, whichever is greater, plus $5,000 in noneconomic or recover damages; reasonable attorneys' fees; and costs; and

e.    Granting such further relief as the Court deems just.

**COUNT 46**
**Violation of the Oklahoma Consumer Protection Act (Okla. Stat. tit. 15, §§ 751, *et seq.*), on Behalf of Plaintiffs Lindsay Barr, Serenitey Carlin, Adrianne Cooper, Alana Doyeto, Amanda Hobbs-Rogers, Monique Warren, and the Oklahoma Subclass**

820.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

821.     Plaintiffs Lindsay Barr, Serenitey Carlin, Adrianne Cooper, Alana Doyeto, Amanda Hobbs-Rogers, and Monique Warren bring this Count individually and on behalf of the Oklahoma Subclass.

822.     At all relevant times, members of the Oklahoma Subclass and Defendant were "persons" within the meaning of the Oklahoma Consumer Protection Act ("Oklahoma CPA"). *See* Okla. Stat. tit. 15, § 752(1).

823.     Oklahoma's CPA" prohibits "any practice which offends established public policy or if the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers" and any "misrepresentation, omission or other practice that has deceived or could reasonably be expected to deceive or mislead a person to the detriment of that person." *See* Okla. Stat. tit. 15, § 752(14).

824.     Specifically, the Oklahoma CPA forbids: (1) making a false or misleading representation, knowingly or with reason to know, as to the source, sponsorship, approval, or certification of the subject of a consumer transaction; (2) making a false representation, knowingly or with reason to know, as to the characteristics, ingredients, uses, benefits, alterations, or quantities of the subject of a consumer transaction or a false representation as to the sponsorship, approval, status, affiliation or connection of a person therewith; (3) representing, knowingly or with reason to know, that the subject of a consumer transaction is of a particular standard, style or model, if it is of another; and (4) committing an unfair or deceptive trade practice as defined in Okla. Stat. tit. 15, § 752.

825.     Defendant willfully and purposefully engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material

reasonably expected to deceive or mislead consumers in violation of Okla. Stat. tit. 15, § 753(20) as described in the allegations above.

826.   As a result, Defendant's conduct violates several provisions of the Oklahoma CPA, including but not limited to:

a.   Section 15-753(2): Making a false or misleading representation, knowingly or with reason to know, as to the source, sponsorship, approval, or certification of the subject of a consumer transaction—here, Defendant's branding of its toxic baby food carried with it the impression that the toxic baby food was a safe, legally compliant product which consumers could use without unduly exposing their babies to the risk of exposure to toxins;

b.   Section 15-753(5): Making a false representation, knowingly or with reason to know, as to the characteristics, ingredients, uses, benefits, alterations, or quantities of the subject of a consumer transaction or a false representation as to the sponsorship, approval, status, affiliation or connection of a person therewith—as above, Defendant's branding of its toxic baby food carried with it the impression that the toxic baby food was a safe, legally compliant product which consumers could use without unduly exposing their babies to the risk of exposure to toxins;

c.   Section 15-753(7): Representing, knowingly or with reason to know, that the subject of a consumer transaction is of a particular standard, style or model, if it is of another— as one example, Defendant willfully failed to disclose to consumers the excessive amounts of toxins in toxic baby food and instead disclosing that the toxic baby food met government safety standards, which standards were irrelevant to the toxins that are the subject of this action; and

d.  Section 15-753(20): Committing an unfair or deceptive trade practice as defined in Okla. Stat. tit. 15, § 752—Defendant's induced consumers to buy toxic baby food by, among other acts, making calculated references to irrelevant government safety standards to deceive consumers that they should trust Defendant and not have concerns about the amounts of heavy metals and other toxins in the baby food, which trade practices are deceptive, unfair, immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

827.  Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is an act or practice in the conduct of trade or commerce that Defendant intended to induce consumers to buy toxic baby food.

828.  Defendant's misrepresentations and omissions were likely to mislead an ordinary consumer. Plaintiffs and the Oklahoma Subclass reasonably understood Defendant's omissions to mean that the toxic baby food did not contain toxins at levels that are dangerous to babies' health. Plaintiff and the Oklahoma Subclass also reasonably understood Defendant's omissions to mean that the toxic baby food was not of substandard quality.

829.  If Defendant had disclosed that its toxic baby food contained toxins at levels that are dangerous to babies' health and was of substandard quality, Plaintiffs and the Oklahoma Subclass would have been aware that the toxic baby food contained excessive amounts of toxins and was of substandard quality, and Plaintiffs and the Oklahoma Subclass would not have purchased Defendant's toxic baby food.

830.  Plaintiffs and Class members were deceived by Defendant's deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendant's products or would have paid less for those products.

831.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above impacts the public interest.

832.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it is inequitably enriching Defendant at the expense of the Oklahoma Subclass.

833.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it offends public policy, and is so oppressive that the Oklahoma Subclass has little alternative but to submit and causes consumers substantial injury.

834.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair in that it violates the well-established public policies of protecting children from avoidable dangers and that the manufacturer of food is responsible for ensuring that it is fit for human consumption.

835.    The Oklahoma Subclass has suffered economic injury as a direct and proximate result of Defendant's conduct.

836.    As a direct and proximate result of the foregoing acts and practices, Defendant has received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

a.    Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

b.    Designating Plaintiffs as Class representative and counsel as Class counsel;

    c.   Entering judgment in favor of Plaintiffs and the Class and against Defendant;

    d.   Awarding Plaintiffs and Class members damages and $10,000 each for their reasonable attorneys' fees and costs; and

    e.   Granting such further relief as the Court deems just.

### COUNT 47
**Violation of the Oregon Unlawful Trade Practices Act (Ore. Rev. Stat. §§ 646.605, *et seq.*), on Behalf of Plaintiffs Miriah Barbero, Angela Cox, Stephanie Norgaard, Karina Pena, Dillon Townzen, and the Oregon Subclass**

837.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

838.    Plaintiffs Miriah Barbero, Angela Cox, Stephanie Norgaard, Karina Pena, and Dillon Townzen bring this Count individually and on behalf of the Oregon Subclass.

839.    At all relevant times, Plaintiffs, the Oregon Subclass, and Defendant were "persons" within the meaning of Ore. Rev. Stat. § 646.605(4).

840.    The Oregon Unlawful Trade Practices Act ("Oregon UTPA") prohibits unconscionable tactics in connection with selling goods and further prohibits misleading representations in connection with selling goods, *See* Ore. Rev. Stat. §§ 646.607(1) and 646.608. Such a misleading representation "may be a manifestation of any assertion by words or conduct, including, but not limited to, a failure to disclose a fact." *See* Ore. Rev. Stat. § 646.607(2).

841.    Defendant unlawfully engaged in unconscionable tactics and made misleading representations in connection with the sale of toxic baby food as described in the allegations above.

842.    As a result, Defendant's conduct violates several provisions of the Oregon UTPA, including but not limited to:

    a.   Section 646.607(1): Employing any unconscionable tactic in connection with selling goods—here, Defendant's branding of its toxic baby food carried with it the

impression that the toxic baby food was a safe, legally compliant product which consumers could use without unduly exposing their babies to the risk of exposure to toxins;

b. Section 646.608(1)(c): Causing likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods—here, Defendant's willful failure to disclose to consumers the excessive amounts of toxins in toxic baby food causes the likelihood of confusion or misunderstanding about the sources and certifications of its ingredients in that it causes a likelihood that consumers will believe the toxic baby food does not contain excessive amounts of toxins and is regarded as safe for babies to eat. This provision does not require proof of actual confusion or misunderstanding. Ore. Rev. Stat. § 646.608(3); and

c. Section 646.608(1)(g): Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another—as above, Defendant's toxic baby food carried with it the impression that it was a safe, legally compliant product which consumers could use without unduly exposing their babies to health risks from exposure to toxins.

843.    Defendant's omissions in violation of the Oregon UTPA were likely to mislead an ordinary consumer. Plaintiffs and the Oregon Subclass reasonably understood Defendant's omissions to mean that the toxic baby food did not contain toxins at levels that are dangerous to babies' health. Plaintiff and the Oregon Subclass also reasonably understood Defendant's omissions to mean that the toxic baby food was not of substandard quality.

844.    If Defendant had disclosed that its toxic baby food contained toxins at levels that are dangerous to babies' health and was of substandard quality, Plaintiffs and the Oregon Subclass

would have been aware that the toxic baby food contained excessive amounts of toxins and was of substandard quality, and Plaintiffs and the Oregon Subclass would not have purchased Defendant's toxic baby food.

845.    Defendant's omissions alleged herein were material in that a reasonable person would attach importance to the information and would be induced to act upon the information in making purchase decisions.

846.    Plaintiffs and the Oregon Subclass relied to their detriment on Defendant's omissions in purchasing toxic baby food.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

a.  Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

b.  Designating Plaintiffs as Class representative and counsel as Class counsel;

c.  Entering judgment in favor of Plaintiffs and the Class and against Defendant;

d.  Awarding Plaintiffs and Class members their actual damages or $200, whichever is greater; punitive damages; attorneys' fees; and costs; and

e.  Granting such further relief as the Court deems just.

**COUNT 48**
**Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law (73 Pa. Cons. Stat. §§ 201-1, *et seq.*), on Behalf of Plaintiffs Jennifer Bainbridge, Alyssa Barb, Julie Blakeley, Charita Harrell Sara Kilburn Rachel Knudson, Rachael Kruup, Melinda Pass, Tina Marie Perez, Lea Santos, and the Pennsylvania Subclass**

847.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

848.     Plaintiffs Jennifer Bainbridge, Alyssa Barb, Julie Blakeley, Charita Harrell Sara Kilburn Rachel Knudson, Rachael Kruup, Melinda Pass, Tina Marie Perez, and Lea Santos bring this Count individually and on behalf of the Pennsylvania Subclass.

849.     At all relevant times, members of the Pennsylvania Subclass and Defendant were "persons" within the meaning of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("Pennsylvania UTPCPL"). *See* 73 Pa. Cons. Stat. § 201-2(2).

850.     Pennsylvania's UTPCPL  prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

851.     Among other things, the Pennsylvania UTPCPL specifically defines the following acts and representations about the subject matter of the consumer transaction as deceptive acts: (1) causing likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods; (2) causing likelihood of confusion or misunderstanding as to affiliation, connection, or associations with, or certification by, another; (3) representing that such subject of a consumer transaction has sponsorship, approval, performance, characteristics, accessories, uses, or benefits it does not have which the supplier knows or should reasonably know it does not have; (4) representing that such subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not and if the supplier knows or should reasonably know that it is not; and (5) engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

852.     Defendant willfully and purposefully engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts they intended others to rely upon in connection with trade or commerce in violation of 73 Pa. Cons. Stat. § 201-3 as described in the allegations above.

853. As a result, Defendant's conduct violates several provisions of the Pennsylvania UTPCPL, including but not limited to:

    a. Section 201-2(4)(i): Causing likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods—here, Defendant's willful failure to disclose to consumers the excessive amounts of toxins in toxic baby food while at the same time asserting that the toxic baby food irrelevant safety standards causes the likelihood of confusion or misunderstanding about the sources and certifications of its ingredients in that it causes a likelihood that consumers will believe the toxic baby food does not contain excessive amounts of toxins as approved by the authorities who issue certain safety regulations. This provision does not require proof of actual confusion or misunderstanding;

    b. Section 201-2(4)(iii): Causing likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, another—here, Defendant's willful failure to disclose to consumers the excessive amounts of toxins in toxic baby food while at the same time asserting that the toxic baby food irrelevant safety standards causes the likelihood of confusion or misunderstanding about the sources and certifications of its ingredients in that it causes a likelihood that consumers will believe the toxic baby food does not contain excessive amounts of toxins as approved by the authorities who issue certain safety regulations. This provision does not require proof of actual confusion or misunderstanding;

    c. Section 201-2(4)(v): Representing that the subject of a consumer transaction has sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that it do not have—here, Defendant's branding of its toxic baby food carried with it

the impression that the toxic baby food was a safe, legally compliant product which consumers could use without unduly exposing their babies to the risk of exposure to toxins;

d.  Section 201-2(4)(vii): Representing that the subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not and if the supplier knows or should reasonably know that it is not—as above, Defendant's toxic baby food carried with it the impression that it was a safe, legally compliant product which consumers could use without unduly exposing their babies to health risks from exposure to toxins; and

e.  Section 201-2(4)(xxi): Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding-- Defendant's willful failure to disclose to consumers the excessive amounts of toxins in toxic baby food while at the same time asserting that the toxic baby food irrelevant safety standards causes the likelihood of confusion or misunderstanding about the sources and certifications of its ingredients in that it causes a likelihood that consumers will believe the toxic baby food does not contain excessive amounts of toxins as approved by the authorities who issue certain safety regulations.

854.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is an act or practice in the conduct of trade or commerce that Defendant intended to induce consumers to buy toxic baby food.

855.    Defendant's misrepresentations and omissions were likely to mislead an ordinary consumer. Plaintiffs and the Pennsylvania Subclass reasonably understood Defendant's omissions to mean that the toxic baby food did not contain toxins at levels that are dangerous to babies'

health. Plaintiff and the Pennsylvania Subclass also reasonably understood Defendant's omissions to mean that the toxic baby food was not of substandard quality.

856.    If Defendant had disclosed that its toxic baby food contained toxins at levels that are dangerous to babies' health and was of substandard quality, Plaintiffs and the Pennsylvania Subclass would have been aware that the toxic baby food contained excessive amounts of toxins and was of substandard quality, and Plaintiffs and the Pennsylvania Subclass would not have purchased Defendant's toxic baby food.

857.    Plaintiffs and Class members were deceived by Defendant's deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendant's products or would have paid less for those products.

858.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above impacts the public interest.

859.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it is inequitably enriching Defendant at the expense of the Pennsylvania Subclass.

860.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it offends public policy, and is so oppressive that the Pennsylvania Subclass has little alternative but to submit and causes consumers substantial injury.

861.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair in that it violates the well-established public policies of protecting children from avoidable dangers and that the manufacturer of food is responsible for ensuring that it is fit for human consumption.

862.     The Pennsylvania Subclass has suffered economic injury as a direct and proximate result of Defendant's conduct.

863.     As a direct and proximate result of the foregoing acts and practices, Defendant has received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

   a.   Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

   b.   Designating Plaintiffs as Class representative and counsel as Class counsel;

   c.   Entering judgment in favor of Plaintiffs and the Class and against Defendant;

   d.   Awarding Plaintiffs and Class members three times their actual damages but not less than $100; reasonable attorneys' fees; and costs; and

   e.   Granting such further relief as the Court deems just.

**COUNT 49**
**Violation of the Rhode Island Deceptive Trade Practices Act (R.I. Gen. Laws §§ 6-13.1, *et seq.*), on Behalf of Plaintiffs Karleen Kozaczka, Lori Ann Louis, and the Rhode Island Subclass**

864.     Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

865.     Plaintiffs Karleen Kozaczka and Lori Ann Louis bring this Count individually and on behalf of the Rhode Island Subclass.

866.     At all relevant times, Plaintiff, the Rhode Island Subclass, and Defendant were "persons" within the meaning of R.I. Gen. Laws § 6-13.1-1(3).

867.    The Rhode Island Deceptive Trade Practices Act prohibits unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. R.I. Gen. Laws § 6-13.1-2.

868.    Defendant willfully engaged in unfair, deceptive, and/or unlawful practices as described in the allegations above.

869.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is an act or practice in the conduct of trade or commerce that Defendant intended to induce consumers to buy toxic baby food.

870.    Defendant's misrepresentations and omissions were likely to mislead an ordinary consumer. Plaintiffs and the Rhode Island Subclass reasonably understood Defendant's omissions to mean that the toxic baby food did not contain toxins at levels that are dangerous to babies' health. Plaintiff and the Rhode Island Subclass also reasonably understood Defendant's omissions to mean that the toxic baby food was not of substandard quality.

871.    If Defendant had disclosed that its toxic baby food contained toxins at levels that are dangerous to babies' health and was of substandard quality, Plaintiffs and the Rhode Island Subclass would have been aware that the toxic baby food contained excessive amounts of toxins and was of substandard quality, and Plaintiffs and the Rhode Island Subclass would not have purchased Defendant's toxic baby food.

872.    Plaintiffs and Class members were deceived by Defendant's deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendant's products or would have paid less for those products.

873.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above impacts the public interest.

874.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it is inequitably enriching Defendant at the expense of the Rhode Island Subclass.

875.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it offends public policy, and is so oppressive that the Rhode Island Subclass has little alternative but to submit and causes consumers substantial injury.

876.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair in that it violates the well-established public policies of protecting children from avoidable dangers and that the manufacturer of food is responsible for ensuring that it is fit for human consumption.

877.    The Rhode Island Subclass has suffered economic injury as a direct and proximate result of Defendant's conduct.

878.    As a direct and proximate result of the foregoing acts and practices, Defendant has received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

879.    Plaintiff and the Rhode Island Subclass suffered loss of money as a direct and proximate result of Defendant's unfair, deceptive practices.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

a.    Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

b.    Designating Plaintiffs as Class representative and counsel as Class counsel;

    c.   Entering judgment in favor of Plaintiffs and the Class and against Defendant;

    d.   Awarding Plaintiffs and Class members their damages or $200, whichever is greater; punitive damages; reasonable attorneys' fees; and costs; and

    e.   Granting such further relief as the Court deems just.

## COUNT 50
**Violation of the South Carolina Unfair Trade Practices Act (S.C. Code Ann. §§ 39-5-10, *et seq.*), on Behalf of Plaintiffs Elizabeth Austin, Amanda Bratton, Gabrielle Harrison, Tabitha Mullinax, Amanda Schram, and the South Carolina Subclass**

880.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

881.    Plaintiffs Elizabeth Austin, Amanda Bratton, Gabrielle Harrison, Tabitha Mullinax, and Amanda Schram bring this Count individually and on behalf of the South Carolina Subclass.

882.    At all relevant times, Plaintiffs, the South Carolina Subclass, and Defendant were "persons" within the meaning of S.C. Code Ann. § 39-5-10(a).

883.    The South Carolina Unfair Trade Practices Act prohibits unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. *See* S.C. Code Ann. § 39-5-20.

884.    Defendant willfully engaged in unfair, deceptive, and/or unlawful practices as described in the allegations above.

885.    Defendant's misrepresentations, omissions, and suppression of material information in the sale of its toxic baby food are acts or practices in the conduct or trade or commerce.

886.    Plaintiffs and the South Carolina Subclass suffered loss of money as a direct and proximate result of Defendant's unfair, deceptive practices.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

    a.   Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

    b.   Designating Plaintiffs as Class representative and counsel as Class counsel;

    c.   Entering judgment in favor of Plaintiffs and the Class and against Defendant;

    d.   Awarding Plaintiffs and Class members three times their damages; reasonable attorneys' fees; and costs and

    e.   Granting such further relief as the Court deems just.

**COUNT 51**
**Violation of the South Dakota Deceptive Trade Practices and Consumer Protection Act (S.D. Codified Laws §§ 37-24-1, *et seq.*), on Behalf of Plaintiffs Rachael Kruup, Andrew Lohse, Christine Steele, and the South Dakota Subclass**

887.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

888.    Plaintiffs Rachael Kruup, Andrew Lohse, and Christine Steele bring this Count individually and on behalf of the South Dakota Subclass.

889.    It is a deceptive act or practice under South Dakota's Deceptive Trade Practices and Consumer Protection Act for any person to "knowingly act, use, or employ any deceptive act or practice, fraud, false pretense, false promises, or misrepresentation or to conceal, suppress, or omit any material fact in connection with the sale or advertisement of any merchandise, regardless of whether any person has in fact been misled, deceived, or damaged thereby." *See* S.D. Codified Laws § 37-24-6(1).

890.     At all relevant times, members of the South Dakota Subclass and Defendant were "persons" within the meaning of the Deceptive Trade Practices and Consumer Protection Act. *See* S.D. Codified Laws § 37-24-1(8).

891.     Defendant willfully and knowingly engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts they intended others to rely upon in connection with the sale or advertisement of merchandise (as defined by S.D. Codified Laws § 37-24-1(7)) in violation of S.D. Codified Laws § 37-24-6(1) as described in the allegations above.

892.     Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is an act or practice in the conduct of trade or commerce.

893.     Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above impacts the public interest.

894.     Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it is inequitably enriching the Defendant at the expense of the South Dakota Subclass.

895.     Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it offends public policy, and is so oppressive that the South Dakota Subclass has little alternative but to submit and causes consumers substantial injury.

896.     Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair in that it violates the well-established public policies of protecting children from avoidable dangers and that the manufacturer of food is responsible for ensuring that it is fit for human consumption.

897.   The South Dakota Subclass has suffered economic injury as a direct and proximate result of the Defendant's conduct.

898.   As a direct and proximate result of the foregoing acts and practices, Defendant has received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

   a.   Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

   b.   Designating Plaintiffs as Class representative and counsel as Class counsel;

   c.   Entering judgment in favor of Plaintiffs and the Class and against Defendant;

   d.   Awarding Plaintiffs and Class members damages; and

   e.   Granting such further relief as the Court deems just.

### COUNT 52
**Violation of the Tennessee Consumer Protection Act (Tenn. Code Ann. §§ 47-18-102 *et seq.*), on Behalf of Plaintiffs Megan Ashley, Kelsey Blankenship, Augustina Briones, Elaine Cryer, Elizabeth McDowell, Christina Mitchell, Melinda Pass, Christina Salyers, Sheena Sanders, Kinder Smith, and the Tennessee Subclass**

899.   Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

900.   Plaintiffs Megan Ashley, Kelsey Blankenship, Augustina Briones, Elaine Cryer, Elizabeth McDowell, Christina Mitchell, Melinda Pass, Christina Salyers, Sheena Sanders, and Kinder Smith bring this Count individually and on behalf of the Tennessee Subclass.

901.   At all relevant times, Plaintiffs, the Tennessee Subclass, and Defendant were "persons" within the meaning of Tenn. Code Ann. § 47-18-103(14).

902.   The Tennessee Consumer Protection Act ("Tennessee CPA") prohibits unfair or deceptive actions or practices affecting the conduct of any trade or commerce.

903.   Defendants willfully engaged in unfair or deceptive actions or practices affecting the conduct of trade or commerce as described in the allegations above.

904.   As a result, Defendant's conduct violates several provisions of the Tennessee CPA, including but not limited to:

a.   Section 47-18-104(b)(2): causing likelihood of confusion or misunderstanding as to the source, sponsorship, approval or certification of goods or services—here, Defendant's willful failure to disclose to consumers the excessive amounts of toxins in toxic baby food causes the likelihood of confusion or misunderstanding about the sources and certifications of its ingredients in that it causes a likelihood that consumers will believe the toxic baby food does not contain excessive amounts of toxins and is regarded as safe for babies to eat;

b.   Section 47-18-104(b)(5):  Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have—Defendant's branding of its toxic baby food carried with it the impression that the toxic baby food was a safe, legally compliant product which consumers could use without unduly exposing their babies to the risk of exposure to toxins; and

c.   Section 47-18-104(b)(7): Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another—as above, Defendant's toxic baby food carried with it the

impression that it was a safe, legally compliant product which consumers could use without unduly exposing their babies to health risks from exposure to toxins.

905.    Defendant's omissions in violation of the Tennessee CPA were likely to mislead an ordinary consumer. Plaintiffs and the Tennessee Subclass reasonably understood Defendant's omissions to mean that the toxic baby food did not contain toxins at levels that are dangerous to babies' health. Plaintiffs and the Tennessee Subclass also reasonably understood Defendant's omissions to mean that the toxic baby food was not of substandard quality.

906.    If Defendant had disclosed that its toxic baby food contained toxins at levels that are dangerous to babies' health and was of substandard quality, Plaintiffs and the Tennessee Subclass would have been aware that the toxic baby food contained excessive amounts of toxins and was of substandard quality, and Plaintiffs and the Tennessee Subclass would not have purchased Defendant's toxic baby food.

907.    Defendant's omissions alleged herein were material in that a reasonable person would attach importance to the information and would be induced to act upon the information in making purchase decisions.

908.    Plaintiffs and the Tennessee Subclass relied to their detriment on Defendant's omissions in purchasing toxic baby food.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

a. Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

b. Designating Plaintiffs as Class representative and counsel as Class counsel;

c.   Entering judgment in favor of Plaintiffs and the Class and against Defendant;

d.   Awarding Plaintiffs and Class members three times their damages; reasonable attorneys' fees; costs; and

e.   Granting such further relief as the Court deems just.

**COUNT 53**
**Violation of the Texas Deceptive Trade Practices-Consumer Protection Act (Tex. Bus. & Com. Code Ann. §§ 17.41, *et seq.*), on Behalf of Plaintiffs Augustina Briones, Maria Calderon, Adrianne Cooper, Jessica Durrett, Amanda Hobbs-Rogers, Rachel Knudson, Ashley Pierce, Lakrisha Spikes, Shiloh Thomas, Megan Troyer, and the Texas Subclass**

909.   Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

910.   Plaintiffs Augustina Briones, Maria Calderon, Adrianne Cooper, Jessica Durrett, Amanda Hobbs-Rogers, Rachel Knudson, Ashley Pierce, Lakrisha Spikes, Shiloh Thomas, and Megan Troyer bring this Count individually and on behalf of the Texas Subclass.

911.   At all relevant times, members of the Texas Subclass and Defendant were "persons" within the meaning of the Texas Deceptive Trade Practices-Consumer Protection Act ("Texas DTPCPA"). *See* Tex. Bus. & Com. Code Ann. § 17.45(3).

912.   Texas' DTPCPA prohibits any "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce" or any "act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree."

913.   Among other things, the Texas DTPCPA prohibits: (1) causing likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods; (2) causing likelihood of confusion or misunderstanding as to affiliation, connection, or associations with, or certification by, another; (3) representing such subject of a consumer transaction has sponsorship, approval, performance, characteristics, accessories, uses, or benefits

it does not have which the supplier knows or should reasonably know it does not have; and (4) representing that such subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not.

914.    Defendant willfully and purposefully engaged in deceptive, unconscionable, and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts they intended others to rely upon in connection with trade or commerce in violation of Tex. Bus. & Com. Code Ann. §§ 17.50(a)(1)(B) and (3) as described in the allegations above.

915.    As a result, Defendant's conduct violates several provisions of the Texas UDTPA, including but not limited to:

> a.  Section 17.46(b)(2): Causing likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods—here, Defendant's willful failure to disclose to consumers the excessive amounts of toxins in toxic baby food while at the same time asserting that the toxic baby food irrelevant safety standards causes the likelihood of confusion or misunderstanding about the sources and certifications of its ingredients in that it causes a likelihood that consumers will believe the toxic baby food does not contain excessive amounts of toxins as approved by the authorities who issue certain safety regulations. This provision does not require proof of actual confusion or misunderstanding;
>
> b.  Section 17.46(b)(3): Causing likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, another—here, Defendant's willful failure to disclose to consumers the excessive amounts of toxins in toxic baby food while at the same time asserting that the toxic baby food irrelevant safety standards causes the likelihood of confusion or misunderstanding

about the sources and certifications of its ingredients in that it causes a likelihood that consumers will believe the toxic baby food does not contain excessive amounts of toxins as approved by the authorities who issue certain safety regulations. This provision does not require proof of actual confusion or misunderstanding;

c.  Section 17.46(b)(5): Representing that the subject of a consumer transaction has sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that it do not have—here, Defendant's branding of its toxic baby food carried with it the impression that the toxic baby food was a safe, legally compliant product which consumers could use without unduly exposing their babies to the risk of exposure to toxins; and

d.  Section 17.46(b)(7): Representing that the subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not—as above, Defendant's toxic baby food carried with it the impression that it was a safe, legally compliant product which consumers could use without unduly exposing their babies to health risks from exposure to toxins.

916.  Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is an act or practice in the conduct of trade or commerce that Defendant intended to induce consumers to buy toxic baby food.

917.  Defendant's misrepresentations and omissions were likely to mislead an ordinary consumer. Plaintiffs and the Texas Subclass reasonably understood Defendant's omissions to mean that the toxic baby food did not contain toxins at levels that are dangerous to babies' health. Plaintiff and the Texas Subclass also reasonably understood Defendant's omissions to mean that the toxic baby food was not of substandard quality.

918.    If Defendant had disclosed that its toxic baby food contained toxins at levels that are dangerous to babies' health and was of substandard quality, Plaintiffs and the Texas Subclass would have been aware that the toxic baby food contained excessive amounts of toxins and was of substandard quality, and Plaintiffs and the Texas Subclass would not have purchased Defendant's toxic baby food.

919.    Plaintiffs and Class members were deceived by Defendant's deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendant's products or would have paid less for those products.

920.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above impacts the public interest.

921.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it is inequitably enriching Defendant at the expense of the Texas Subclass.

922.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it offends public policy, and is so oppressive that the Texas Subclass has little alternative but to submit and causes consumers substantial injury.

923.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair in that it violates the well-established public policies of protecting children from avoidable dangers and that the manufacturer of food is responsible for ensuring that it is fit for human consumption.

924.    The Texas Subclass has suffered economic injury as a direct and proximate result of Defendant's conduct.

925. Plaintiffs have complied with the statute's pre-suit notice requirement. Plaintiffs provided Defendant pre-suit notice pursuant to Tex. Bus. & Com. Code Ann. § 17.505 by sending a certified letter containing the basis of Plaintiffs' claims on March 12, 2021. Said notice was received by Defendant on March 24, 2021.

926. As a direct and proximate result of the foregoing acts and practices, Defendant has received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

    a. Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

    b. Designating Plaintiffs as Class representative and counsel as Class counsel;

    c. Entering judgment in favor of Plaintiffs and the Class and against Defendant;

    d. Awarding Plaintiffs and Class members three times their damages; reasonable and necessary attorneys' fees; costs; and

    e. Granting such further relief as the Court deems just.

**COUNT 54**
**Violation of the Utah Consumer Sales Practices Act (Utah Code Ann. §§ 13-11-1, *et seq.*),**
**on Behalf of Plaintiffs Courtney Barron, Austin Gunderson, Shaylan Isaacs, Kali**
**McGlinch, Andrea Mozo, Abby Stratton, and the Utah Subclass**

927. Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

928. Plaintiffs Courtney Barron, Austin Gunderson, Shaylan Isaacs, Kali McGlinch, Andrea Mozo, and Abby Stratton bring this Count individually and on behalf of the Utah Subclass.

929.     At all relevant times, members of the Utah Subclass and Defendant were "persons" within the meaning of Utah Code Ann. § 13-11-1(5).

930.     At all relevant times, Defendant were "suppliers" within the meaning of Utah Code Ann. § 13-11-1(6).

931.     Utah's Consumer Sales Practices Act ("Utah CSPA") prohibits any "deceptive act or practice by a supplier in connection with a consumer transaction" or any "unconscionable act or practice by a supplier in connection with a consumer transaction."

932.     Among other things, the Utah CSPA prohibits: (1) representing such subject of a consumer transaction has sponsorship, approval, performance, characteristics, accessories, uses, or benefits it does not have which the supplier knows or should reasonably know it does not have; and (2) representing that such subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not.

933.     Defendant willfully and purposefully engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts they intended others to rely upon in connection consumer transactions (as defined in Utah Code Ann. § 13-11-1(2)) in violation Utah Code Ann. §§ 13-11-4(1) and 13-11-5(1) as described in the allegations above.

934.     As a result, Defendant's conduct violates several provisions of the Utah CSPA, including but not limited to:

  a.  Section 13-11-4(2)(a): Representing that the subject of a consumer transaction has sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that it do not have—here, Defendant's branding of its toxic baby food carried with it the impression that the toxic baby food was a safe, legally compliant product which

consumers could use without unduly exposing their babies to the risk of exposure to toxins; and

   b.   13-11-4(2)(b): Representing that the subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not—as above, Defendant's toxic baby food carried with it the impression that it was a safe, legally compliant product which consumers could use without unduly exposing their babies to health risks from exposure to toxins.

935.   Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is an act or practice in the conduct of trade or commerce that Defendant intended to induce consumers to buy toxic baby food.

936.   Defendant's misrepresentations and omissions were likely to mislead an ordinary consumer. Plaintiffs and the Utah Subclass reasonably understood Defendant's omissions to mean that the toxic baby food did not contain toxins at levels that are dangerous to babies' health. Plaintiff and the Utah Subclass also reasonably understood Defendant's omissions to mean that the toxic baby food was not of substandard quality.

937.   If Defendant had disclosed that its toxic baby food contained toxins at levels that are dangerous to babies' health and was of substandard quality, Plaintiffs and the Utah Subclass would have been aware that the toxic baby food contained excessive amounts of toxins and was of substandard quality, and Plaintiffs and the Utah Subclass would not have purchased Defendant's toxic baby food.

938.   Plaintiffs and Class members were deceived by Defendant's deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendant's products or would have paid less for those products.

939.     Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above impacts the public interest.

940.     Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it is inequitably enriches Defendant at the expense of the Utah Subclass.

941.     Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it offends public policy, and is so oppressive that the Utah Subclass has little alternative but to submit and causes consumers substantial injury.

942.     Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair in that it violates the well-established public policies of protecting children from avoidable dangers and that the manufacturer of food is responsible for ensuring that it is fit for human consumption.

943.     The Utah Subclass has suffered economic injury as a direct and proximate result of Defendant's conduct

944.     As a direct and proximate result of the foregoing acts and practices, Defendant has received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

    a.   Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

    b.   Designating Plaintiffs as Class representative and counsel as Class counsel;

    c.   Entering judgment in favor of Plaintiffs and the Class and against Defendant;

    d.   Awarding Plaintiffs and Class members their damages or $2,000, whichever is greater; reasonable attorneys' fees; costs; and

    e.   Granting such further relief as the Court deems just.

**COUNT 55**
**Violation of the Utah Truth in Advertising Act (Utah Code Ann. §§ 13-11a-1, *et seq.*), on Behalf of Plaintiffs Courtney Barron, Austin Gunderson, Shaylan Isaacs, Kali McGlinch, Andrea Mozo, Abby Stratton, and the Utah Subclass**

945.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

946.    Plaintiffs Courtney Barron, Austin Gunderson, Shaylan Isaacs, Kali McGlinch, Andrea Mozo, and Abby Stratton bring this Count individually and on behalf of the Utah Subclass.

947.    At all relevant times, members of the Utah Subclass and Defendant were "persons" within the meaning of Utah Code Ann. § 13-11a-2(7).

948.    Utah's Truth in Advertising Act ("Utah TIAA") prohibits any "deceptive, misleading, and false advertising practices and forms in Utah." *See* Utah Code Ann. § 13-11a-1.

949.    Among other things, Utah TIAA forbids: (1) causing likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods; (2) causing likelihood of confusion or misunderstanding as to affiliation, connection, or associations with, or certification by, another; (3) representing such subject of a consumer transaction has sponsorship, approval, performance, characteristics, accessories, uses, or benefits it does not have which the supplier knows or should reasonably know it does not have; and (4) representing that such subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not.

950.   Defendant willfully and purposefully engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts as alleged above when advertising their toxic baby food in Utah.

951.   As a result, Defendant's conduct violates several provisions of the Utah TIAA, including but not limited to:

a.   Section 13-11a-3(b): Causing likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods—here, Defendant's willful failure to disclose to consumers the excessive amounts of toxins in toxic baby food while at the same time asserting that the toxic baby food irrelevant safety standards causes the likelihood of confusion or misunderstanding about the sources and certifications of its ingredients in that it causes a likelihood that consumers will believe the toxic baby food does not contain excessive amounts of toxins as approved by the authorities who issue certain safety regulations. This provision does not require proof of actual confusion or misunderstanding, Utah Code Ann. § 13-11a-3(6);

b.   Section 13-11a-3(c): Causing likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, another—here, Defendant's willful failure to disclose to consumers the excessive amounts of toxins in toxic baby food while at the same time asserting that the toxic baby food irrelevant safety standards causes the likelihood of confusion or misunderstanding about the sources and certifications of its ingredients in that it causes a likelihood that consumers will believe the toxic baby food does not contain excessive amounts of toxins as approved by the authorities who issue certain safety regulations. This

provision does not require proof of actual confusion or misunderstanding, Utah Code Ann. § 13-11a-3(6);

    c.   Section 13-11a-3(e): Representing that the subject of a consumer transaction has sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that it do not have—here, Defendant's branding of its toxic baby food carried with it the impression that the toxic baby food was a safe, legally compliant product which consumers could use without unduly exposing their babies to the risk of exposure to toxins; and

    d.   Section 13-11a-3(g): Representing that the subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not—as above, Defendant's toxic baby food carried with it the impression that it was a safe, legally compliant product which consumers could use without unduly exposing their babies to health risks from exposure to toxins.

952.   Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above are deceptive, misleading, and false advertising practices and forms in Utah that Defendant intended to induce consumers to buy toxic baby food.

953.   Defendant's misrepresentations and omissions were likely to mislead an ordinary consumer. Plaintiffs and the Utah Subclass reasonably understood Defendant's omissions to mean that the toxic baby food did not contain toxins at levels that are dangerous to babies' health. Plaintiff and the Utah Subclass also reasonably understood Defendant's omissions to mean that the toxic baby food was not of substandard quality.

954.   If Defendant had disclosed that its toxic baby food contained toxins at levels that are dangerous to babies' health and was of substandard quality, Plaintiffs and the Utah Subclass

would have been aware that the toxic baby food contained excessive amounts of toxins and was of substandard quality, and Plaintiffs and the Utah Subclass would not have purchased Defendant's toxic baby food.

955.    Plaintiffs and Class members were deceived by Defendant's deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendant's products or would have paid less for those products.

956.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above impacts the public interest.

957.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it is inequitably enriches Defendant at the expense of the Utah Subclass.

958.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it offends public policy, and is so oppressive that the Utah Subclass has little alternative but to submit and causes consumers substantial injury.

959.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair in that it violates the well-established public policies of protecting children from avoidable dangers and that the manufacturer of food is responsible for ensuring that it is fit for human consumption.

960.    The Utah Subclass has suffered economic injury as a direct and proximate result of Defendant's conduct

961.    As a direct and proximate result of the foregoing acts and practices, Defendant has received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

    a.  Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

    b.  Designating Plaintiffs as Class representative and counsel as Class counsel;

    c.  Entering judgment in favor of Plaintiffs and the Class and against Defendant;

    d.  Awarding Plaintiffs and Class members their damages or $2,000, whichever is greater; reasonable attorneys' fees; costs; and

    e.  Granting such further relief as the Court deems just.

## COUNT 56
**Violation of the Vermont Consumer Protection Act (Vt. Stat. Ann. tit. 9, §§ 2451, *et seq.*), on Behalf of Plaintiffs Traci Marie Lussier, Rachel Stratton, and the Vermont Subclass**

962.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

963.    Plaintiffs Traci Marie Lussier, and Rachel Stratton bring this Count individually and on behalf of the Vermont Subclass.

964.    Vermont's Consumer Protection Act prohibits any "[u]nfair methods of competition in commerce and unfair or deceptive acts or practices in commerce."

965.    Defendant willfully and purposefully engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts in connection with trade or commerce leading to damages and/or injury in violation of Vt. Stat. Ann. tit. 9, § 2453(a) as described in the allegations above.

966.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is an act or practice in the conduct of trade or commerce that Defendant intended to induce consumers to buy toxic baby food.

967.    Defendant's misrepresentations and omissions were likely to mislead an ordinary consumer. Plaintiffs and the Vermont Subclass reasonably understood Defendant's omissions to mean that the toxic baby food did not contain toxins at levels that are dangerous to babies' health. Plaintiff and the Vermont Subclass also reasonably understood Defendant's omissions to mean that the toxic baby food was not of substandard quality.

968.    If Defendant had disclosed that its toxic baby food contained toxins at levels that are dangerous to babies' health and was of substandard quality, Plaintiffs and the Vermont Subclass would have been aware that the toxic baby food contained excessive amounts of toxins and was of substandard quality, and Plaintiffs and the Vermont Subclass would not have purchased Defendant's toxic baby food.

969.    Plaintiffs and Class members were deceived by Defendant's deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendant's products or would have paid less for those products.

970.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above impacts the public interest.

971.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it inequitably enriches Defendant at the expense of the Vermont Subclass.

972.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it offends public policy, and is so oppressive that the Vermont Subclass has little alternative but to submit and causes consumers substantial injury.

973.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair in that it violates the well-established public policies of protecting children from avoidable dangers and that the manufacturer of food is responsible for ensuring that it is fit for human consumption.

974.    The Vermont Subclass has suffered economic injury as a direct and proximate result of Defendant's conduct.

975.    As a direct and proximate result of the foregoing acts and practices, Defendant has received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

a.  Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

b.  Designating Plaintiffs as Class representative and counsel as Class counsel;

c.  Entering judgment in favor of Plaintiffs and the Class and against Defendant;

d.  Awarding Plaintiffs and Class members their damages; exemplary damages of three times their damages; reasonable attorneys' fees; and costs; and

e.  Granting such further relief as the Court deems just.

**COUNT 57**

**Violation of the Virginia Consumer Protection Act (Va. Code Ann. §§ 59.1-196, *et seq.*), on Behalf of Plaintiffs Elizabeth Austin, Alyssa Barb, Ashley Baxter, Charita Harrell, Katrina Thomas, and the Virginia Subclass**

976.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

977.    Plaintiffs Elizabeth Austin, Alyssa Barb, Ashley Baxter, Charita Harrell, and Katrina Thomas bring this Count individually and on behalf of the Virginia Subclass.

978.    At all relevant times, Plaintiffs, the Virginia Subclass, and Defendant were "persons" within the meaning of Va. Code Ann. § 59.1-198.

979.    The Virginia Consumer Protection Act ("Virginia CPA") prohibits fraudulent acts or practices committed by a supplier in connection with a consumer transaction.

980.    Among other things, the Virginia CPA prohibits: (1) misrepresenting that goods or services have certain quantities, characteristics, ingredients, uses, or benefits; (2) misrepresenting that good or services are of a particular standard, quality, grade, style, or model; and (3) using any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction. *See* Va. Code Ann. § 59.1-200.

981.    Defendant willfully engaged in fraudulent acts or practices in connection with consumer transactions as described by the allegations above.

982.    As a result, Defendant's conduct violates several provisions of the Virginia CPA, including but not limited to:

   a.   Section 59.1-200(A)(5): Misrepresenting that goods or services have certain quantities, characteristics, ingredients, uses, or benefits—here, Defendant's branding of its toxic baby food carried with it the impression that the toxic baby

food was a safe, legally compliant product which consumers could use without unduly exposing their babies to the risk of exposure to toxins;

b. Section 59.1-200(A)(6):: Misrepresenting that good or services are of a particular standard, quality, grade, style, or model—as above, Defendant's toxic baby food carried with it the impression that it was a safe, legally compliant product which consumers could use without unduly exposing their babies to health risks from exposure to toxins; and

c. Section 59.1-200(A)(14): Using any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction—Defendant's induced consumers to buy toxic baby food by, among other acts, making calculated references to irrelevant government safety standards to deceive consumers that they should trust Defendant and not have concerns about the amounts of heavy metals and other toxins in the baby food, which trade practices are deceptive, unfair, immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

983. Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is an act or practice in the conduct of trade or commerce that Defendant intended to induce consumers to buy toxic baby food.

984. Defendant's omissions in violation of the Virginia CPA were likely to mislead an ordinary consumer. Plaintiffs and the Virginia Subclass reasonably understood Defendant's omissions to mean that the toxic baby food did not contain toxins at levels that are dangerous to babies' health. Plaintiff and the Virginia Subclass also reasonably understood Defendant's omissions to mean that the toxic baby food was not of substandard quality.

985.    If Defendant had disclosed that its toxic baby food contained toxins at levels that are dangerous to babies' health and was of substandard quality, Plaintiffs and the Virginia Subclass would have been aware that the toxic baby food contained excessive amounts of toxins and was of substandard quality, and Plaintiffs and the Virginia Subclass would not have purchased Defendant's toxic baby food.

986.    Defendant's omissions alleged herein were material in that a reasonable person would attach importance to the information and would be induced to act upon the information in making purchase decisions.

987.    Plaintiffs and the Virginia Subclass relied to their detriment on Defendant's omissions in purchasing toxic baby food.

988.    As a direct and proximate result of the foregoing acts and practices, Defendant has received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

    a.    Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

    b.    Designating Plaintiffs as Class representative and counsel as Class counsel;

    c.    Entering judgment in favor of Plaintiffs and the Class and against Defendant;

    d.    Awarding Plaintiffs and Class members three times their damages or $1,000, whichever is greater; reasonable attorneys' fees; and costs; and

    e.    Granting such further relief as the Court deems just.

**COUNT 58**

**Violation of the Washington Consumer Protection Act (Wash. Rev. Code §§ 19.86.010, *et seq.*), on Behalf of Plaintiffs Courtney Barron, Anna Chase, Chelzy Desvigne, Amanda Hobbs-Rogers, Samantha Lui, Sonja Renee Twiggs, Jennifer Watts, and the Washington Subclass**

989.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

990.    Plaintiffs Courtney Barron, Anna Chase, Chelzy Desvigne, Amanda Hobbs-Rogers, Samantha Lui, Sonja Renee Twiggs, and Jennifer Watts bring this Count individually and on behalf of the Washington Subclass.

991.    Washington's Consumer Protection Act ("Washington CPA") prohibits any "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

992.    At all relevant times, members of the Washington Subclass and Defendant were "persons" within the meaning of the Washington CPA. *See* Wash. Rev. Code § 19.86.010(1).

993.    Defendant willfully and purposefully engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts in connection with trade or commerce in violation of Wash. Rev. Code § 19.86.020 as described in the allegations above.

994.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is an act or practice in the conduct of trade or commerce.

995.    Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above impacts the public interest in that Defendant's acts: (1) violated the specific legislative declaration of public interest impact described by Wash. Rev. Code § 19.86.920; (2) injured other persons as alleged above; (3) had the capacity to injure other persons; and (4) continues to have the capacity to injure other persons.

996. Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it is inequitably enriches Defendant at the expense of the Washington Subclass.

997. Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it offends public policy, and is so oppressive that the Washington Subclass has little alternative but to submit and causes consumers substantial injury.

998. Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair in that it violates the well-established public policies of protecting children from avoidable dangers and that the manufacturer of food is responsible for ensuring that it is fit for human consumption.

999. The Washington Subclass has suffered economic injury as a direct and proximate result of Defendant's conduct.

1000. As a direct and proximate result of the foregoing acts and practices, Defendant has received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

    a. Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

    b. Designating Plaintiffs as Class representative and counsel as Class counsel;

    c. Entering judgment in favor of Plaintiffs and the Class and against Defendant;

    d. Awarding Plaintiffs and Class members three times their damages; reasonable attorneys' fees; and costs; and

    e. Granting such further relief as the Court deems just.

**COUNT 59**

**Violation of the West Virginia Consumer Protection Act, (W. Va. Code §§ 46A-6-101, *et seq.*), on Behalf of Plaintiffs Alyssa Barb, Julie Blakeley, Olivia Johnson, and the West Virginia Subclass**

1001. Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

1002. Plaintiffs Alyssa Barb, Julie Blakeley, and Olivia Johnson bring this Count individually and on behalf of the West Virginia Subclass.

1003. West Virginia's Consumer Protection Act prohibits any "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

1004. Defendant willfully and purposefully engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts they intended others to rely upon in connection with trade or commerce in violation of W.Va. Code § 46A-6-104 as described in the allegations above.

1005. Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is an act or practice in the conduct of trade or commerce.

1006. Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above impacts the public interest.

1007. Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it is inequitably enriches Defendant at the expense of the West Virginia Subclass.

1008.   Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it offends public policy, and is so oppressive that the West Virginia Subclass has little alternative but to submit and causes consumers substantial injury.

1009.   Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair in that it violates the well-established public policies of protecting children from avoidable dangers and that the manufacturer of food is responsible for ensuring that it is fit for human consumption.

1010.   The West Virginia Subclass has suffered economic injury as a direct and proximate result of Defendant's conduct.

1011.   As a direct and proximate result of the foregoing acts and practices, Defendant has received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

1012.   Plaintiffs provided notice to Defendant pursuant to W.Va. Code § 46-6-106(b) by sending a certified letter containing the basis of Plaintiffs' claims on April 13, 2021.  Said notice was received by Defendant on or about April 19, 2021.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

      a.   Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

      b.   Designating Plaintiffs as Class representative and counsel as Class counsel;

      c.   Entering judgment in favor of Plaintiffs and the Class and against Defendant;

d.  Awarding Plaintiffs and Class members their damages or $200, whichever is greater; and

e.  Granting such further relief as the Court deems just.

**COUNT 60**
**Violation of the Wisconsin Deceptive Trade Practices Act (Wis. Stat. §§ 100.18, *et seq.*), on Behalf of Plaintiffs Nicole Brisky, Samantha Edwards, Amanda Hobbs-Rogers, Sarah Knaapen, and the Wisconsin Subclass**

1013.   Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

1014.   Plaintiffs Nicole Brisky, Samantha Edwards, Amanda Hobbs-Rogers, and Sarah Knaapen bring this Count individually and on behalf of the Wisconsin Subclass.

1015.   At all relevant times, Plaintiffs, the Wisconsin Subclass, and Defendant were "persons" within the meaning of Wisconsin Statutes. *See* Wis. Stat. § 990.01.

1016.   Wis. Stat. § 100.18 prohibits the use of fraudulent representations by a person with the intent to sell, distribute, or increase the consumption of merchandise or anything offered by such person, directly or indirectly, to the public—the prohibition includes but is not limited to any advertisement, statement, representation of any kind to the public relating to the purchase, sale, or use of the merchandise which advertisement, statement, or representation is untrue, deceptive, or misleading.

1017. Wis. Stat. § 100.183 specifically prohibits untrue, deceptive, or misleading practices with respect to the sale of food:

> No person, firm, corporation or association shall, with intent to sell, or increase the consumption thereof, or create an interest therein, make, publish, disseminate, circulate, or place before the public in this state, or cause, directly or indirectly to be made, published, disseminated, or placed before the public in this state, in a newspaper or other publication, or in the form of a book notice, handbill, poster, bill, circular or pamphlet, or in any other manner, an advertisement of any sort regarding articles of food, which advertisement contains any assertion, representation or statement which is untrue, deceptive or misleading.

1018.   Defendant willfully engaged in fraudulent, untrue, deceptive, and/or misleading acts as described in the allegations above.

1019.   As a result, Defendant's conduct violates Wis. Stat. §§ 100.18 and 100.183—Defendant's branding of its toxic baby food carried with it the impression that the toxic baby food was a safe, legally compliant product which consumers could use without unduly exposing their babies to the risk of exposure to toxins.

1020.   Defendant's omissions in violation of Wis. Stat. §§ 100.18 and 100.183 were likely to mislead an ordinary consumer. Plaintiffs and the Wisconsin Subclass reasonably understood Defendant's omissions to mean that the toxic baby food did not contain toxins at levels that are dangerous to babies' health. Plaintiff and the Wisconsin Subclass also reasonably understood Defendant's omissions to mean that the toxic baby food was not of substandard quality.

1021.   If Defendant had disclosed that its toxic baby food contained toxins at levels that are dangerous to babies' health and was of substandard quality, Plaintiffs and the Wisconsin Subclass would have been aware that the toxic baby food contained excessive amounts of toxins and was of substandard quality, and Plaintiffs and the Wisconsin Subclass would not have purchased Defendant's toxic baby food.

1022.   Defendant's omissions alleged herein were material in that a reasonable person would attach importance to the information and would be induced to act upon the information in making purchase decisions.

1023.   Plaintiffs and the Wisconsin Subclass relied to their detriment on Defendant's omissions in purchasing toxic baby food.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

a.  Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

b.  Designating Plaintiffs as Class representative and counsel as Class counsel;

c.  Entering judgment in favor of Plaintiffs and the Class and against Defendant;

d.  Awarding Plaintiffs and Class members two times their damages; reasonable attorneys' fees; costs; and

e.  Granting such further relief as the Court deems just.

**COUNT 61**
**Violation of the Wyoming Consumer Protection Act (Wyo. Stat. Ann. §§ 40-12-101, *et seq.*), on Behalf of Kassandra Romero, Maggie Rouse, Kyla Talley, and the Wyoming Subclass**

1024.  Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

1025.  Plaintiffs Kassandra Romero, Maggie Rouse, and Kyla Talley bring this Count individually and on behalf of the Wyoming Subclass.

1026.  At all relevant times, members of the Wyoming Subclass and Defendant were "persons" within the meaning of Wyoming's Consumer Protection Act ("Wyoming CPA"). *See* Wyo. Stat. Ann. § 40-12-102(a)(i).

1027.  Wyoming's CPA prohibits any "unfair or deceptive acts or practices."

1028.  Among other things, Wyoming's CPA forbids: (1) representing that merchandise has a source, origin, sponsorship, approval, accessories or uses it does not have; (2) representing that merchandise is of a particular standard, grade, style or model, if it is not; and (3) engaging in unfair or deceptive acts or practices.

1029.  Defendant willfully and purposefully engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts they

intended others to rely upon in connection with the sale or advertisement of merchandise (as defined by Wyo. Stat. Ann. § 40-12-102(a)(vi)) in violation of Wyo. Stat. Ann. § 40-12-105(a)(xv) as described in the allegations above.

1030.   Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is an act or practice in the conduct of trade or commerce.

1031.   Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above impacts the public interest.

1032.   Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it is inequitably enriches Defendant at the expense of the Wyoming Subclass.

1033.   Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair because it offends public policy, and is so oppressive that the Wyoming Subclass has little alternative but to submit and causes consumers substantial injury.

1034.   Defendant's misrepresentations and omissions in the sale of its toxic baby food detailed above is unfair in that it violates the well-established public policies of protecting children from avoidable dangers and that the manufacturer of food is responsible for ensuring that it is fit for human consumption.

1035.   The Wyoming Subclass has suffered economic injury as a direct and proximate result of Defendant's conduct.

1036.   As a direct and proximate result of the foregoing acts and practices, Defendant has received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

1037.   Plaintiffs provided notice to Defendant pursuant to Wyo. Stat. Ann. § 40-12-109 by sending a certified letter containing the basis of Plaintiffs' claims on April 13, 2021.  Said notice was received by Defendant on or about April 19, 2021.

WHEREFORE, Plaintiffs, individually and on behalf of the Class and/or Classes of persons described herein, pray for an Order as follows:

a. Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class and/or Classes defined herein;

b. Designating Plaintiffs as Class representative and counsel as Class counsel;

c. Entering judgment in favor of Plaintiffs and the Class and against Defendant;

d. Awarding Plaintiffs and Class members damages; reasonable attorneys' fees; and costs; and

e. Granting such further relief as the Court deems just.

### **JURY DEMAND**

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: July 6, 2021                                Respectfully submitted,

By: /s/    Andre Barlow
Andre Barlow, Esq. (Va. Bar #41267)
DOYLE, BARLOW & MAZARD PLLC
1776 K Street, N.W., Suite 200
Washington, D.C. 20006
Tel: (202) 589-1834
abarlow@dbmlawgroup.com

Aaron M. Zigler*
ZIGLER LAW GROUP, LLC
308 S. Jefferson Street | Suite 333
Chicago, IL 60661
Tel: 312-673-8427
aaron@ziglerlawgroup.com

Troy E. Walton*
Steve Telken*
WALTON TELKEN, LLC
241 N. Main Street
Edwardsville, IL 62025
Tel: (618) 307-9880
twalton@waltontelken.com
stelken@waltonteklen.com

*Pro Hac Vice admission to be sought

*Counsel for Plaintiff and the Putative Class*